Anthony J Weibell (SBN 238850)
*aweibell@mayerbrown.com*
Nina He (SBN 346294)
*nhe@mayerbrown.com*
**MAYER BROWN LLP**
Two Palo Alto Square, Suite 300
Palo Alto, CA 94306
Telephone: (650) 331-2030

Sophia M. Mancall-Bitel (SBN 337002)
*smancall-bitel@mayerbrown.com*
Sarah A. Hsu (SBN 348402)
*shsu@mayerbrown.com*
**MAYER BROWN LLP**
333 S. Grand Ave., 47th Floor
Los Angeles, CA 90071
Telephone: (213) 229-9500

Edith Ramirez (SBN 165872)
*edith@eramirezlaw.com*
119 E. Union Street, Suite C
Pasadena, CA 91103
Telephone: (202) 322-2255

*Attorneys for Defendants*
*Google LLC and YouTube LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re Disney Worldwide Services COPPA Litigation | Case No.: 2:25-cv-08410-GW-RAO<br><br>**DEFENDANTS GOOGLE LLC AND YOUTUBE LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT**<br><br>Judge: Hon. George H. Wu<br>Date: June 15, 2026 |

Time: 8:30 a.m.
Place: Courtroom 9D

Action Filed: October 16, 2025
Trial Date: None

# NOTICE OF MOTION AND MOTION

**TO THE CLERK AND ALL COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on June 15, 2026 at 8:30 AM, or as soon thereafter as counsel may be heard, in Courtroom 9D, before the Honorable George H. Wu, United States Judge for the Central District of California, located at the First Street Courthouse, 350 W. 1st Street, Los Angeles, California 90012, Defendants Google LLC and YouTube LLC will and hereby do move to dismiss with prejudice the claims against them in the Consolidated Complaint filed by Plaintiffs E.A., S.A., S.K., E.K., A.F., C.R., and C.R. for lack of Article III standing to seek injunctive relief pursuant to Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6).

This Motion is based on this Notice of Motion; the supporting Memorandum of Law; the supporting Request for Judicial Notice; the pleadings, papers, filings, and record in this action; and such other evidence or argument as may be presented at or before the hearing.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on March 27, 2026. Counsel conferred in good faith but were unable to reach a resolution on the issues presented in this Motion.

Dated: April 3, 2026

Respectfully submitted,

MAYER BROWN LLP

By: */s/ Anthony J Weibell*
Anthony J Weibell

Attorneys for Defendants
GOOGLE LLC AND YOUTUBE LLC

# TABLE OF CONTENTS

**Page**


INTRODUCTION ..... 1
STATEMENT OF FACTS AND ALLEGATIONS ..... 2
A. The Children's Online Privacy Protection Act ..... 2
B. YouTube and Its Made For Kids Program ..... 2
C. The 2025 FTC Action Against Disney ..... 4
D. Plaintiffs' Consolidated Complaint ..... 4
LEGAL STANDARD ..... 5
ARGUMENT ..... 5
I. THE CLAIMS AGAINST GOOGLE SHOULD BE DISMISSED BECAUSE PLAINTIFFS DO NOT PLAUSIBLY ALLEGE GOOGLE KNEW IT WAS COLLECTING PERSONAL INFORMATION FROM MIS-DESIGNATED VIDEOS WATCHED BY PLAINTIFFS. ..... 5
II. THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS RELY ON IMPROPER "SHOTGUN PLEADINGS." ..... 8
III. PLAINTIFFS' CLAIMS FOR EQUITABLE RELIEF FAIL. ..... 9
A. Plaintiffs Lack Article III Standing to Seek Injunctive Relief. ..... 9
B. Plaintiffs' Complaint Demonstrates They Have Adequate Remedies at Law. ..... 10
IV. PLAINTIFFS' INTRUSION UPON SECLUSION AND INVASION OF PRIVACY CLAIMS FAIL. ..... 11
V. PLAINTIFFS' TRESPASS TO CHATTEL CLAIM FAILS. ..... 13
VI. PLAINTIFFS' NEGLIGENCE CLAIMS FAIL. ..... 14
A. Plaintiffs' Negligence Claims Are Preempted by COPPA. ..... 14
B. Plaintiffs Fail to State a Claim for Negligence. ..... 15
C. Plaintiffs Fail to State a Claim for Negligence Per Se. ..... 16
VII. PLAINTIFFS' UCL CLAIM FAILS. ..... 17
A. Plaintiffs Lack UCL Standing. ..... 17
B. Plaintiffs Fail to Allege Any Unlawful, Unfair, or Fraudulent Conduct. ..... 18
VIII. PLAINTIFFS' ECPA CLAIM FAILS. ..... 19
IX. PLAINTIFFS' WESCA CLAIM FAILS. ..... 20
X. PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS. ..... 20
CONCLUSION ..... 21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aas v. Super. Ct.*,
24 Cal. 4th 627 (2000) ........ 15

*Aguilera v. Pirelli Armstrong Tire Corp.*,
223 F.3d 1010 (9th Cir. 2000) ........ 15

*In re Alphabet Derivative Stockholder Litig.*,
2022 WL 1045642 (N.D. Cal. Apr. 7, 2022) ........ 6, 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 1, 5

*Attenello v. Aetna Life Ins.*,
2025 WL 2661772 (C.D. Cal. Sept. 16, 2025) ........ 20

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ........ 19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 1, 5, 10

*Berryman v. Merit Prop. Mgmt., Inc.*,
152 Cal. App. 4th 1544 (2007) ........ 18

*Best Carpet Values, Inc. v. Google, LLC*,
90 F.4th 962 (9th Cir. 2024) ........ 13

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
631 F.3d 939 (9th Cir. 2011) ........ 9

*de Ayora v. Inspire Brands, Inc.*,
2025 WL 3707561 (N.D. Cal. Dec. 22, 2025) ........ 20

*Dyroff v. Ultimate Software Grp., Inc.*,
2017 WL 5665670 (N.D. Cal. Nov. 26, 2017) ........ 15, 16

*Eidmann v. Walgreen Co.*,
522 F. Supp. 3d 634 (N.D. Cal. 2021) ........ 19

*Esparza v. Gen Digital Inc.*,
2024 WL 655986 (C.D. Cal. Jan. 16, 2024) .......... 20

*Esparza v. Lenox Corp.*,
2023 WL 2541352 (N.D. Cal. Mar. 16, 2023) .......... 19

*In re Facebook Priv. Litig.*,
572 F. App'x 494 (9th Cir. 2014) .......... 17

*First Call Int'l, Inc. v. S&B Glob., Inc.*,
2024 WL 4404429 (C.D. Cal. July 5, 2024) (Wu, J.) .......... *passim*

*In re Google, Inc. Priv. Policy Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) .......... 11

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 11

*Hawkins v. Shimano N. Am. Bicycle Inc.*,
2024 WL 4405249 (C.D. Cal. Aug. 1, 2024) .......... 21

*Heeger v. Facebook, Inc.*,
2019 WL 7282477 (N.D. Cal. Dec. 27, 2019) .......... 12

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .......... 11

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal.4th 1 (1994) .......... 11

*Holly v. Alta Newport Hosp., Inc.*,
612 F. Supp. 3d 1017 (C.D. Cal. 2020) .......... 15

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024) .......... 11, 12

*Intel Corp. v. Hamidi*,
30 Cal. 4th 1342 (2003) .......... 13, 14

*Jones v. Google, LLC*,
73 F.4th 636 (9th Cir. 2023) .......... 14

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .......... 18

*Klaehn v. Cali Bamboo LLC*,
2022 WL 1830685 (9th Cir. June 3, 2022) .......... 20

*Konkol v. Oakwood Worldwide Loc., LLC*,
2015 WL 46177 (C.D. Cal. Jan. 2, 2015) .......... 16

*Kwikset Corp. v. Super. Ct.*,
51 Cal. 4th 310 (2011) .......... 17

*LaCourt v. Specific Media, Inc.*,
2011 WL 1661532 (C.D. Cal. Apr. 28, 2011) .......... 13

*Laird v. United Tchrs. L.A.*,
615 F. Supp. 3d 1171 (C.D. Cal. 2022) .......... 9

*Lau v. Gen Digital Inc.*,
2023 WL 10553772 (N.D. Cal. Sept. 13, 2023) .......... 17

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 16

*McCoy v. Alphabet Inc.*,
2021 WL 405816 (N.D. Cal. Feb. 2, 2021) .......... 11

*McGee v. S-L Snacks Nat'l*,
982 F.3d 700 (9th Cir. 2020) .......... 17

*McMahon v. Take-Two Interactive Software, Inc.*,
745 F. App'x 786 (9th Cir. 2018) .......... 17

*NetChoice v. Brown*,
2025 WL 3267786 (D. Md. Nov. 24, 2025) .......... 14, 15

*Noel v. Hall*,
568 F.3d 743 (9th Cir. 2009) .......... 20

*Quiroz v. Seventh Ave. Ctr.*,
140 Cal. App. 4th 1256 (2006) .......... 16

*Resh, Inc v. Skimlite Mfg. Inc*,
666 F. Supp. 3d 1054 (N.D. Cal. 2023) .......... 9

*Roe v. Amgen Inc.*,
2024 WL 2873482 (C.D. Cal. June 5, 2024) .......... 17, 18

*Ruiz v. Gap, Inc.*,
380 F. App'x 689 (9th Cir. 2010) .......... 16

*Shatford v. L.A. Cnty. Sheriff's Dep't*,
2016 WL 1579379 (C.D. Cal. Mar. 29, 2016) .......... 13

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) .......... 10

*Sotelo v. Rawlings Sporting Goods Co.*,
2019 WL 4392528 (C.D. Cal. May 8, 2019) (Wu, J.) .......... 21

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) .......... 5

*Stewart v. Am. Ass'n of Physician Specialists, Inc.*,
2015 WL 134061 (C.D. Cal. Jan. 8, 2015) .......... 21

*Strehl v. Guitar Ctr., Inc.*,
2024 WL 2790373 (C.D. Cal. May 29, 2024) .......... 20

*In re TikTok, Inc. Minor Privacy Litig.*,
2025 WL 3628598 (C.D. Cal. Nov. 5, 2025) (Wu, J.) .......... 6

*Vasquez v. Garulay*,
2014 WL 12965947 (C.D. Cal. Nov. 10, 2014) .......... 13

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .......... 18

*Warren v. Fox Fam. Worldwide, Inc.*,
328 F.3d 1136 (9th Cir. 2003) .......... 5

*Wood v. Panther*,
2025 WL 88844 (9th Cir. 2025) .......... 8

*Yunker v. Pandora Media, Inc.*,
2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) .......... 13

**Statutes**

15 U.S.C. § 6502(a)(1), (d) .......... 2, 14

15 U.S.C. § 6504 .......... 6

15 U.S.C. § 6505 .......... 6

18 U.S.C. § 2511(1)(a), (1)(c)–(d), 2(c) .......... 19, 20

18 Pa. Stat. and Cons. Stat. Ann. § 5703 .......... 20

Cal. Bus. & Prof. Code § 17200 .......... 17, 18

Cal. Bus. & Prof. Code § 17204 .......... 17

**Other Authorities**

78 Fed. Reg. 3972, 3977–78 (Jan. 17, 2013) .......... 6

6 Witkin, *Summary of Cal. Law*, § 961 (11th ed. 2023) .......... 14

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Defendants Google LLC and YouTube LLC (collectively, "Google") do not belong in this lawsuit and should be dismissed. The Federal Trade Commission's ("FTC's") action against Disney on which this litigation is based made no accusations against Google—and for good reason. The core allegation by the FTC (and by Plaintiffs in this case) is that Disney failed in its obligation to designate certain videos it uploaded to YouTube as "Made for Kids," resulting in the collection of children's personal information without parental consent in violation of the Children's Online Privacy Protection Act ("COPPA"). The FTC acknowledged (as do Plaintiffs here) that to the extent Google did anything, it *fixed the alleged problem* of mis-designated Disney videos by re-designating videos its monitoring system detected. In view of this, not only did the FTC bring no claim against Google, no plaintiff in these consolidated actions accused Google of wrongdoing until a single, late-filed case asserted purely conclusory allegations against Google that have now been swept into the consolidated Complaint.

Specifically, the Complaint makes a conclusory and speculative allegation (insufficient under *Iqbal* and *Twombly*) that Google was aware of, but did not address, mis-designated videos. But Plaintiffs allege no facts in support. Indeed, as noted above, they do the opposite: the Complaint asserts that Google *re-designated* videos and followed the terms of its 2019 agreement with the FTC. Plaintiffs, moreover, do not identify any content that Google failed to treat correctly as "Made for Kids" after Google obtained actual knowledge that it was directed to kids—let alone any videos Plaintiffs themselves watched. Absent this critical missing element, the claims against Google fail and must be dismissed.

Plaintiffs' claims also fail for several additional and independent reasons. Plaintiffs rely on improper shotgun pleading that fails to distinguish the acts of Google from the acts of Disney. They seek injunctive relief to which they are not entitled, and they pursue claims that plainly do not apply to the set of facts they present. The Complaint should be dismissed in its entirety with prejudice.

## STATEMENT OF FACTS AND ALLEGATIONS

### A. The Children's Online Privacy Protection Act

COPPA,[1] which was at the heart of the FTC's action against Disney provides that "[i]t is unlawful for an operator of a website or online service directed to children, or any operator that has actual knowledge that it is collecting personal information from a child, to collect personal information from a child in a manner that violates" regulations prescribed by the FTC. 15 U.S.C. § 6502(a)(1).

Because there is no private right of action under COPPA, private plaintiffs allegedly impacted by violations of COPPA must seek relief under state law. But COPPA expressly preempts state law claims that are inconsistent with its terms:

> No State or local government may impose any liability for commercial activities or actions by operators in interstate or foreign commerce in connection with an activity or action described in this chapter that is inconsistent with the treatment of those activities or actions under this section.

15 U.S.C. § 6502(d).

### B. YouTube and Its Made For Kids Program

YouTube is an online video-sharing platform that allows users to upload, share, and view video content. Content creators can create YouTube "channels" through which to share their videos. *See* Dkt. No 55 ("Complaint" or "Compl.") ¶¶ 54–56. Billions of videos have been uploaded to YouTube by creators. YouTube's Terms of Service state that it is not intended to be used by children under 13 by themselves.[2]

---

[1] 15 U.S.C. § 6501–06.

[2] *See* Hsu Ex. D (YouTube LLC's Terms of Service) ("You must be at least 13 years old to use [YouTube]; however, children of all ages may use [YouTube] and YouTube Kids (where available) if enabled by a parent or legal guardian.").

YouTube Kids is a separate platform operated by Google that is designed for children under 13 and "built to be a fun, family-friendly place for kids and families."[3] YouTube Kids contains content that is "suitable" for children, but not all content on that platform is necessarily directed to children.[4]

In September 2019, the FTC and Google reached an agreement about how to make YouTube COPPA-compliant following a joint action by the FTC and the New York Attorney General against Google, which was entered as a stipulated civil penalty and permanent injunction. *See* Hsu Ex. A (2019 FTC Order). In recognition of YouTube's role as a platform and not a content creator, the 2019 FTC Order required Google, *inter alia*, to (1) implement and maintain a system for YouTube content creators to identify their "Made for Kids" content on the platform, (2) notify content creators that their "Made for Kids" content may be subject to COPPA and that they are obligated to designate such content as directed to children, (3) provide annual training about complying with COPPA for employees who deal with content creators, and (4) provide notice about its data collection practices and obtain verifiable parental consent before collecting personal information from children. *Id.* at 10–12. The FTC may move to enforce the 2019 FTC Order, and the D.C. District Court has retained jurisdiction for that purpose. *Id.* at 20.

To comply with the 2019 FTC Order, in November 2019, Google notified content creators that they would be required to designate their videos as "Made for Kids" ("MFK") or "Not Made for Kids" ("NMFK") to comply with COPPA. *See, e.g.*, Compl. ¶¶ 4, 6, 107, 108, 146, 147.[5] YouTube "rel[ies]" on the designations made by content creators "to determine what functionality and advertising YouTube should make available on a content creator's videos in order for YouTube to comply with COPPA." *Id.* ¶ 110; *see also* Hsu Ex. B ¶ 20 (FTC Disney Complaint) (cited at Compl. ¶¶ 156–58, 160, 162–63). In addition,

---

[3] *See* Hsu Ex. G (YouTube For Families Help Center webpage).

[4] *See id.*

[5] *See also* Hsu Ex. F (YouTube Help Center webpage).

Google has a COPPA monitoring program that uses machine learning and human review to identify clear MFK content. *See* Compl. ¶ 113.

### C. The 2025 FTC Action Against Disney

On September 2, 2025, on referral from and on behalf of the FTC, the Department of Justice ("DOJ") brought an action against Disney for allegedly failing to properly designate its MFK videos on YouTube. *See* Hsu Ex. B (FTC Disney Complaint) (cited at Compl. ¶ 156–58, 160, 162–63). Disney agreed to a stipulated permanent injunction ("Disney Order") requiring it to implement "a program to review whether each of [its] Videos on the YouTube Platform is a Kids Video, and, if in [Disney's] assessment it is, designate the Video as Made for Kids[.]" Hsu Ex. C (Disney Order). As with the 2019 FTC Order, the FTC may move to enforce the Disney Order, and this District Court has retained jurisdiction for that purpose. *Id.* at 21. The FTC took no action against Google, noting that Google had re-designated a number of Disney's original video designations. *See* Hsu Ex. B ¶¶ 34, 36 (FTC Disney Complaint) (cited at Compl. ¶¶ 156–58, 160, 162–63).

### D. Plaintiffs' Consolidated Complaint

Several class actions were filed against Disney within weeks of the DOJ's action. *See* Dkt. No. 45. Only the last of these cases named Google as a defendant. *See* Dkt. No. 32-1 at 9. Plaintiffs filed a consolidated complaint after this Court consolidated the cases.

Plaintiffs are seven minors who each allege they "viewed Disney's child-directed content that was misclassified as NMFK on YouTube, resulting in the unlawful collection, use, and monetization of their personal information without parental consent." Compl. ¶¶ 24–27. With respect to Google, Plaintiffs allege that YouTube "was aware of Disney's noncompliance with the MFK Policy but failed to take adequate measures to correct it," based on allegations that (1) "[s]ome videos available on YouTube Kids are available on YouTube but not designated" MFK, (2) Google "changed designations on more than 300 Disney videos from NMFK to MFK," and (3) Google "was well-aware of the demographic" comprising Disney's audience. *Id.* ¶¶ 9, 127, 158, 247. Plaintiffs do not identify any

specific video they watched that Google failed to treat as MFK after Google obtained actual knowledge that it was MFK.

Based on these allegations, Plaintiffs assert nine claims: violation of the federal Electronic Communications Privacy Act ("ECPA"), California's Unfair Competition Law ("UCL") and constitutional right to privacy, Pennsylvania's Wiretapping and Electronic Surveillance Control Act ("WESCA"), and intrusion upon seclusion, trespass to chattels, negligence, negligence per se, and unjust enrichment. Compl. ¶¶ 240–367.

## LEGAL STANDARD

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Courts will not accept the truth of conclusory allegations or unwarranted inferences, nor will they accept legal conclusions as true merely because they are cast in the form of factual allegations. *See id.* at 678–79. Finally, courts need not accept allegations "which are contradicted by documents referred to in the complaint," *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citation omitted), or those "that contradict matters properly subject to judicial notice[,]" *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g,* 275 F.3d 1187 (9th Cir. 2001).

## ARGUMENT

### I. THE CLAIMS AGAINST GOOGLE SHOULD BE DISMISSED BECAUSE PLAINTIFFS DO NOT PLAUSIBLY ALLEGE GOOGLE KNEW IT WAS COLLECTING PERSONAL INFORMATION FROM MIS-DESIGNATED VIDEOS WATCHED BY PLAINTIFFS.

Plaintiffs' claims against Google are based wholly on the conclusory allegation that Google knowingly collected personal information from children without parental consent,

which COPPA prohibits.[6] But the facts alleged in the Complaint do not support this conclusion. If anything, they demonstrate the opposite: that Google complied with COPPA and the 2019 FTC Order—and even went beyond its obligations in that Order by setting up a monitoring system to aid in detecting MFK content. This mandates dismissal of the Complaint in its entirety.

There is no dispute about what standard applies to Plaintiffs' allegation that Google violated COPPA. The question is whether Google had "actual knowledge" that any particular video was directed to children. *See* Compl. ¶ 97 (COPPA applies when Google "ha[s] actual knowledge that child-directed content is being hosted"). Actual knowledge is just that: actual knowledge. There is no constructive knowledge exception to COPPA's actual knowledge requirement. *See* Children's Online Privacy Protection Rule, 78 Fed. Reg. 3972, 3977–78 (Jan. 17, 2013) (declining to impose liability based on a "has reason to know" standard); *In re Alphabet Derivative Stockholder Litig.*, 2022 WL 1045642, at *1–2, *4 (general awareness of child-directed content is not actual knowledge of COPPA violations).[7]

Even when read in the light most favorable to Plaintiffs, the allegations in the Complaint do not plausibly give rise to the conclusion that Google collected personal information from Plaintiffs knowing they were watching child-directed videos. *See In re Alphabet Derivative Stockholder Litig.*, 2022 WL 1045642 at *1–2, *4. The Complaint does not identify a single video watched by Plaintiffs that Google (1) had "actual

[6] Plaintiffs cannot assert a COPPA claim because the statute does not provide a private right of action. *See* 15 U.S.C. §§ 6504, 6505. However, they explicitly predicate each of their causes of action on a putative COPPA violation. *See* Compl. ¶¶ 101, 247 (intrusion upon seclusion), 259 (invasion of privacy), 275 (trespass to chattels), 285 (negligence), 303 (negligence per se), 310 (unjust enrichment), 326 (UCL), 349 (ECPA), 366 (WESCA).

[7] This Court recently reaffirmed that "actual knowledge" is required for COPPA liability. *See In re TikTok, Inc. Minor Privacy Litig.*, 2025 WL 3628598, at *12 n.1, *14–16 (C.D. Cal. Nov. 5, 2025) (Wu, J.). Google is differently situated than TikTok because, unlike YouTube, the FTC alleged that the TikTok platform as a whole was directed to kids and also that TikTok was "knowingly allowing children to bypass the age gate and collecting personal information from them" and "failing to delete accounts and information identified as belonging to children." *Id.* at *2. There are no comparable allegations here. And the FTC never accused Google of doing anything wrong relating to the Disney videos at issue here.

knowledge" was mis-designated as NMFK and (2) failed to change the designation. *See* Compl. ¶¶ 158, 191–222.

To the contrary, Plaintiffs admit that Google complied with the 2019 FTC Order by implementing the MFK policy, which is intended "to ensure that both YouTube and content creators comply with COPPA and other laws." Compl. ¶ 107. As contemplated by the Order, the MFK policy requires content creators (who "know their videos and audience best") to designate child-directed videos properly. *See id.* ¶¶ 4, 6, 107, 110, 146, 147; Hsu Decl. ¶ 10 (YouTube Creators video) (cited at Compl. ¶ 113 n.41); *see also supra* at 3–4. The FTC has acknowledged that Google is entitled to rely on content creators' designations. *See* FTC Disney Complaint ¶ 20. So do Plaintiffs. *See* Compl. ¶ 110. Even so, as Plaintiffs also recognize, Google implemented a monitoring system to aid compliance with COPPA and find "clearly" MFK videos. *See id.* ¶ 113; Hsu Decl. ¶ 10 (YouTube Creators video) (cited at Compl. ¶ 113 n.41). Plaintiffs call Google's corrective measures "inadequate" but offer no factual support for this conclusion. And in any event, having an "inadequate" enforcement system is not the same as having actual knowledge of specific mis-designated videos. *See In re Alphabet Derivative Stockholder Litig.*, 2022 WL 1045642, at *1.

Plaintiffs, in fact, admit that Google *fixed the alleged problem* created by Disney by re-designating more than 300 videos. *See* Compl. ¶ 158. Knowledge that a small subset of videos may have been mis-designated among the tens of thousands Disney uploaded to YouTube[8] is not actual knowledge that other Disney videos were allegedly mis-designated. *See In re Alphabet Derivative Stockholder Litig.*, 2022 WL 1045642, at *1–2, *4; *see also* Compl. ¶ 110 (Google "is supposed to rely on the MFK designation" set by the creator). Nor does Plaintiffs' allegation that certain NMFK-designated videos also appeared on the separate YouTube Kids platform give rise to a plausible inference that Google actually knew that those specific videos were child-directed, as Plaintiffs allege. *See* Compl. ¶¶ 125,

[8] Compl. ¶ 74.

127. While all content on YouTube Kids is treated as MFK for data-collection purposes,[9] not all of it is in fact "child-directed."[10] Just by way of example, YouTube Kids hosts music videos by popular musicians, cooking content, and professional sports highlights. *See* Hsu Decl. ¶ 11. Finally, the allegation that Google was "aware of" the Disney audience "demographic" is insufficient to establish actual knowledge of allegedly mis-designated content. If anything, Plaintiffs' factual allegations suggest that Disney's demographic was not primarily children: they explain that "Disney operates many official YouTube channels[.]" *See* Compl. ¶ 73. Among them are the National Geographic, Star Wars, and Marvel Entertainment channels—none of which, obviously, are primarily directed to children.

In short, the conclusory allegation on which Plaintiffs hang all of their claims against Google—that Google knowingly collected their personal information while they watched child-directed videos—lacks any plausible factual support in the Complaint. Because all of Plaintiffs' claims are predicated on their theory that Google violated COPPA, the Complaint should be dismissed for this reason alone.

## II. THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS RELY ON IMPROPER "SHOTGUN PLEADINGS."

The Complaint suffers from a second overarching defect: Plaintiffs rely on improper "shotgun pleadings" against all "Defendants" that fail to identify which specific defendant committed which specific alleged act.

Under Rule 8, "a complaint must at least allow defendants to determine what they are being sued for." *Wood v. Panther*, 2025 WL 88844, at *1 (9th Cir. 2025) (quotation marks and citation omitted). Making "allegations against 'Defendants' in the aggregate without distinguishing which facts pertain to which specific Defendant . . . is plainly impermissible" because "so-called 'shotgun pleadings' do not satisfy Rule 8's notice

---

[9] *See* Hsu Ex. E (YouTube Kids Privacy Notice).

[10] *See* Hsu Ex. G (YouTube For Families Help Center webpage).

requirement." *Resh, Inc v. Skimlite Mfg. Inc*, 666 F. Supp. 3d 1054, 1059 (N.D. Cal. 2023) (citing cases and granting motion to dismiss on this basis). Plaintiffs cannot fill in the gaps of a plausible claim against any one defendant "by simply lumping all defendants together as 'Defendants,'" as they do here, "because that would effectively neuter the *Twombly*/*Iqbal* rule[.]" *First Call Int'l, Inc. v. S&B Glob., Inc.*, 2024 WL 4404429, at *5 (C.D. Cal. July 5, 2024) (Wu, J.) (granting motion to dismiss on this basis).

This improper practice is especially egregious here with respect to the claims against Google. As the content creator, Disney was obligated to designate its child-directed videos as MFK. *See* Compl. ¶ 110. As the operator of YouTube, Google was entitled to rely on those designations when it determined whether to collect personal information from users who watched those videos. *See id*. Plaintiffs' "shotgun pleading" fails to recognize this critical distinction between Disney's and Google's respective roles. *See, e.g.*, *id.* ¶¶ 17, 167, 291, 302, 318, 325, 330 ("Defendants'" conduct); *id.* ¶¶ 285, 290, 306 ("Defendants'" knowledge). Even worse, the Complaint repeatedly attributes to Google conduct that cannot be attributed to it. For instance, Plaintiffs allege that "Defendants" "misclassified videos," Compl. ¶ 231, but Google did not designate the videos—Disney did, *see id.* ¶ 132. And Plaintiffs allege that "Defendants operate" YouTube channels, *id.* ¶ 22, but Disney, not Google, operates its own YouTube channels, *see id.* ¶¶ 33–34, 73, 193.

As in *Resh* and *First Call*, this defect, too, mandates dismissal.

## III. PLAINTIFFS' CLAIMS FOR EQUITABLE RELIEF FAIL.

### A. Plaintiffs Lack Article III Standing to Seek Injunctive Relief.

Plaintiffs have no basis to seek injunctive relief through any claims in this action because any such relief is already the subject of existing federal injunctions.

To establish Article III standing for injunctive relief, Plaintiffs must demonstrate "a 'real and immediate threat of repeated injury.'" *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 948 (9th Cir. 2011) (citation omitted); *see also Laird v. United Tchrs. L.A.*, 615 F. Supp. 3d 1171, 1178 (C.D. Cal. 2022), *aff'd*, 2023 WL 6970171 (9th Cir. Oct. 23, 2023) (standing to pursue injunctive relief requires "impending" injury).

Plaintiffs cannot plausibly allege a "real and immediate threat" of repeat injury because, as they acknowledge, the 2019 FTC Order and Disney Order already address the conduct complained of here as to both Google and Disney, respectively. *See, e.g.*, Compl. ¶¶ 101, 105, 107, 153, 162. In light of these two existing injunctions, Plaintiffs do not plausibly face any "impending injury," so their requests for injunctive relief must be dismissed. *See, e.g.*, *In re Pre-Filled Propane Tank Antitrust Litig.*, 893 F.3d 1047, 1054 (8th Cir. 2018) (no standing to seek injunction where FTC orders provided substantially similar relief); *Joaquin v. Geico Gen. Ins.*, 2008 WL 53150, at *4 (N.D. Cal. Jan. 2, 2008) (no standing to seek injunctive relief where existing agreement between defendant and state agency addressed same harm); *Archer v. Carnival Corp. & PLC*, 2020 WL 9264981, at *7 (C.D. Cal. Sept. 22, 2020) (no standing for injunctive relief where defendant stopped allegedly wrongful conduct).

### B. Plaintiffs' Complaint Demonstrates They Have Adequate Remedies at Law.

Plaintiffs also cannot pursue restitution or other equitable relief because they do not plead facts showing legal remedies are inadequate to redress their harms. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (dismissing equitable restitution claims on this basis). Plaintiffs base their request for restitution on the exact harms they identify with respect to their damages claims. But, instead of explaining why legal remedies are insufficient, they offer only the boilerplate contention that they lack "an adequate remedy at law." *See* Compl. ¶ 319. Absent any factual allegations supporting their conclusion, Plaintiffs' allegation "stops short of the line between possibility and plausibility of entitlement to relief." *See Twombly*, 550 U.S. at 557 (quotation marks and citation omitted).

## IV. PLAINTIFFS' INTRUSION UPON SECLUSION AND INVASION OF PRIVACY CLAIMS FAIL.

Plaintiffs fail to state a claim for intrusion upon seclusion and California constitutional privacy because the Complaint does not allege any facts that would show a "highly offensive" intrusion by Google.

Intrusion upon seclusion and California constitutional privacy claims require (1) a "reasonable expectation of privacy" in the information collected and (2) a "highly offensive" intrusion into that privacy. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022); *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 285 (2009). This is a "high bar": the violation must "constitute an egregious breach of the social norms underlying a privacy right." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal.4th 1, 37 (1994); *see also McCoy v. Alphabet Inc.*, 2021 WL 405816, at *7 (N.D. Cal. Feb. 2, 2021). "Routine commercial behavior" does not suffice without "plus factors" like secrecy, deception, or another "bad act." *See Hubbard v. Google LLC*, 2024 WL 3302066, at *7–8 (N.D. Cal. July 1, 2024) (dismissing privacy claims in COPPA-related civil action).

Plaintiffs concede that the data practices they allege, like the purported collection of device IDs and user activity data to deliver personalized video recommendations and advertising, are routine commercial behavior. *See, e.g.*, Compl. ¶ 173 ("Organizations across every sector use and monetize consumer data to increase profits and the value of such information as a commodity is measurable."). In fact, courts have "consistently refused to characterize the disclosure of common, basic digital information to third parties as serious or egregious violations of social norms." *In re Google, Inc. Priv. Policy Litig.*, 58 F. Supp. 3d 968, 985, 988 (N.D. Cal. 2014). Plaintiffs do not identify any "plus factor" that would turn this routine commercial behavior into a highly offensive intrusion.

Plaintiffs' allegation that they are minors, without more, is not a "plus factor." "[R]outine behavior, including the collection of internet-browsing data and persistent identifiers," does not "obtain a more-offensive status merely because the behavior happened to involve a child[.]" *See Hubbard*, 2024 WL 3302066, at *8 (collecting cases

rejecting privacy claims despite alleged data collection from children). For the same reason, Plaintiffs' generalized allegations about concerns with data collection from minors fail to clear the high bar of "highly offensive." *See* Compl. ¶¶ 14, 15, 37, 39, 41, 188–89 (citing consumer surveys, academic studies, and scholarly literature regarding parents' and researchers' concerns about children's privacy and exposure to advertising).

Plaintiffs' conclusory allegations about Google's supposed actual knowledge of mis-designated videos also do not qualify as a "plus factor." As discussed above, Plaintiffs fail to allege any plausible facts showing that Google knew there was Disney content directed to children that was not designated as MFK or that it intentionally collected children's personal information without parental consent. Plaintiffs also acknowledge Google is entitled to rely on the MFK/NMFK designations made by content creators and has a monitoring system to look for clearly MFK content, going above and beyond the requirements of the 2019 FTC Order. They even recognize that Google *fixed* the alleged problem in this case by re-designating as MFK supposedly mis-designated videos. *See supra* at 7. These facts, all acknowledged by Plaintiffs in their Complaint, undermine any contention that Google committed a highly offensive intrusion. *See Hubbard*, 2024 WL 3302066, at *7–8; *Heeger v. Facebook, Inc.*, 2019 WL 7282477, at *4 (N.D. Cal. Dec. 27, 2019).

Finally, to the extent Plaintiffs allege that a violation of COPPA would be "highly offensive," *see* Compl. ¶ 248, that theory fails for the same reason: Plaintiffs do not plausibly allege that Google had actual knowledge of improperly designated Disney content. Moreover, bare "violations of law do not necessarily represent highly offensive behavior" because the "highly offensive" inquiry requires a "holistic consideration of factors" that cannot be satisfied by simply tacking on alleged statutory failures. *See Hubbard*, 2024 WL 3302066, at *8 (collecting cases where alleged statutory violations, including COPPA, could not support privacy claims).

If anything, the facts alleged show lawful, not "highly offensive," behavior. Plaintiffs' privacy claims thus fail as a matter of law.

## V. PLAINTIFFS' TRESPASS TO CHATTEL CLAIM FAILS.

Plaintiffs' trespass to chattel claim fails because Plaintiffs allege no facts showing that Google engaged in "'an intentional interference with the possession of personal property' caus[ing] injury." *Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962, 968 (9th Cir. 2024) (quoting *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1350–51 (2003)) (emphasis omitted).

***First***, Plaintiffs fail to allege any intentional conduct by Google. "It is clear that California law requires intent as an element of trespass to chattels." *Shatford v. L.A. Cnty. Sheriff's Dep't*, 2016 WL 1579379, at *22 (C.D. Cal. Mar. 29, 2016) (quotation marks and citation omitted). A plaintiff's alleged harm cannot be the "result of carelessness and inattention[.]" *Vasquez v. Garulay*, 2014 WL 12965947, at *4 (C.D. Cal. Nov. 10, 2014). Plaintiffs have not identified any such intent on Google's part; instead, as they acknowledge, the "intent" of Google's MFK policy is "to ensure" compliance with "COPPA and other laws." Compl. ¶ 107. And, as explained above, Plaintiffs' allegations do not give rise to a plausible inference that Google knew Disney's videos were mis-designated, despite their conclusory assertions of intentional conduct. *See supra* Section I. Thus, Plaintiffs have not plausibly alleged that Google "intend[ed]" to collect their data. *See Vasquez*, 2014 WL 12965947, at *4 (dismissing trespass to chattel claim where plaintiff failed to allege any specific facts speaking to defendant's intent).

***Second***, Plaintiffs fail to allege an actionable injury under trespass law. Applying *Hamidi*, courts hold that trespass to chattel "does not encompass, and should not be extended to encompass, an electronic communication that neither damages the recipient computer system nor impairs its functioning." 30 Cal. 4th at 1347; *see, e.g.*, *LaCourt v. Specific Media, Inc.*, 2011 WL 1661532, at *7 (C.D. Cal. Apr. 28, 2011) (no actionable trespass to chattel claim for plaintiffs who alleged collection of online data absent allegations that "the functioning of their computers was impaired . . . or would be imminently impaired"); *Yunker v. Pandora Media, Inc.*, 2013 WL 1282980, at *15–16 (N.D. Cal. Mar. 26, 2013) (dismissing trespass to chattel claim where plaintiff failed to

allege sufficiently reduced functioning of device). Plaintiffs allege no such deprivation or impairment to their computer systems—only that the value of their personal information was "damaged," "diminished," or "destroyed." Compl. ¶ 277. Under *Hamidi*, that is not enough. *See* 30 Cal. 4th at 1347.

## VI. PLAINTIFFS' NEGLIGENCE CLAIMS FAIL.

Plaintiffs' negligence claims fail because COPPA expressly bars state law claims that would impose liability under a standard that is lower than actual knowledge. They also fail because Plaintiffs have not alleged facts sufficient to establish the elements of those claims.

### A. Plaintiffs' Negligence Claims Are Preempted by COPPA.

COPPA expressly preempts inconsistent state law. *See* 15 U.S.C. § 6502(d) (prohibiting liability for activities or actions that are "inconsistent with the treatment of those activities or actions" under COPPA). While "parallel" state laws that "supplement" or "require the same thing" as federal law are not preempted, those that are "contrary to" or "stand[] as an obstacle" to COPPA are. *Jones v. Google, LLC*, 73 F.4th 636, 641–43 (9th Cir. 2023); *see also NetChoice v. Brown*, 2025 WL 3267786, at *21 (D. Md. Nov. 24, 2025) (COPPA only allows "consistent" and "parallel legislative schemes covering online privacy of children").

Unlike the claims in *Jones* that were merely "parallel to" COPPA and thus not preempted, Plaintiffs' negligence theory seeks to impose liability even absent "actual knowledge" that personal information is being collected from a child. They assert various lower standards for liability under their negligence claims, including recklessness, negligence, and constructive knowledge. *See, e.g.*, Compl. ¶ 285 (negligent or reckless failure); *id.* ¶ 286 (failure "to take reasonable steps"); *id.* ¶ 287 ("knew or should have known"); *see also id.* ¶¶ 300–03 (similar). Negligence, of course, imposes liability for the breach of a duty of ordinary care. *See* 6 Witkin, *Summary of Cal. Law*, § 961 (11th ed. 2023). But COPPA has a much higher bar for liability; it requires "actual knowledge." *See* 15 U.S.C. § 6502(a)(1).

Because Plaintiffs' negligence claims would impose liability under a less stringent standard than actual knowledge as would be required under COPPA, they are preempted. *See NetChoice*, 2025 WL 3267786, at *21 (COPPA preempted state statute imposing liability on provider who "should have known" a user is a child because of the laws' "differing mens rea requirements").

**B. Plaintiffs Fail to State a Claim for Negligence.**

Plaintiffs' negligence claim also fails because they cannot show two critical elements of that claim: (1) the breach of a duty of care and (2) damages caused by that breach. *See Dyroff v. Ultimate Software Grp., Inc.*, 2017 WL 5665670, at *12 (N.D. Cal. Nov. 26, 2017), *aff'd*, 934 F.3d 1093 (9th Cir. 2019) (affirming dismissal for failure to plead social media platform breached duty of care).

***First***, Plaintiffs make no factual allegations to support their conclusory allegation that Google breached any duty of care. To the contrary and as explained above, the facts Plaintiffs allege show that Google complied with the law by implementing the MFK policy as required by the 2019 FTC Order and relying on content creators' designations as it was entitled to do while also putting in place a monitoring system to identify clear child-directed content. *See supra* Section I. In any event, courts generally agree that there is "no special relationship between [an online platform] and its users" giving rise to any special duty of care, and the Ninth Circuit has "decline[d] to create" one. *Dyroff*, 934 F.3d at 1101.

***Second***, Plaintiffs fail to allege any actual, non-speculative damages resulting from the supposedly negligent collection of their data by Google.

Negligence claims "require actual damages resulting from the complained-of conduct." *Holly v. Alta Newport Hosp., Inc.*, 612 F. Supp. 3d 1017, 1026 (C.D. Cal. 2020) (dismissing negligence claim where plaintiff failed to allege actual damages after hospital employee inadvertently posted photographs of plaintiff's personal information on a public Facebook account) (citing *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000)). Actual damages must also be the result of an "appreciable, nonspeculative, present injury." *Aas v. Super. Ct.*, 24 Cal. 4th 627, 646 (2000), *superseded by statute on*

*other grounds as stated in Rosen v. State Farm Gen. Ins.*, 30 Cal. 4th 1070, 1079–80 (2003); *see also Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1032 (N.D. Cal. 2012) (no actual damages because plaintiffs failed to allege how they were "foreclosed from capitalizing on the value of [their] personal data"). "[N]ominal damages, to vindicate a technical right, cannot be recovered in a negligence action, where no actual loss has occurred." *Ruiz v. Gap, Inc.*, 380 F. App'x 689, 691 (9th Cir. 2010) (quotation marks and citation omitted).

Plaintiffs here have no actual damages. They allege that (1) they lost "opportunity of how" their data "is used," (2) their data is subject to "compromise, publication, and/or theft," (3) there is "continued risk" to their data, and (4) they will face "future costs." Compl. ¶ 291. None of these allegations demonstrates the existence of present, non-speculative damages sufficient to support a negligence claim.

Plaintiffs' failure to allege any cognizable injury also mandates dismissal. *See Dyroff*, 2017 WL 5665670, at *12.

**C. Plaintiffs Fail to State a Claim for Negligence Per Se.**

Negligence per se is not an independent cause of action, but an evidentiary doctrine a plaintiff asserting negligence claims can use to establish a presumption that the defendant breached a duty of care. *See Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1285–86 (2006). It follows that Plaintiffs cannot assert both a negligence claim and a negligence per se claim in the same action. *See, e.g.*, *Konkol v. Oakwood Worldwide Loc., LLC*, 2015 WL 46177, at *5 (C.D. Cal. Jan. 2, 2015) (dismissing negligence per se claim as duplicative of negligence claim) (citing *Quiroz*, 140 Cal. App. 4th at 1285).

In any event, a plaintiff asserting negligence per se must allege the violation of a statute, as well as the underlying elements of negligence. *Dent*, 902 F.3d at 1130. As discussed above, Plaintiffs do not adequately allege actual knowledge and thus have not shown an alleged violation of COPPA. *See supra* Section I. Nor do they plausibly allege the underlying elements of negligence. *See supra* Section VI.B. Their per se "claim" must be dismissed for these reasons as well.

## VII. PLAINTIFFS' UCL CLAIM FAILS.

California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice[.]" Cal. Bus. & Prof. Code § 17200. Plaintiffs' UCL claim fails on multiple bases.

### A. Plaintiffs Lack UCL Standing.

Statutory standing under the UCL is "substantially narrower" than under Article III. *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 705 n.3 (9th Cir. 2020) (quoting *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 324 (2011)). It requires a plaintiff to demonstrate they "lost money or property as a result" of the alleged conduct. Cal. Bus. & Prof. Code § 17204; *McMahon v. Take-Two Interactive Software, Inc.*, 745 F. App'x 786, 787 (9th Cir. 2018); *see also In re Facebook Priv. Litig.*, 572 F. App'x 494, 494 (9th Cir. 2014) (no UCL standing for plaintiffs whose alleged harm was "dissemination of their personal information" and "losing the sales value" thereof).

"[N]umerous courts in this circuit have held that the disclosure of a plaintiff's personal information, absent allegations that the plaintiff intended to participate in the market to sell such information, does not constitute a monetary or property loss for purposes of UCL standing." *Roe v. Amgen Inc.*, 2024 WL 2873482, at *8 (C.D. Cal. June 5, 2024); *see also Lau v. Gen Digital Inc.*, 2023 WL 10553772, at *7 (N.D. Cal. Sept. 13, 2023) (collecting cases). To plead a loss theory based on diminution in the value of their data, a plaintiff must allege facts showing a market for the types of data allegedly collected from them, "that they ever attempted or intended to participate in" that market, and that the defendant's purported collection "inhibited" their "ability to participate in it." *Amgen*, 2024 WL 2873482, at *8.

Read in its best light, Plaintiffs' loss theory appears based on a putative diminution in the value of their data. *See* Compl. ¶ 332 (Plaintiffs' data "objectively has value"). But like the plaintiffs in *Amgen* and *Lau*, Plaintiffs here fail to offer the details necessary to establish that they lost "money or property." *See* Cal. Bus. & Prof. Code § 17204. ***First***, to establish the requisite market, they rely on reports about the value of personal information

and "children's data" generally (and assertions that Google and others have paid for *other* types of data). *See* Compl. ¶¶ 174–76, 178–83. This does not plausibly identify a market for the data allegedly collected *from them*: their YouTube browsing history, device identifiers, IP addresses, and other location and technical information. *See id.* ¶ 65; *Amgen*, 2024 WL 2873482, at *8 (no UCL standing without alleging "market for the information allegedly collected and stored by Defendant[s]"). ***Second***, even if these allegations could establish a market as required (they cannot), Plaintiffs do not even attempt to allege that they "ever attempted or intended to participate" in that market or were "inhibited" in their ability to do so. *See Amgen*, 2024 WL 2873482, at *8. They lack standing for this reason too. *See id.*

Because Plaintiffs lack standing, their UCL claim should be dismissed.

**B. Plaintiffs Fail to Allege Any Unlawful, Unfair, or Fraudulent Conduct.**

The UCL prohibits business practices that are unlawful, unfair, or fraudulent. Cal. Bus. & Prof. Code § 17200–17210. Plaintiffs fail to plead any.

**Unlawful**: Plaintiffs' "unlawful" UCL claim is based on Google's putative violation of the statutes and common law under which they sue. Compl. ¶ 326. Plaintiffs fail to establish any of these predicate violations, *see supra* Sections I–VI, VIII–X, so their derivative "unlawful" UCL claim also fails, *see Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1553 (2007).

**Fraudulent**: A UCL claim brought under the fraudulent prong must be pled with particularity under Rule 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). This requires a plaintiff to specifically allege "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). Plaintiffs broadly allege that "Defendants" failed to protect Plaintiffs' information "despite assurances," Compl. ¶ 327, but offer no specifics about "what" assurances Google made or "when" and "where" Google made them. These allegations fail Rule 9(b), so Plaintiffs cannot establish a "fraudulent" claim.

**Unfair**: Plaintiffs' UCL claim under the unfair prong is premised on the same alleged conduct as their claims under the fraudulent and unlawful prongs and thus fails with those prongs. *Compare* Compl. ¶ 328 *with id.* ¶¶ 326, 327; *see also Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 647 (N.D. Cal. 2021).

## VIII. PLAINTIFFS' ECPA CLAIM FAILS.

Plaintiffs' claim under the Electronic Communications Privacy Act ("ECPA") simply does not apply to the facts they allege and should thus be dismissed.

ECPA prohibits the unauthorized interception of the contents of an "electronic communication" by those who are not parties to the communication. 18 U.S.C. § 2511(1)(a), 2(c). "[B]y definition, parties to a conversation cannot eavesdrop on their own conversation." *Esparza v. Lenox Corp.*, 2023 WL 2541352, at *3 (N.D. Cal. Mar. 16, 2023) (dismissing wiretapping claims). Thus, the crux of an ECPA claim is the existence of an unknown third-party interceptor. Moreover, any "interception" must occur while a communication is in transit, *i.e.*, "contemporaneous[ly] with transmission." *Konop v. Haw. Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002).

In this case, Plaintiffs allege that Google collected their personal information when they knowingly used YouTube. Plaintiffs cannot plausibly allege that they did not know they were communicating with Google when using Google's own platform. As the operator of the website with which Plaintiffs interacted, Google was the direct recipient of any communications from Plaintiffs to YouTube and thus a party to those communications. *See, e.g.*, *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024) (website owner "was the party that was meant to, and did, receive Plaintiffs' communications on the Website"). As a party to those communications, Google cannot be liable as an interceptor under ECPA.

Nor do Plaintiffs identify any other potential third-party interceptor who received the data while it was in transit from Plaintiffs to Google. At most, they offer the vague allegation that "Defendants share user data with third-party advertisers, brands and platforms[.]" *See* Compl. ¶ 84. But they offer no factual allegations giving rise to the

plausible inference that those advertisers received any data *while Plaintiffs were interacting with YouTube*. Plaintiffs then conclude, "[o]n information and belief," that "Plaintiffs' and Class Members' electronic communications are intercepted contemporaneously with their transmission." *Id*. ¶ 364. This does not state a wiretapping claim. *See Esparza v. Gen Digital Inc.*, 2024 WL 655986, at *4 (C.D. Cal. Jan. 16, 2024) (merely restating "the pleading requirement of real time interception" is "insufficient"); *de Ayora v. Inspire Brands, Inc.*, 2025 WL 3707561, at *7 (N.D. Cal. Dec. 22, 2025) (similar).

In addition, because Plaintiffs fail to identify any communication intercepted by Google that was not directed to Google as the operator of the YouTube platform, they cannot plead a separate claim for improper "disclos[ure]" or "use" of "intercepted" communications under ECPA. 18 U.S.C. § 2511(1)(c)–(d); *Noel v. Hall*, 568 F.3d 743, 751 (9th Cir. 2009).

## IX. PLAINTIFFS' WESCA CLAIM FAILS.

Pennsylvania's Wiretapping and Electronic Surveillance Control Act ("WESCA") claim fails for the same reasons as the ECPA claim. WESCA only prohibits the unauthorized third-party interception of electronic communications and the disclosure and use of intercepted communications. 18 Pa. Stat. and Cons. Stat. Ann. § 5703. WESCA, like its federal counterpart, requires that interception "occur contemporaneously with transmission." *Strehl v. Guitar Ctr., Inc.*, 2024 WL 2790373, at *8 (C.D. Cal. May 29, 2024) (internal quotation marks and citations omitted). But Plaintiffs fail to identify any third-party interception of a communication. *See supra* Section VIII.

## X. PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS.

Plaintiffs' unjust enrichment claim fails for three reasons. ***First***, Plaintiffs' unjust enrichment claim should be dismissed, because it is not a cognizable cause of action. In its most recent decision addressing unjust enrichment, the Ninth Circuit held that unjust enrichment can only be asserted as a "remedy for some other valid cause of action," not as a freestanding claim. *Klaehn v. Cali Bamboo LLC*, 2022 WL 1830685, at *2 n.2 (9th Cir. June 3, 2022); *see also, e.g.*, *Attenello v. Aetna Life Ins.*, 2025 WL 2661772, at *8 (C.D.

Cal. Sept. 16, 2025); *Sotelo v. Rawlings Sporting Goods Co.*, 2019 WL 4392528, at *8 (C.D. Cal. May 8, 2019) (Wu, J.). ***Second***, Plaintiffs' claim against Google should be dismissed, because Plaintiffs only seek relief from Disney on that claim. *See* Compl. ¶ 322; *Stewart v. Am. Ass'n of Physician Specialists, Inc.*, 2015 WL 134061 (C.D. Cal. Jan. 8, 2015) (dismissing claim against defendants against whom no relief was sought). ***Third***, Plaintiffs' unjust enrichment claim also fails with their predicate claims. *See Hawkins v. Shimano N. Am. Bicycle Inc.*, 2024 WL 4405249, at *9 (C.D. Cal. Aug. 1, 2024); *see also* Sections I–IX.

## CONCLUSION

For the foregoing reasons, the claims against Google LLC and YouTube LLC should be dismissed with prejudice.

Dated: April 3, 2026

Respectfully submitted,

MAYER BROWN LLP

By: */s/ Anthony J Weibell*
Anthony J Weibell

Attorney for Defendants
GOOGLE LLC AND YOUTUBE LLC

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Google LLC and YouTube LLC, certifies that this brief contains 6,996 words, which complies with the word limit of L.R. 11-6.1.

Dated: April 3, 2026

Respectfully submitted,

MAYER BROWN LLP

By: */s/ Anthony J Weibell*
Anthony J Weibell

Attorney for Defendants
GOOGLE LLC AND YOUTUBE LLC

## CERTIFICATION OF MEET AND CONFER

I certify that the parties met by videoconference on March 27, 2026, thoroughly discussed each and every issue raised in the motion, and attempted in good faith to resolve the motion in whole or in part.

Dated: April 3, 2026

Respectfully submitted,

MAYER BROWN LLP

By: */s/ Anthony J Weibell*
Anthony J Weibell

Attorney for Defendants
GOOGLE LLC AND YOUTUBE LLC