Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Ave. Suite 500
Burbank, CA 91505
Tel: (310) 474-9111
Fax: (310) 474-8585

Jean S. Martin *(admitted pro hac vice)*
jmartin@awkolaw.com
**AYLSTOCK, WITKIN,**
**KREIS & OVERHOLTZ PLC**
17 East Main Street, #200
Pensacola, Florida 32502
Tel: (850) 266-2893
Fax: (850) 916-7449

William J. Edelman (SBN 285177)
wedelman@milberg.com
**MILBERG, PLLC**
280 South Beverly Drive, Penthouse
Beverly Hills, CA 90212
(771) 474-1121

*Plaintiffs' Interim Co-Lead Counsel*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

IN RE DISNEY WORLDWIDE SERVICES COPPA LITIGATION

Case No. 2:25-CV-08410-GW-RAO

Complaint Filed: February 17, 2026

**PLAINTIFFS' OPPOSITION TO DEFENDANTS THE WALT DISNEY COMPANY'S, DISNEY WORLDWIDE SERVICES, INC.'S, AND DISNEY ENTERTAINMENT OPERATIONS LLC'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Assigned to: Judge George H. Wu
Hearing Date: June 15, 2026
Time: 8:30 a.m.
Location: Courtroom 9D

## TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 1

III. LEGAL STANDARD ........ 2

IV. ARGUMENT ........ 2

A. Plaintiffs Plausibly Allege They Viewed Child-Directed Videos Misdesignated as NMFK. ........ 2

B. Plaintiffs' Allegations Do Not Constitute Impermissible "Group Pleading." ........ 6

C. Plaintiffs Adequately Allege Their Common Law Claims. ........ 8

1. Disney's "Choice of Law" Argument Is Premature. ........ 8

2. Plaintiffs Adequately Allege Claims for Invasion of Privacy. ........ 9

a. Plaintiffs Allege Facts Establishing that Disney Intruded Upon Their Reasonable Expectations of Privacy. ........ 9

b. Plaintiffs Sufficiently Allege that Disney's Intrusion was Highly Offensive. ........ 12

3. Plaintiffs Adequately Allege a Negligence Claim. ........ 13

4. Plaintiffs Adequately Allege a Claim for Negligence Per Se. ........ 15

5. Plaintiffs Adequately Allege a Claim for Trespass to Chattels. ........ 15

6. Plaintiffs Adequately Allege a Claim for Unjust Enrichment. ........ 16

D. Plaintiffs' Adequately Allege Their Statutory Claims. ........ 18

1. Plaintiffs Adequately Allege Disney Violated the UCL. ........ 18

a. Plaintiffs sufficiently state a claim under the UCL's unlawful prong. .... 18

b. Plaintiffs sufficiently state a claim under the UCL's unfair prong. .... 20

c. Plaintiffs sufficiently state a claim under the UCL's fraud prong. .... 21

d. Plaintiffs have standing to pursue their UCL claim. .... 22

2. Plaintiffs Adequately Allege Disney Violated the ECPA. .... 24

a. Plaintiffs adequately allege interception by Disney .... 24

b. Plaintiffs adequately allege interception of the contents of communications. .... 25

c. Plaintiffs adequately allege interception during transmission. .... 25

d. The One-Party Consent Rule does not bar Plaintiffs' claim. .... 25

3. Plaintiffs Adequately Allege a WESCA Violation. .... 26

E. Plaintiffs' Request for Injunctive Relief is Not Moot. .... 26

V. CONCLUSION .... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A.B., by and through Turner v. Google LLC*,
737 F. Supp. 3d 869 (N.D. Cal. 2024) .......... 13, 19, 23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 2, 5

*Astiana v. Ben & Jerry's Homemade, Inc.*, No. 10-cv-4387,
2011 WL 2111796 (N.D. Cal. May 26, 2011) .......... 26

*Astiana v. Hain Celestial Group*,
783 F.3d 753 (9th Cir. 2015) .......... 16

*B.K. v. Desert Care Network*, No. 23-cv-5021,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) .......... 8

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 5

*Brooks v. Thomson Reuters Corp.*, No. 21-cv-1418,
2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) .......... 17

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 23

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .......... 21, 23

*Concha v. London*,
62 F.3d 1493 (9th Cir. 1995) .......... 6

*D'Antonio v. Smith & Wesson Inc.*, No. 25-cv-3085,
2026 WL 446310 (N.D. Cal. Feb. 17, 2026) .......... 11

*Dasrath v. Cont'l Airlines, Inc.*, No. 02-cv-2683,
2006 WL 372980 (D.N.J. Feb. 16, 2006) .......... 26

*Dickerson v. U.S. Steel Corp.*,
64 F.R.D. 351 (E.D. Pa. 1974) .......... 26

*Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023) .... 17

*Doyle v. FKA Distrib. Co.*, LLC, No. 23-cv-10807, 2025 WL 3804500 (C.D. Cal. June 13, 2025) .... 6

*eDrop-Off Chicago LLC v. Burke*, No. 12-cv-4095, 2013 WL 12131186 (C.D. Cal. Aug. 9, 2013) .... 8

*Freeman v. DirecTV*, 457 F.3d 1001 (9th Cir. 2006) .... 24

*Hammerling v. Google, LLC*, 615 F. Supp. 3d 1069 (N.D. Cal. 2022) .... 10

*hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180 (9th Cir. 2022) .... 15

*Homedics, Inc. v. Valley Forge Ins. Co.*, 315 F.3d 1135 (9th Cir. 2003) .... 8

*Howse v. Chiquita Canyon, LLC*, 757 F. Supp. 3d 1049 (C.D. Cal. 2024) .... 15

*Hubbard v. Google LLC*, 508 F. Supp. 3d 623 (N.D. Cal. 2020) .... 18, 19

*Hubbard v. Google LLC*, No. 19-cv-7016, 2025 WL 82211 (N.D. Cal. Jan. 13, 2025) .... 10, 11, 19

*In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623 (N.D. Cal. 2024) .... 14

*In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197 (N.D. Cal. 2014) .... 20, 21

*In re Ambry Genetics Data Breach Litigation*, 567 F. Supp. 3d 1130 (C.D. Cal. 2021) .... 15

*In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953 (N.D. Cal. 2016) .... 20

*In re BetterHelp, Inc.*, No. 23-cv-1033, 2024 WL 4504527 (N.D. Cal. Oct. 15, 2024) .... 27

*In re Facebook Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020 ........ 12, 23

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ........ 14

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ........ 17

*In re Pre-Filled Propane Tank Antitrust Litig.*,
893 F.3d 1047 (8th Cir. 2018) ........ 27

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,
753 F. Supp. 3d 849 (N.D. Cal. 2024) ........ 20, 21

*In re TikTok, Inc. Minor Privacy Litigation*, MDL 3144-GW-RAOx,
2025 WL 3628598 (C.D. Cal. Nov. 5, 2025) ........ 9, 12, 13, 14

*In re TikTok, Inc., Minor Privacy Litig.*, No. 25-ml-3144,
2025 WL 3628448 (C.D. Cal. Nov. 6, 2025) ........ 9

*India Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 (S.D. Cal. 2024) ........ 24, 25

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023). ........ 26

*Kurtz v. Kimberly-Clark Corp.*,
321 F.R.D. 482 (E.D.N.Y. 2017) ........ 26

*Lozano v. AT&T Wireless Servs., Inc.*,
504 F.3d 718 (9th Cir. 2007) ........ 20, 21

*Manning v. Zumpano Patricios, P.A.*, No. 25-cv-23184,
2025 WL 3062563 (S.D. Fla. Nov. 3, 2025) ........ 23

*McDonald v. Kiloo ApS*, 385
F. Supp. 3d 1022 (N.D. Cal. 2019) ........ 12, 13

*Milstead v. Gen. Motors LLC*, No. 21-cv-6338,
2023 WL 4410502 (N.D. Cal. July 6, 2023) ........ 17

*Parity Networks, LLC v. Moxa Inc.*, No. 20-cv-698,
2020 WL 6064636 (C.D. Cal. Sept. 11, 2020) ........ 6, 8

*Plotts v. Am. Honda Motor Co.*, No. 22-cv-4529,
2023 WL 4843342 (C.D. Cal. June 9, 2023) .......... 9

*Pratt v. Whole Foods Mkt. California, Inc.*, No. 12-cv-5652,
2014 WL 1324288 (N.D. Cal. Mar. 31, 2014) .......... 26

*Rodriguez v. Google LLC*, No. 20-cv-4688,
2022 WL 214552 (N.D. Cal. Jan. 25, 2022) .......... 25

*Romero v. Countrywide Bank, N.A.*,
740 F. Supp. 2d 1129 (N.D. Cal. 2010) .......... 22

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
806 F.2d 1393 (9th Cir. 1986). .......... 28

*Smith v. Rack Room Shoes, Inc.*, No. 24-cv-6709,
2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) .......... 26

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) .......... 17

*Soo Park v. Thompson,*
851 F.3d 910 (9th Cir. 2017) .......... 5

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) .......... 5, 6

*Thomas v. Papa Johns Int'l, Inc.*, No. 22-cv-2012,
2024 WL 2060140 (S.D. Cal. May 8, 2024) .......... 12

*Turner v. Apple, Inc.*, No. 20-cv-7495,
2022 WL 445755 (N.D. Cal. Feb. 14, 2022) .......... 17

*Valenzuela v. Super Bright LEDs Inc.*, No. 23-cv-1148,
2023 WL 8424472 (C.D. Cal. Nov. 27, 2023) .......... 25

**State Cases**

*Bartholomew v. Parking Concepts, Inc.*,
118 Cal. App. 5th 438 (2026) .......... 23

*Cel-Tech Comm'ns, Inc.*,
20 Cal. 4th 163 (1999) .......... 20

*Comm. On Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197 (1983). .......... 5, 22

*Hartford Casualty Insurance Co. v. J.R. Marketing, L.L.C.*, 61 Cal. 4th 988 (2015) .......... 17

*Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272 (2009) .......... 9

*Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1 (1994) .......... 9, 12

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009) .......... 19, 21

*Ladd v. Cnty. of San Mateo*, 12 Cal. 4th 913 (1996) .......... 13

*Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235 (2009) .......... 22

*People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508 (2002) .......... 20

*Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256 (2006) .......... 15

*Sierra-Bay Fed. Land Bank Assn. v. Superior Ct.*, 227 Cal. App. 3d 318 (1991) .......... 15

**Federal Statutes**

18 U.S.C. § 2510(8) .......... 25

18 U.S.C. § 2511(2)(d) .......... 26

**State Statutes**

Cal. Civ. Code § 1714(a) .......... 13

Cal. Evid. Code § 699(a) .......... 15

**Rules**

Fed. R. Civ. P., Rule 8 .......... 5, 6

Fed. R. Civ. P., Rule 9(b) .......... 5, 21

Fed. R. Civ. P., Rule 12(b)(6) .......... 1

**Regulations**

16 C.F.R. § 312.2 (June 23, 2025) .......... 7, 10, 18

16 C.F.R. § 312.4 (June 23, 2025) .......... 18

## I. INTRODUCTION

Defendants The Walt Disney Company, Disney Worldwide Services, Inc., and Disney Entertainment Operations, LLC (collectively, "Disney") ask this Court to disregard the Consolidated Complaint's detailed allegations and dismiss at the pleading stage. But Rule 12(b)(6) requires the opposite: accepting the well-pleaded facts as true and drawing reasonable inferences in Plaintiffs' favor. The Complaint readily clears that standard, alleging that each Plaintiff viewed child-directed Disney videos on YouTube that Disney misdesignated as "Not Made for Kids," enabling the unlawful collection and monetization of children's personal information.

Contrary to Disney's suggestion, the Complaint does not engage in impermissible "group pleading"; it carefully distinguishes the roles of each defendant and alleges facts supporting each claim. And Plaintiffs adequately plead cognizable privacy, property, and economic harms to support their common-law and statutory causes of action, including under the UCL and ECPA. Finally, Disney's contention that the FTC settlement moots injunctive relief fails on the pleadings and, in any event, turns on facts that can only be tested on a developed record. The motion should be denied.

## II. FACTUAL BACKGROUND

This case arises from Disney's operation and monetization of child-directed Disney video content on YouTube (which is owned by Google, LLC) under a COPPA-driven system that requires content creators to designate uploaded videos as "Made for Kids" ("MFK") or "Not Made for Kids" ("NMFK"). ¶¶ 4–5, 102–10.[1] YouTube adopted the MFK framework in the wake of a landmark 2019 FTC enforcement action and settlement addressing the collection of children's personal information without parental notice and verifiable parental consent. *Id.*

Under YouTube's framework, the MFK designation is intended to restrict the

[1] "¶ _" citations refer to the Consolidated Complaint.

collection of children's personal information for behavioral advertising and to disable features that otherwise increase engagement and data generation. ¶¶ 118–23. By contrast, when a child-directed video is not designated MFK (i.e., is treated as NMFK), the information of the child viewing the video is surreptitiously collected, without consent, targeted advertising can run using persistent identifiers, and adult-oriented functionality such as comments, likes/follows, and autoplay are enabled—features that increase engagement and, in turn, the value of the viewer to advertisers. ¶¶ 12, 118–23.

## III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, "accepted as true," to "state a claim of relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## IV. ARGUMENT

### A. Plaintiffs Plausibly Allege They Viewed Child-Directed Videos Misdesignated as NMFK.

Disney's lead argument—that Plaintiffs fail to plausibly allege they watched child-directed videos misdesignated as NMFK—rests on a mischaracterization of the allegations in the Complaint and a telling lack of legal authority. On its face, the Complaint expressly alleges that each Plaintiff "viewed Disney's child-directed content that was misclassified as NMFK on YouTube." ¶¶ 24–27.

Plaintiffs additionally explain and allege that during the class period, Disney uploaded tens of thousands of videos to more than 1,250 YouTube channels it operated through numerous subsidiaries, ¶ 74, and those videos are extraordinarily popular. ¶ 76. Most of Disney's video content is "directed to children" under the meaning of COPPA, as it involves animated characters and content under the family-friendly Disney brand that is built around creating content for children under 13 years

old. ¶¶ 46–48, 100. Disney has a strong financial incentive to designate videos as NMFK rather than MFK, because YouTube shares ad revenue with partners like Disney, and MFK videos cannot include personalized ads based on data about the viewer, resulting in less spending by advertisers; indeed, YouTube expressly warns partners like Disney that disabling behavior advertising "may significantly reduce your channel's revenue." ¶¶ 78, 109, 112, 124.

As a result, Disney regularly misdesignates child-directed videos as NMFK. This is reflected in NMFK designations on the regular YouTube platform for videos that are also uploaded to the YouTube Kids platform, which is designed to host child-directed content. ¶¶ 125–31. It also is reflected in misdesignation of certain Disney YouTube channels as NMFK, which results in designation of each video on the channel as NMFK, despite the channel (e.g., Pixar, Disney Animation Studios, Disney on Ice) and content (e.g., Mickey Mouse, *Frozen*, *Moana*, *Cars*) obviously being child-directed. ¶¶ 132–45 (describing and identifying by name a list of "Improperly Managed Channels"). Despite having the option, Disney had a policy of not changing the settings of individual videos placed on NMFK-designated YouTube channels to identify specific videos as child-directed, thus resulting in Improperly Managed Channels with misdesignated videos. ¶ 156.

Even worse, Disney did not follow that same policy when it came to videos on MFK-designated channels; rather, Disney affirmatively enabled targeted advertising (and thus collection of children's data) for certain videos on MFK channels even though such advertising is turned off by default to protect children. ¶¶ 161. Disney's widespread misdesignation practice described above led to an FTC enforcement action against Disney for violating COPPA, which resulted in Disney agreeing to pay $10 million to the FTC in 2025. ¶¶ 153–63.

Against this backdrop of the detailed allegations explaining Disney's systematic misdesignation of child-directed videos on YouTube, and an unequivocal allegation that each Plaintiff watched misdesignated child-oriented videos, ¶¶ 24–27,

Plaintiffs allege further details about their unique viewing experiences. Each Plaintiff alleges that they watched videos on Disney's Improperly Managed Channels, with each Plaintiff providing specific examples. ¶¶ 193 (Disney on Ice and Pixar), 201 (Disney Movies and Pixar), 209 (Walt Disney Animation Studios), 217 (Disney Channel Animation). Each Plaintiff likewise alleged that the videos they were watching were child-oriented, and each supported that allegation with examples of iconic characters and franchises involved in the videos they watched. ¶¶ 194 (Mickey Mouse and friends, *Frozen*, *Cars*, and *Encanto*), 202 (*Frozen*, *Cars*, and *Toy Story*), 210 (*Frozen*), 218 (Mickey Mouse and friends). Many Disney videos watched by each Plaintiff were misdesignated as NMFK, resulting in the unconsented-to collection of the child-Plaintiffs' personal information. ¶¶ 195–98, 203–06, 211–14, 219–22.

Disney ignores these detailed allegations, and instead imagines counterfactual scenarios inconsistent with the Complaint's allegations. Specifically, Disney speculates that, even if the allegations about Disney's widespread misdesignation were accurate, in Disney's view it is theoretically possible that *every* specific video *every* Plaintiff watched dating back to 2019 was actually properly designated as MFK. MTD at 7. One particularly flawed premise in Disney's attenuated logic chain is its suggestion that perhaps the 300 or so videos YouTube redesignated in June 2020 encompassed all of the videos that Plaintiffs watched dating back to 2019. MTD at 7. Not only is that wildly implausible given the small number of redesignations that occurred at the very beginning of the class period, but Plaintiffs expressly allege that those redesignations did not result in Disney changing its practice of misdesignating videos on Improperly Managed Channels. ¶ 160. Plaintiffs' allegations of watching misdesignated videos on Improperly Managed Channels "throughout the class period" dispose of Disney's argument. ¶¶ 192, 201, 209, 217.

Disney's argument also omits that a video's designation as MFK versus NMFK on YouTube is done behind the scenes by Disney, ¶¶ 108–115, and is therefore data uniquely in Defendants' possession. Disney's suggestion that Plaintiffs could try to

infer a designation because MFK designations disable certain public-facing features (MTD at 7) overlooks that the class period dates back to 2019, and Plaintiffs do not have access to historical records of all relevant videos' designations and public-facing features. In addition, Plaintiffs are children with necessarily limited and imperfect memories, and because watching YouTube videos does not require logging in, Plaintiffs may not necessarily have access to detailed historical viewing data.

As discussed *infra* § IV.D.1.c in the context of the required specificity for alleging fraud under the UCL, "children in particular are unlikely to recall the specific[s]." *Comm. On Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 218–19 (1983) (superseded on other grounds as stated in *Branick v. Downey Savings & Loan Ass'n*, 39 Cal. 4th 235, 242 (2006)). When numerous misrepresentations to children are concerned, courts can "reasonably require plaintiffs to set out or attach a representative selection of [misrepresentations]." *Id.* at 218. Nevertheless, Disney suggests that Plaintiffs can only plausibly allege a claim under Rule 8 by cross-referencing a list of every specific video every Plaintiff watched dating back to 2019 with a list of every misdesignated Disney video—information Defendants possess but Plaintiffs do not—and then cataloging the detailed results of that analysis in their Complaint. MTD at 7. Unsurprisingly, Disney cites no case law to support its argument that *Iqbal* and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) require pleading such extensive details, even under Rule 9(b).

Indeed, the case law specifically holds the opposite:

> If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible.

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *see also Soo Park v. Thompson,* 851 F.3d 910, 928 (9th Cir. 2017) ("We relax pleading requirements where the

relevant facts are known only to the defendant.") (quoting *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995)).

At bottom, Disney's arguments refuse to grapple with Plaintiffs' allegations that they watched misdesignated videos, the nature of Disney's misdesignation scheme resulting in specifically identified Improperly Managed Channels, and Plaintiffs' specific experiences with misdesignated videos on named Improperly Managed Channels. Disney's suggestion that Plaintiffs must rule out unlikely scenarios to state a plausible claim is legally incorrect. *Starr*, 652 F.3d at 1216; *Doyle v. FKA Distrib. Co.*, LLC, No. 23-cv-10807, 2025 WL 3804500, at *5 (C.D. Cal. June 13, 2025) (rejecting dismissal argument that merely pointed out possibility of alternative factual scenario).

### B. Plaintiffs' Allegations Do Not Constitute Impermissible "Group Pleading."

Disney's group pleading argument—that a few shorthand references to "Defendants" in the Complaint somehow renders the entire document impenetrably vague to the point Disney is not sure of the allegations against it—has no merit. Under Rule 8, a complaint may be subject to dismissal "if it does not indicate which individual defendant or defendants are responsible for which alleged wrongful act" because Rule 8 requires a "pleading give fair notice of the claim being asserted and the grounds upon which it rests." *Parity Networks, LLC v. Moxa Inc.*, No. 20-cv-698, 2020 WL 6064636, at *3 (C.D. Cal. Sept. 11, 2020). Nevertheless "group pleading may be permissible so long as group pleading is limited to defendants who are similarly situated." *Id.*

Here, the Complaint specifies in exacting detail the different roles that Disney and Google play in the alleged violations. Indeed, the Complaint's headings lay out a roadmap for distinguishing each Defendant's conduct and describing how each Defendant's separate conduct contributed to the alleged claims. Under "Factual Allegations," there are, for example, separate sections with clear headings describing:

(i) "Disney's Business Model," ¶¶ 43–51; (ii) "The YouTube Platform," ¶¶ 52–57; (iii) "The YouTube Platform and Data Collection Ecosystem," ¶¶ 58–72; (iv) "YouTube Disney's YouTube Business and Presence on YouTube," ¶¶ 73–88; (v) "COPPA Enforcement against YouTube and the Resulting 'Made For Kids' Policy," ¶¶ 102–24; (vi) "Disney Content on YouTube Kids," ¶¶ 125–31, (vii) "Disney's Systematic Failure to Appropriately Mark Child-Directed Videos," ¶¶ 132–52; and (viii) "COPPA Enforcement Against Disney," ¶¶ 153–67.

While couched in terms of a "group pleading" objection, Disney's primary argument in this section is really a merits argument masquerading as procedural confusion. In short, Disney insists that when children watch a misdesignated Disney video on YouTube, YouTube is necessarily the entity that directly receives the children's raw personal information, and in Disney's view, this means that YouTube and *only* YouTube "collects" children's personal information for purposes of COPPA. MTD at 8–10. As explained in detail below, Disney is incorrect about which entities "collect" information for purposes of COPPA under those facts: both YouTube and Disney "collect" the information. *See infra* § IV.D.1.

The larger point is that the Complaint presents no actual confusion, ambiguity, or inconsistency about the relevant facts informing the legal debate. When Plaintiffs allege that Disney "collected" personal information from minor children (¶¶ 8, 10, 12, 85, 101, 167, 196–97, 204–05, 212–13, 220–21), Plaintiffs use the term "collect[ed]" as it is defined under COPPA and its regulations, which means "the gathering of any personal information from a child by any means," including "enabling a child to make personal information publicly available in identifiable form" and "the passive tracking of a child online." *See* 16 C.F.R. § 312.2. For the avoidance of doubt, when Plaintiffs allege that Disney "collected" Personal Information from minor children, they treat "collection" and "enabling collection" as synonymous under COPPA, in part because of the definition of "collection" in Section 312.2(2) of the COPPA Rule, which includes "[e]nabling a child to make personal information publicly available in

identifiable form." Thus, when Plaintiffs allege Disney "collected" personal information from children, they are not alleging that Disney received personal information directly from the children; rather, they are alleging that Disney's enabling conduct amounts to "collection" under COPPA.

The remaining references to "Defendants" appear in paragraphs of the Complaint where Plaintiffs do, in fact, allege that both Disney and YouTube have engaged in the relevant conduct. *See* ¶¶ 84 (alleging both Disney and YouTube share viewer metrics with third parties for advertising purposes); ¶¶ 167, 186 (alleging both unlawfully exploited Plaintiffs' personal information); *see also Parity Networks, LLC*, 2020 WL 6064636, at *3 (so-called "group pleading" permissible where limited to defendants who are similarly situated with respect to the allegations).

**C. Plaintiffs Adequately Allege Their Common Law Claims.**

**1. Disney's "Choice of Law" Argument Is Premature.**

Disney seeks dismissal of Plaintiffs' common law claims because (according to Disney) Plaintiffs fail to specify which state's law applies. *See* MTD at 10–11. But dismissal on that basis would be premature, extreme, and altogether unwarranted on these facts. *See, e.g.*, *B.K. v. Desert Care Network*, No. 23-cv-5021, 2024 WL 1343305, at *3 (C.D. Cal. Feb. 1, 2024) (declining to apply the rule that common law claims be pleaded by reference to a particular state law). As this Court has recognized, California law would likely apply to the common law claims in this situation regardless. *See eDrop-Off Chicago LLC v. Burke*, No. 12-cv-4095, 2013 WL 12131186, at *11 (C.D. Cal. Aug. 9, 2013) (where common law claims are not "specifically tied to the common law of any particular jurisdiction," the Court would likely apply California law). This is especially true here, where no meaningful conflict between California and other state laws has been identified. *See Homedics, Inc. v. Valley Forge Ins. Co.*, 315 F.3d 1135, 1138 (9th Cir. 2003) ("When neither party identifies a meaningful conflict between California law and the law of another state, California courts apply California law."). Furthermore, to the extent that the issue of

whether other state laws apply (i.e., Pennsylvania or Colorado based on subclasses), "the better view" is to address those issues at class certification under Rule 23, not at the pleading stage. *Plotts v. Am. Honda Motor Co.*, No. 22-cv-4529, 2023 WL 4843342, at *13 (C.D. Cal. June 9, 2023).

**2. Plaintiffs Adequately Allege Claims for Invasion of Privacy.**

When, as here, a California constitutional privacy claim and common law intrusion upon seclusion claim "are brought on the same factual basis, it is appropriate to assess the two claims together and examine the largely parallel elements of these two claims which call on the Court to consider (1) the nature of any intrusion upon reasonable expectations of privacy, and (2) the offensiveness or seriousness of the intrusion, including any justification and other relevant interests."[2] *In re TikTok, Inc. Minor Privacy Litigation*, No. 25-ml-3144, 2025 WL 3628598, at *13 (C.D. Cal. Nov. 5, 2025) ("*In re TikTok*").[3]

**a. Plaintiffs Allege Facts Establishing that Disney Intruded Upon Their Reasonable Expectations of Privacy.**

With respect to the nature of the alleged intrusion, Disney first contends that there is no intrusion attributable to Disney because it was YouTube, not Disney, who directly collected children's personal information. Disney's argument misses the

[2] To prevail on a claim for intrusion upon seclusion, a plaintiff must show (1) the defendant "intentionally intrude[d] into a place, conversation, or matter" in which the plaintiff had "a reasonable expectation of privacy," and (2) the intrusion was "in a manner highly offensive to a reasonable person." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009). And for a California constitutional privacy claim, the plaintiff must show they had a "legally protected privacy interest," "a reasonable expectation of privacy," and a "sufficiently serious privacy violation." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35–37 (1994).

[3] Tentative ruling adopted in final. *In re TikTok, Inc., Minor Privacy Litig.*, No. 25-ml-3144, 2025 WL 3628448 (C.D. Cal. Nov. 6, 2025). Because the final ruling incorporates the tentative by reference, Plaintiffs cite to the tentative whenever citing to *In re TikTok*.

mark because even enabling the surreptitious collection of a child's personal information constitutes an intrusion upon the child's privacy. As explained above, this principle is reflected in COPPA's implementing regulations, which explicitly state that "collection" includes both enabling a child to make personal information publicly available as well as "[p]assive tracking of a child online"; that "personal information" includes "[a] personal identifier that can be used to recognize a user over time and across different websites or online services"; and that "personal information is collected or maintained on behalf of an operator" when "the operator benefits by allowing another person to collect personal information directly from users of such website or online service. 16 C.F.R. § 312.2. This is precisely what Disney did here, by incorrectly designating children's videos as NMFK and enabling YouTube's data collection processes to exfiltrate Plaintiffs' personal information for Disney's (and YouTube's) benefit. *See Hammerling v. Google, LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022) (an intrusion upon a reasonable expectation of privacy occurs when a defendant gains "unwanted access to data by electronic or other covert means, in violation of the law or social norms.").

The only support for Disney's position that direct collection is required to state a claim comes from *Hubbard*, which Disney cites for the proposition that COPPA is not violated absent such collection. *See* MTD at 20 (citing *Hubbard v. Google LLC*, No. 19-cv-7016, 2025 WL 82211, at *16–17 (N.D. Cal. Jan. 13, 2025) (dismissing similar claims against channel owners)). *Hubbard* is distinguishable for several reasons.

To start, the *Hubbard* court did not have the opportunity to consider COPPA's broader definition of "collection" because, as the plaintiffs acknowledged during oral argument on the motion to dismiss, they had mistakenly failed to "plead a direct COPPA violation against the channel owners" in their initial complaints. No. 19-cv-7016, Dkt. 316 at 45 (Dec. 31, 2024). It was not until the sixth amended complaint that the plaintiffs alleged the channel owners were directly liable for violating COPPA

by benefitting from Google's collection. *Id.* at 46. Even then, the only allegation they advanced was the fact that the channel owners enabled behavioral advertising. The *Hubbard* court held this was not enough, because, as the plaintiffs themselves alleged, behavioral advertising was the default setting for all YouTube videos at the time. *See Hubbard*, 2025 WL 82211, at *17 (explaining "[m]ere acquiescence to a default setting does not constitute direction," and "permit[ing] behavioral advertising through passive acceptance of a default setting does not lead to the reasonable inference that Google collected Plaintiffs' data on the Channel Owners' behalf").

Here, Plaintiffs have alleged direct liability against Disney from the start. Even more significantly, Plaintiffs are not relying on any "passive acceptance" of default settings. Instead, unlike *Hubbard*'s channel owners, Plaintiffs allege that Disney intentionally enabled behavioral advertising by incorrectly designating child-directed videos as NMFK. ¶¶ 132–52. And Disney did so despite clear warnings from both the FTC and YouTube that enabling behavioral advertising on child-directed content would constitute collection of personal information in violation of COPPA. ¶ 147.

Even if this Court viewed the allegations through the lens of secondary liability, Disney still would be liable. In *Hubbard*, the Court rejected any theory of secondary liability because the plaintiffs there did not allege that the channel owners knew Google was engaged in any wrongdoing. 2025 WL 82211, at *18 (rejecting the notion that electing to present behavioral advertising constituted knowledge of wrongdoing because "as discussed above, Google offered behavioral advertising as a default setting, thereby contradicting any notion that the Channel Owners affirmatively elected to present behavioral advertising"). Again, the facts here are different, because Plaintiffs allege Disney knowingly enabled prohibited collection. *See D'Antonio v. Smith & Wesson Inc.*, No. 25-cv-3085, 2026 WL 446310, at *2 (N.D. Cal. Feb. 17, 2026) (holding that allegations defendant voluntarily "chose," "caused," and "allowed" third-party tracking tools to integrate into its website were sufficient to plead it "facilitated third parties' intrusion into [plaintiffs'] privacy and seclusion").

Disney next contends that Plaintiffs have not alleged any intrusion into private affairs because the data collection occurred on a publicly accessible website, but it relies on authority that did not involve the collection of children's data. MTD at 23. As this Court explained just last year, COPPA signifies a legal determination about the particular sensitivity of digital information concerning minors and the significance of parental control over the extent of collection and nature of such data. *In re TikTok,* 2025 WL 3628598, at *14. And that legal determination is a significant one given the "highly 'context-specific nature of the [reasonable expectation of] privacy inquiry.'" *Id.* (quoting *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1035 (N.D. Cal. 2019)). "Online platforms directed at children, and the data they collect, are distinguishable from the general principle that 'the internet is not a place where users have a reasonable expectation of privacy.'" *Id.* (quoting *Thomas v. Papa Johns Int'l, Inc.*, No. 22-cv-2012, 2024 WL 2060140, at *1 (S.D. Cal. May 8, 2024)).

**b. Plaintiffs Sufficiently Allege that Disney's Intrusion was Highly Offensive.**

Whether a particular invasion or intrusion was "highly offensive" presents a mixed question of law and fact, *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 40 (1994), and the analysis focuses on the degree to which the intrusion is unacceptable as a matter of public policy, which in turn requires "a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *In re TikTok*, 2025 WL 3628598, at *16 (quoting *In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020)).

Disney argues that, as a matter of law, a company's online tracking practices can never meet the requisite offensiveness threshold, even when those tracking practices are directed toward children's internet behavior. MTD at 23–24. Disney further contends that establishing highly offensive behavior requires the presence of

certain "plus factors" that are absent here.

Disney is incorrect on both points. Again, this Court can look to its analysis in *In re TikTok*, which canvassed the relevant case law and squarely rejected the arguments Disney advances here. *See* 2025 WL 3628598, at *16 ("'A violation of federal law is generally considered egregious, and because COPPA prohibits . . . data collection from minors to protect their privacy,' courts have found "an egregious intrusion into the minors' expectation of privacy" adequately alleged where "defendants allegedly engaged in the specific conduct proscribed by COPPA.") (quoting *A.B., by and through Turner v. Google LLC*, 737 F. Supp. 3d 869, 884 (N.D. Cal. 2024)); *see also McDonald*, 385 F. Supp. 3d at 1036 (acknowledging potential significance of "plus" factor but nevertheless finding privacy claim predicated on Disney's and others' collection and use of minor data for targeted advertising in violation of COPPA was sufficiently stated even without that factor).

Rather than grapple with the case law refuting its contentions, Disney suggests the law must be limited because otherwise, any content creator on YouTube who makes an inadvertent designation error would be deemed to have committed a highly offensive invasion of privacy. But Disney is not like every other content creator on YouTube: it is one of the largest content creators on YouTube, a company that has built its media empire on branding itself as a family-friendly destination for children's content, and its misdesignations were a matter of policy that financially benefitted Disney—not a one-off mistake. ¶¶ 109, 112, 156.

**3. Plaintiffs Adequately Allege a Negligence Claim.**

To state a claim for negligence, a plaintiff must show: (a) a legal duty to use due care; (b) a breach of such legal duty; and (c) the breach as the proximate or legal cause of the resulting injury." *Ladd v. Cnty. of San Mateo*, 12 Cal. 4th 913, 917 (1996) (internal quotation marks and citation omitted). California law presumes that each person has a general duty to act with reasonable care under the circumstances. *See* Cal. Civ. Code § 1714(a) ("Everyone is responsible, not only for the result of his or

her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person [subject to exceptions not applicable here]."). In addition, "there is abundant authority that California law recognizes a duty on companies to take reasonable steps to protect all sensitive information it obtains from individuals." *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 634 (N.D. Cal. 2024) (citations omitted); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019) (finding "Facebook had a responsibility to handle its users' sensitive information with care").

Rather than address why there should be an exception to California's general duty to act with reasonable care, Disney suggests that Plaintiffs have not alleged the requisite relationship between Plaintiffs and Disney, and that Disney never possessed any information that could trigger a duty of care. This is merely recycling the argument that Disney did not "collect" children's information used for behavioral advertising even though no information would have been collected but for Disney's conduct. *See supra* § IV.B. Because Disney was responsible for enabling the collection of information from children watching its videos, it had a duty to exercise care with respect to the information. This is particularly true for a company whose business model is built on advertising to children. ¶¶ 46, 48.

Disney next argues that Plaintiffs have failed to plead any injury to support a negligence claim. But Disney only attacks Plaintiffs' allegations of economic harm. Disney's arguments on economic harm are addressed in Plaintiffs' response to Disney's arguments on statutory standing to advance UCL claims. *See infra* § IV.D.1. Moreover, it is enough that Plaintiffs have pleaded "appreciable, nonspeculative, present injury" in the form of the invasion of their privacy and the attendant collection of their private information. *See In re TikTok*, 2025 WL 3628598, at *24 (denying motion to dismiss negligence claims based on alleged injury to substantive privacy rights).

**4. Plaintiffs Adequately Allege a Claim for Negligence Per Se.**

Negligence per se is an evidentiary presumption that "creates a presumption of negligence" if certain elements are met.[4] *Howse v. Chiquita Canyon, LLC*, 757 F. Supp. 3d 1049, 1076 (C.D. Cal. 2024) (quoting *Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1285 (2006)). Under that doctrine, the standard of care can be established by a statute, the defendant's violation of that statute can "give rise to a presumption that it failed to exercise due care" where that violation "proximately caused an injury," the injury resulted from something the statute was designed to prevent, and the person who was injured was "one of the class of persons for whose protection the statute, ordinance, or regulation was adopted." Cal. Evid. Code § 699(a).

Disney contends that negligence per se cannot be premised on a statute (COPPA) that lacks a private right of action. MTD at 30. While some courts have so held, Disney omits decisions going the other way. *See, e.g.*, *Howse*, 757 F. Supp. 3d at 1076–77; *In re Ambry Genetics Data Breach Litigation*, 567 F. Supp. 3d 1130, 1142 (C.D. Cal. 2021); *Sierra-Bay Fed. Land Bank Assn. v. Superior Ct.*, 227 Cal. App. 3d 318, 333 (1991). Regardless, this argument ignores Plaintiffs' causes of action against Disney for violations of multiple other statutes. *See infra* § IV.D.

**5. Plaintiffs Adequately Allege a Claim for Trespass to Chattels.**

Ninth Circuit authority confirms that trespass to chattels claims may be available in the data context, including data scraping and other automated uses of data. In *hiQ Labs, Inc. v. LinkedIn Corp.*, for example, the Ninth Circuit held that scraping public profile data from LinkedIn did not violate the CFAA, but emphasized that

---

[4] Disney seeks dismissal of Plaintiffs' negligence per se claim on the grounds that negligence per se is not a cause of action under California law, but rather a theory that can be used to establish a claim for negligence. MTD at 30. Plaintiffs are not opposed to treating the claim for negligence per se as a theory in support of their claim for negligence. Plaintiffs appropriately pleaded the theories separately to put Disney on notice of the different bases for the claim.

victims of data scraping "are not without resort" against scraping and similar conduct, expressly pointing to state torts such as trespass to chattels as the appropriate vehicle when automated access interferes with the condition, quality, or value of servers and data. 31 F.4th 1180, 1201 (9th Cir. 2022). Disney's categorical assertion that personal information and data-level interference can never support trespass to chattels liability is incorrect.

Disney's argument that Plaintiffs fail to allege the required injury even if data could be a chattel is flawed. The Complaint includes extensive factual allegations about the recognized market value of personal data, including academic estimates that user data can be worth hundreds of dollars per year, with children's data commanding a premium. *E.g.*, ¶¶ 168–86. Plaintiffs plausibly allege that their personal information had measurable economic value and that Disney's unauthorized collection, retention, and monetization of that data impaired its value to Plaintiffs—either by depriving them of exclusive control or by diminishing the bargaining position they would otherwise have had in the data market. Further, Plaintiffs allege that Disney knowingly misdesignated the videos to enable the collection of children's personal information. ¶ 136.

**6. Plaintiffs Adequately Allege a Claim for Unjust Enrichment.**

Disney's unjust enrichment arguments lack merit. First, under California law, unjust enrichment is a valid standalone claim. *See Astiana v. Hain Celestial Group*, 783 F.3d 753, 762 (9th Cir. 2015) (holding that when a plaintiff alleges unjust enrichment, courts should construe it as a valid quasi-contract claim seeking the remedy of restitution).

Second, Plaintiffs have alleged they conferred a benefit on Disney. Plaintiffs allege a data-for-content exchange in which children viewed Disney's child-directed videos on YouTube that were not appropriately marked MFK, and, in doing so, conferred valuable personal information and engagement data that Disney used and monetized. ¶¶ 165, 168–73, 186. Plaintiffs further plead that Disney's enrichment

came from this children's data and was not merely an incidental byproduct of its separate contract with YouTube. ¶¶ 311–13. Thus, the benefits Disney received—additional advertising revenue, enhanced analytics, and the ability to monetize detailed profiles of child viewers—was conferred by Plaintiffs' viewing and data, not only by YouTube. At the pleading stage, Plaintiffs need not prove privity or a traditional bilateral contract with Disney. *See Hartford Casualty Insurance Co. v. J.R. Marketing, L.L.C.*, 61 Cal. 4th 988, 998 (2015).

Disney's third argument that any enrichment was not "at Plaintiffs' expense" flatly contradicts the Complaint. The Complaint details the concrete economic value of children's personal information and the market in which companies buy, sell, and license the very kind of data at issue here. ¶¶ 168–86. Plaintiffs further allege that, by covertly collecting and monetizing that data without parental consent, children suffered pecuniary losses. ¶ 185.

Finally, Disney's one-sentence "argument" that Plaintiffs have not plausibly alleged a lack of adequate legal remedies, MTD at 22 (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020)), misstates both the pleadings and the law. Courts have found that *Sonner* requires nothing more than alleging that plaintiffs lack an "adequate remedy at law" at the pleading stage. *See In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1023 (N.D. Cal. 2024); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1086 (N.D. Cal. 2023); *Milstead v. Gen. Motors LLC*, No. 21-cv-6338, 2023 WL 4410502, at *7–8 (N.D. Cal. July 6, 2023). Plaintiffs have met this requirement. ¶¶ 271, 319. Courts have also recognized that legal damages are insufficient to fully remedy privacy harms or data misappropriation like Plaintiffs allege here. *See Turner v. Apple, Inc.*, No. 20-cv-7495, 2022 WL 445755, at *4 (N.D. Cal. Feb. 14, 2022) (allowing equitable claims based on "misappropriated data" because "legal damages do not cover the full value of the harm"); *Brooks v. Thomson Reuters Corp.*, No. 21-cv-1418, 2021 WL 3621837, at *11 (N.D. Cal. Aug. 16, 2021).

### D. Plaintiffs' Adequately Allege Their Statutory Claims.

#### 1. Plaintiffs Adequately Allege Disney Violated the UCL.

##### a. Plaintiffs sufficiently state a claim under the UCL's unlawful prong.

Although Plaintiffs are not bringing a claim against Disney for COPPA violations, Disney is wrong that Plaintiffs' Complaint does not establish the elements of a COPPA violation. COPPA prohibits the collection and use of children's personal information without notice to parents and parental consent. 16 C.F.R. § 312.4. Disney did just that—it collected information from the child viewers of its video content and uses that collected information for data analytics and marketing. ¶¶ 135–52.

Disney's suggestion that it falls outside the purview of COPPA is incorrect. Disney claims it is not an "operator" of a "website or online service," MTD at 19, but COPPA's definitions prove otherwise. *See* 16 C.F.R. § 312.2 (defining operator to include "any person who operates a website located on the internet or an online service and who collects or maintains personal information from or about the users of or visitors to such website or online service, or on whose behalf such information is collected or maintained").

Disney is an "operator" of a "website or online service." *See Hubbard v. Google LLC*, 508 F. Supp. 3d 623, 626 (N.D. Cal. 2020). "[I]ndividual channels on a general audience platform" constitute a "website or online service." *Id*. "[C]ontent creators and channel owners" are "standalone operators under COPPA, subject to strict liability for COPPA violations." *Id*. (quotation marks omitted). The FTC notes that Disney is an operator under COPPA because it "operate[s] online services in the form of streaming content on YouTube that include portions that are directed to children."[5] Even had Disney not operated online services, the information on children collected from Disney's streaming content is collected or maintained in part for Disney. The

[5] https://www.ftc.gov/system/files/ftc_gov/pdf/DisneyComplaint.pdf

analyses of the data collected from children are provided to and generate revenue for Disney, and information is collected and maintained on Disney's behalf. ¶ 152. Disney is thus an operator within the meaning of COPPA.

As explained previously, *see supra* § IV.C.2.a, Disney's reliance on a subsequent unpublished decision from *Hubbard* (MTD at 16 (citing 2025 WL 82211)) has no bearing here because Plaintiffs allege Disney has engaged in more than passive receipt of data through a default setting, which amounts to "collection" under COPPA. ¶¶ 61, 78, 80, 132–52. And, because Disney is an operator on a "general audience platform" directed at children, actual knowledge is not required to hold Disney liable under COPPA. *Hubbard*, 508 F. Supp. 3d at 626; *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009).

Even though actual knowledge is not required of Disney, Plaintiffs allege Disney knowingly directs much of its YouTube content to children. ¶ 100. Further, Disney stretches the bounds of credulity to imply it did not have actual knowledge of the improper collection of Plaintiffs' data when they viewed NMFK videos on YouTube. MTD at 20. Plaintiffs allege that Disney collects and generates revenue from child-directed content on YouTube, including, by example, a "Moana" trailer that garnered 8.8M views. ¶ 129. Disney appears to argue that it essentially pays no heed to the data analytics and advertising revenue generated from such child-directed videos, and that it has no actual knowledge that the data derived from viewers of videos like "Moana" come from children, despite the same videos also being placed on YouTube Kids with proper MFK protections. ¶ 128. Disney is both an operator of a website or online service directed to children and has actual knowledge that it is collecting and maintaining personal information from children, rendering Disney subject to COPPA.

Plaintiffs' allegations that Disney has violated COPPA establish an unlawful business practice under the UCL. *A.B. by & Through Turner*, 737 F. Supp. 3d at 882 ("Because the Court finds that plaintiffs sufficiently alleged an underlying COPPA

violation, however, they have adequately pleaded a UCL claim under at least the unlawful prong."). Moreover, while Disney's discussion of Plaintiffs' UCL claims under the unlawful prong focuses solely on a COPPA violation (MTD at 22), Plaintiffs allege other statutory and constitutional law violations that would likewise satisfy the UCL's unlawful prong. ¶¶ 256–71, 334–67. These provide an independent basis for rejecting Disney's arguments with respect to the unlawful prong. *People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 515 (2002) ("Virtually any state, federal, or local law can serve as the predicate for an action.").

**b. Plaintiffs sufficiently state a claim under the UCL's unfair prong.**

Disney's argument that the unfair prong necessarily fails if the unlawful and fraudulent prongs fail is incorrect. MTD at 23. The UCL "makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law." *Cel-Tech Comm'ns, Inc.*, 20 Cal. 4th 163, 180 (1999).

Public Policy Test. Disney has violated public policy by violating the privacy of children. ¶¶ 31–32, 59, 61–72, 79–88. A business practice does not need to violate a lawful statute to violate public policy. *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007). California has a public policy of protecting customer data. *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 990 (N.D. Cal. 2016); *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1227 (N.D. Cal. 2014). Courts have emphasized that "the California legislature has made clear its goal with respect to children and online safety." *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d 849, 901 (N.D. Cal. 2024) (finding that proposed legislation determines public policy even where legislation is later deemed unconstitutional). As discussed above, Plaintiffs plausibly allege a COPPA violation and identify relevant public policy beyond COPPA. *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d at 990.

While Disney's conduct violates COPPA, a violation of COPPA is unnecessary

for a finding of unfairness because any legislative goal can indicate public policy. *Lozano*, 504 F.3d at 736. Disney's actions violated the privacy of children, against clear legislative intent to protect customer data. *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d at 901; *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d at 1227. Disney's collection and analysis of child data through mislabeling its content clearly violates the privacy of children and public policy of protecting the information of children. ¶¶ 31–32, 59, 61–72, 79–88.

<u>Immoral Test</u>. Disney states that Plaintiffs' allegations are conclusory. MTD at 23. But Plaintiffs allege in detail Disney's repeated mislabeling of videos to collect data from and profit off of children. ¶¶ 31–32, 59, 61–72, 79–88. Similar allegations have led courts to sustain UCL unfairness prong claims. *See In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d at 901.

<u>Balancing Test</u>. Disney states that Plaintiffs have not justified Disney's conduct, but the onus is not on Plaintiff to provide justifications for Disney's behavior. MTD at 24. Disney must provide, to the extent any exist, arguments regarding the utility of its own conduct balanced against the harm to Plaintiffs. *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d at 899 (finding that Meta otherwise failed to meet its burden for dismissal because it has not advanced any arguments justifying its conduct against plaintiff's harms). Here, Plaintiffs have alleged serious injuries, including economic injury from privacy harms. *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021); ¶¶ 330, 332. Plaintiffs' injuries—injuries to children's privacy—surpass Disney's unstated benefits, which presumably boil down to profit-seeking public entertainment.

**c. Plaintiffs sufficiently state a claim under the UCL's fraud prong.**

Plaintiffs have satisfied the requirements of Rule 9(b). Rule 9(b) "do[es] not require the class representative to plead or prove an unrealistic degree of specificity." *In re Tobacco II Cases*, 46 Cal. 4th at 306. When fraud is based on numerous

misrepresentations, plaintiffs can provide "a representative selection" of the misrepresentation "to indicate the language on which the implied representations are based." *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1262 (2009). When it comes to misrepresentations, "children in particular are unlikely to recall the specific[s]." *Comm. On Children's Television, Inc.*, 35 Cal. 3d at 218–19. When numerous misrepresentations to children are concerned, courts can "reasonably require plaintiffs to set out or attach a representative selection of [misrepresentations]." *Id.* at 218.

Disney tries to depict Plaintiffs' claims as vague, but as discussed above, Plaintiffs' pleading details Disney's numerous misrepresentations (i.e., misdesignated videos), with specific examples, and indicates each Defendant's conduct related to the claims. *See supra* § IV.A. This is distinguishable from *Romero*, where the plaintiff failed to differentiate the acts of the defendants. MTD at 22 (citing *Romero v. Countrywide Bank, N.A.*, 740 F. Supp. 2d 1129 (N.D. Cal. 2010)).

"The determination as to whether a business practice is deceptive is based on the likely effect such practice would have on a reasonable consumer." *Id.* The UCL's fraud prong is distinct from common law fraud; the defendant does not need to know that the representation is false, nor does the victim need to have reasonably relied on the representation. *In re Tobacco II Cases*, 46 Cal. 4th at 312. This distinction makes clear the statute's purpose is to protect the public. *Id.*

Here, Disney's mislabeling of its videos constitutes a practice that deceives the public. Parents permit children to watch Disney's videos because parents believe that their children's information will not be collected, used, and monetized. ¶¶ 24–28. Parents would not have permitted their children to watch Disney's videos had they known of Disney's misdesignations. *Id.* Plaintiffs have adequately alleged Disney's fraudulent conduct.

**d. Plaintiffs have standing to pursue their UCL claim.**

Plaintiffs must allege economic injury, or loss of money or property, to assert

UCL standing, which they do. ¶¶ 6, 10, 12, 32, 78, 83, 166; *Brown v. Google LLC*, 685 F. Supp. 3d 909, 942 (N.D. Cal. 2023). Numerous courts have found that browsing data carries financial value and that the diminution of value in plaintiffs' browsing data constitutes economic loss. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 600–01; *Brown*, 685 F. Supp. 3d at 942; *Calhoun*, 526 F. Supp. 3d at 636 (plaintiffs who suffered a loss of their personal information suffered economic injury and had standing); *A.B. by & Through Turner*, 737 F. Supp. 3d at 881–82 ("Because plaintiffs allege that they can 'no longer realize the full economic value of their Personal Information' due to the data collection by defendants, they adequately plead an economic injury resulting from defendants' purported misconduct.").

In *A.B. by & Through Turner*, the plaintiffs "allege[d] that defendants obtained personal information from children . . . through Android apps in violation of COPPA." 737 F. Supp. 3d at 875. The court noted the plaintiffs could decide to sell their data in the future, that there was a market for such data, and that they sufficiently alleged economic injury. *Id*. Further, the *A.B. by & Through Turner* plaintiffs, being minor children, did not need to show that they were actively planning to participate in a data market to allege economic injury. *Id*.

The authority upon which Disney relies is inapposite. In *Bartholomew v. Parking Concepts, Inc.*, the plaintiff paid for a parking ticket at a garage and the defendant collected his license plate information. 118 Cal. App. 5th 438, 451 (2026). The court found too speculative the risk of future identity theft and loss of value of that information. *Id.* In *Manning v. Zumpano Patricios, P.A.*, the plaintiff only alleged conclusory allegations regarding the misuse of private information stolen from a data breach and did not allege that the defendant profited from the information. No. 25-cv-23184, 2025 WL 3062563, at *4 (S.D. Fla. Nov. 3, 2025).

Here, just like the plaintiffs in *A.B. by & Through Turner*, Plaintiffs have alleged that Disney obtained their data and generated revenue from their data, and that Plaintiffs lost value in their data through Disney's conduct. 737 F. Supp. 3d at 875;

¶¶ 6, 10, 12, 32, 78, 83, 166. Plaintiffs' allegations establish their UCL standing.

**2. Plaintiffs Adequately Allege Disney Violated the ECPA.**

**a. Plaintiffs adequately allege interception by Disney.**

Disney states that it is not an interceptor that obtains information from Plaintiffs (MTD at 25–26), but Disney collects Plaintiffs' data and analyses of Plaintiffs' data that it then uses to profit. In *India Price v. Carnival Corp.*, the court found the defendant to be an interceptor even where another party collected and analyzed information the other party then provided the defendant. 712 F. Supp. 3d 1347, 1355 (S.D. Cal. 2024). Here, Disney and YouTube intercepted communications from Plaintiffs by enabling the transmission and collection of Plaintiffs' personal information while they watched noncompliant MFK Disney videos—a communication unknown and unintended by Plaintiffs when they visited YouTube to watch children's videos—as that data would not have been communicated to Defendants had Disney made the correct designations. ¶¶ 9–12, 156–58. Plaintiffs' viewing of Disney videos provided both YouTube and Disney with their personal data. ¶¶ 65, 67, 80–88. Analysis of this data is then provided to Disney, allowing it to generate profitable marketing strategies. ¶¶ 83–84. Like the defendant in *India Price*, Disney intercepted Plaintiffs' data because it received data analytics based on information improperly taken from child viewers of its videos without consent.

Disney relies on *Freeman* for the proposition that the ECPA does not impose liability for aiding-and-abetting or secondary liability. MTD at 25 (citing *Freeman v. DirecTV*, 457 F.3d 1001 (9th Cir. 2006)). But *Freeman* is inapposite; that defendant received the plaintiffs' information from an interceptor as part of a court-ordered seizure. 457 F.3d at 1009. Here, Disney, at a minimum, utilized YouTube to intercept communications of data on its behalf so that it could generate revenue. ¶¶ 65, 67, 80–88. Disney publishes videos, in part, to obtain children's data. *Id.* Disney has intercepted communications within the meaning of the ECPA.

**b. Plaintiffs adequately allege interception of the contents of communications.**

Disney attempts to portray its data collection as inconsequential, stating that it has not collected contents of communications. MTD at 26–27. But Plaintiffs satisfy 18 U.S.C. § 2510(8) by alleging Disney collects more than just "clicks" and browsing information, and that the information Disney collects qualifies as content under the statute. ¶¶ 81–82 (alleging Disney "benefit[s] from and indirectly access the personal data, especially viewing history and other behavioral data").

**c. Plaintiffs adequately allege interception during transmission.**

At the motion to dismiss stage, courts have inferred that "some transmission and interception occurred simultaneously, within the same span of milliseconds." *India Price*, 712 F. Supp. 3d at 1355. Here, YouTube has posted a video telling users that it "collect[s]" information "when you use [its] services." ¶ 59, n.30. Disney cites *Valenzuela* and *Rodriguez* for the proposition that Plaintiffs cannot make conclusory allegations regarding information collection. MTD at 27 (citing *Valenzuela v. Super Bright LEDs Inc.*, No. 23-cv-1148, 2023 WL 8424472, at *9 (C.D. Cal. Nov. 27, 2023); *Rodriguez v. Google LLC*, No. 20-cv-4688, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022)). However, the plaintiff in *Valenzuela* failed to allege any specific facts about what was intercepted, when, and how. *Rodriguez* is even less availing, as those plaintiffs did not allege any interception in the context of a different statute entirely. 2022 WL 214552, at *2.

Here, Plaintiffs allege that YouTube concedes that it collects such information and makes it available to those posting the video content. ¶ 59, n.30. At a minimum, a court can infer, like in *India Price*, that Disney intercepted Plaintiffs' communications contemporaneously within the meaning of the statute. ¶ 364.

**d. The One-Party Consent Rule does not bar Plaintiffs' claim.**

Finally, Disney invokes the "party exception" to the ECPA, but in doing so, Disney overlooks the "crime-tort exception," which provides that the party exception

does not apply if the interception "was for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." *Smith v. Rack Room Shoes, Inc.*, No. 24-cv-6709, 2025 WL 2210002, at *4 (N.D. Cal. Aug. 4, 2025) (quoting 18 U.S.C. § 2511(2)(d)). The crime-tort exception applies here: Disney's interception was tortious because, at the time of interception, Disney had an "independent prohibited purpose" beyond the act of interception itself.

**3. Plaintiffs Adequately Allege a WESCA Violation.**

Because the ECPA claim is adequately alleged, so is Plaintiffs' WESCA claim. *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 959 (N.D. Cal. 2023).

**E. Plaintiffs' Request for Injunctive Relief is Not Moot.**

Disney states that the settlement "already mandates all the measures Plaintiffs could hope to impose here" (MTD at 29), but that assertion is both unsupported and improper for determination at the motion to dismiss stage because injunctive relief is a fact-dependent remedy that courts routinely decline to rule on absent a developed factual record. *See Astiana v. Ben & Jerry's Homemade, Inc.*, No. 10-cv-4387, 2011 WL 2111796, at *13 (N.D. Cal. May 26, 2011) ("[T]he availability of injunctive relief cannot be determined until the parties have developed the factual record."); *see also Pratt v. Whole Foods Mkt. California, Inc.*, No. 12-cv-5652, 2014 WL 1324288, at *9 (N.D. Cal. Mar. 31, 2014).

A government settlement that neither guarantees cessation of unlawful conduct nor provides complete relief to private plaintiffs does not moot private injunctive relief claims. *See Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 545–46 (E.D.N.Y. 2017) (FTC consent order did not moot injunctive claims); *Dasrath v. Cont'l Airlines, Inc.*, No. 02-cv-2683, 2006 WL 372980, at *7 (D.N.J. Feb. 16, 2006) (same); *Dickerson v. U.S. Steel Corp.*, 64 F.R.D. 351, 360 (E.D. Pa. 1974) (court may issue broader or different injunction than consent decree).

Disney's assertion that the settlement eliminates any risk of "ongoing or future harm" is exactly the type of conclusory argument courts reject absent a fully

developed factual record. The settlement provisions Disney cites—internal review programs, training, and content designation protocols—are forward-looking compliance measures that depend entirely on Disney's unproven implementation. At most, the settlement may later inform the scope of any injunction, but it does not eliminate Plaintiffs' entitlement to seek one.

Disney's reliance on *In re BetterHelp, Inc.*, No. 23-cv-1033, 2024 WL 4504527 (N.D. Cal. Oct. 15, 2024) is unpersuasive; there, the injunctive relief claims were originally dismissed because the plaintiffs were not alleging that they were still using the website and therefore "there is nothing to suggest that more information will be collected from them and disclosed in the future." *Id.* at *2. Here, Plaintiffs allege Disney's conduct is ongoing and continues harm to themselves and other children. ¶¶ 239, 255.

Disney's reliance on the out-of-circuit case *In re Pre-Filled Propane Tank Antitrust Litig.*, 893 F.3d 1047 (8th Cir. 2018) also is unavailing. Not only is the Eighth Circuit's reasoning not binding and less persuasive than the authority cited above, that injunction is distinguishable, as it sought to enjoin conduct already covered by an FTC consent decree. *Id.* at 1054. At most, this Court could conclude *In re Pre-Filled Propane*'s analysis is relevant later in the litigation when the proper scope of requested injunctive relief is determined. In addition, the *In re Pre-Filled Propane* court concluded the plaintiff had not plausibly alleged the possibility of future violation of the FTC consent decree, whereas here YouTube was already subject to an FTC consent decree in 2019, ¶¶ 102–05, yet the harm persists, which demonstrates the plausibility of continuing harm by Disney and YouTube in this case.

## V. CONCLUSION

For the foregoing reasons, Disney's motion should be denied in its entirety. If the Court deems any of the claims inadequately pleaded, leave to amend is appropriate because there has been no prior judicial evaluation of the pleadings and Google cannot demonstrate bad faith, dilatory motive, or prejudice. *Schreiber Distrib. Co. v. Serv-*

*Well Furniture Co*., 806 F.2d 1393, 1401 (9th Cir. 1986).

DATED: May 9, 2026

Respectfully submitted,

*/s/ Tina Wolfson*

Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Ave. Suite 500
Burbank, CA 91505
Tel: (310) 474-9111
Fax: (310) 474-8585

Jean S. Martin (admitted pro hac vice)
jmartin@awkolaw.com
**AYLSTOCK WITKIN KREIS & OVERHOLTZ, PLC**
17 E. Main Street, Suite 200
Pensacola, Florida 32502
Tel: (850) 202-1010

William J. Edelman (SBN 285177)
wedelman@milberg.com
**MILBERG, PLLC**
227 West Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (771) 474-1121

*Plaintiffs' Interim Co-Lead Counsel*

**L.R. 11-6.2 Certificate of Compliance**

The undersigned counsel certifies that this memorandum contains 8,999 words and complies with Court's order granting Plaintiffs leave to file an opposition brief of up to 9,000 words, ECF No. 58, and otherwise complies with L.R. 11-6.1.

Dated: May 8, 2026

AHDOOT & WOLFSON, PC

By: */s/ Tina Wolfson*
Tina Wolfson