Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Ave. Suite 500
Burbank, CA 91505
Tel: (310) 474-9111
Fax: (310) 474-8585

Jean S. Martin *(admitted pro hac vice)*
jmartin@awkolaw.com
**AYLSTOCK, WITKIN, KREIS & OVERHOLTZ PLC**
17 East Main Street, #200
Pensacola, Florida 32502
Tel: (850) 266-2893
Fax: (850) 916-7449

William J. Edelman (SBN 285177)
wedelman@milberg.com
**MILBERG, PLLC**
280 South Beverly Drive, Penthouse
Beverly Hills, CA 90212
(771) 474-1121

*Plaintiffs' Interim Co-Lead Counsel*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re Disney Worldwide Services COPPA Litigation | Case No. 2:25-cv-08410-GW-RAO<br><br>Hon. George H. Wu<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS GOOGLE LLC'S AND YOUTUBE LLC'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT**<br><br>Date: June 15, 2026<br>Time: 8:30 a.m.<br>Courtroom: 9D<br>Complaint filed: Oct. 16, 2025 |

## TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

III. LEGAL STANDARD ........ 3

IV. ARGUMENT ........ 3

A. Google's "Knowledge" Argument Is a Red Herring. ........ 3

B. The Complaint Does Not Contain Impermissible "Shotgun Pleading." ........ 4

C. Plaintiffs' Request for Injunctive Relief Is Proper. ........ 6

1. The FTC settlement does not deprive Plaintiffs of standing to seek injunctive relief. ........ 6

2. Google's *Sonner* Argument Has No Merit. ........ 8

D. Plaintiffs State Privacy Claims. ........ 8

E. Plaintiffs State a Claim for Negligence. ........ 11

F. Plaintiffs State a Claim for Negligence Under a Negligence Per Se Theory. ........ 12

G. Plaintiffs State a Claim for Trespass to Chattels. ........ 13

H. Plaintiffs State a UCL Claim. ........ 15

1. Plaintiffs sufficiently allege that Google violated the UCL through unlawful, unfair, and fraudulent conduct. ........ 15

2. Plaintiffs have UCL standing. ........ 17

I. Plaintiffs State an ECPA Claim. ........ 19

J. Plaintiffs State a WESCA Claim. ........ 20

K. Plaintiffs State an Unjust Enrichment Claim. ........ 21

V. CONCLUSION ........ 21

# TABLE OF AUTHORITIES


Page(s)

**Federal Cases**

*A.B. by & Through Turner v. Google LLC*, 737 F. Supp. 3d 869 (N.D. Cal. 2024) .......... 10, 16, 18, 19

*Archer v. Carnival Corp. & PLC*, No. 20-cv-4203, 2020 WL 9264981 (C.D. Cal. Sept. 22, 2020) .......... 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 3

*Astiana v. Ben & Jerry's Homemade, Inc.*, No. 10-cv-4387, 2011 WL 2111796 (N.D. Cal. May 26, 2011) .......... 6, 21

*Astiana v. Hain Celestial Group*, 783 F.3d 753 (9th Cir. 2015) .......... 21

*Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024 (N.D. Cal. 2019) .......... 12

*Brooks v. Thomson Reuters Corp.*, No. 21-cv-1418, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) .......... 8

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 18

*Calhoun v. Google LLC*, 526 F. Supp. 3d 605 (N.D. Cal. 2021) .......... 18

*Dasrath v. Cont'l Airlines, Inc.*, No. 02-cv-2683, 2006 WL 372980 (D.N.J. Feb. 16, 2006) .......... 7

*Dickerson v. U.S. Steel Corp.*, 64 F.R.D. 351 (E.D. Pa. 1974) .......... 7

*Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 8

*First Call Int'l, Inc. v. S&B Glob., Inc.*, No. 23-cv-10016, 2024 WL 4404429 (C.D. Cal. July 5, 2024) .......... 6

*hiQ Labs, Inc. v. LinkedIn Corp.*,
31 F.4th 1180 (9th Cir. 2022)........................................................................14

*Howse v. Chiquita Canyon, LLC*,
757 F. Supp. 3d 1049 (C.D. Cal. 2024)........................................................12

*Hubbard v. Google LLC*,
508 F. Supp. 3d 623 (N.D. Cal. 2020) ..........................................................15

*Hubbard v. Google LLC*, No. 19-cv-7016,
2025 WL 82211 (N.D. Cal. Jan. 13, 2025) ...............................................10, 15

*In re Accellion, Inc. Data Breach Litig.*,
713 F. Supp. 3d 623 (N.D. Cal. 2024) ..........................................................12

*In re Facebook Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)...........................................................9, 14, 18, 19

*In re Facebook Privacy Litigation*,
572 F. App'x 494 (9th Cir. 2014) ..................................................................18

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ..........................................................12

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ............................................................8

*In re Pre-Filled Propane Tank Antitrust Litig.*,
893 F.3d 1047 (8th Cir. 2018).........................................................................7

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,
753 F. Supp. 3d 849 (N.D. Cal. 2024) ......................................................16, 17

*In re TikTok, Inc. Minor Privacy Litigation*, No. 25-ml-3144,
2025 WL 3628598 (C.D. Cal. Nov. 5, 2025).............................................9, 10, 12

*In re TikTok, Inc., Minor Privacy Litig.*, No. 25-ml-3144,
2025 WL 3628448 (C.D. Cal. Nov. 6, 2025)......................................................9

*India Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 (S.D. Cal. 2024)..........................................................19

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) ..........................................................20

*Joaquin v. Geico Gen. Ins.,* No. 07-cv-3259, 2008 WL 53150 (N.D. Cal. Jan. 2, 2008) ........................................ 7

*Jones v. Google LLC*, 73 F.4th 636 (9th Cir. 2023)........................................ 11

*Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482 (E.D.N.Y. 2017) ........................................ 7

*Lau v. Gen Digital Inc.*, No. 22-cv-8981, 2023 WL 10553772 (N.D. Cal. Sept. 13, 2023) ........................................ 19

*McDonald v. Kiloo ApS,* 385 F. Supp. 3d 1022 (N.D. Cal. 2019) ........................................ 9, 10

*McGee v. S-L Snacks National*, 982 F.3d 700 (9th Cir. 2020)........................................ 18

*McMahon v. Take-Two Interactive Software, Inc.*, 745 F. App'x 786 (9th Cir. 2018) ........................................ 18

*Milstead v. Gen. Motors LLC*, No. 21-cv-6338, 2023 WL 4410502 (N.D. Cal. July 6, 2023)........................................ 8

*Parity Networks, LLC v. Moxa Inc.*, No. 20-cv-698, 2020 WL 6064636 (C.D. Cal. Sept. 11, 2020)........................................ 4, 6

*Pena v. Int'l Med. Devices, Inc.*, No. 22-cv-3391, 2023 WL 5667538 (C.D. Cal. Jan. 10, 2023) ........................................ 5

*Pratt v. Whole Foods Mkt. Cal., Inc.*, No. 12-cv-5652, 2014 WL 1324288 (N.D. Cal. Mar. 31, 2014)........................................ 6

*Roe v. Amgen*, No. 23-cv-07448, 2024 WL 2873482 (C.D. Cal. June 5, 2024). ........................................ 19

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir. 1986)........................................ 21

*Smith v. Rack Room Shoes, Inc.*, No. 24-cv-6709, 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025)........................................ 20

*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020)........................................ 8

*Stasi v. Inmediata Health Grp. Corp.*,
501 F. Supp. 3d 898 (S.D. Cal. 2020) .......... 12

*Strehl v. Guitar Center, Inc.*, No. 23-cv-2603,
2024 WL 2790373 (C.D. Cal. May 29, 2024) .......... 20

*Thomas v. Papa Johns Int'l, Inc.*, No. 22-cv-2012,
2024 WL 2060140 (S.D. Cal. May 8, 2024) .......... 10

*Turner v. Apple, Inc.*, No. 20-cv-7495,
2022 WL 445755 (N.D. Cal. Feb. 14, 2022) .......... 8

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) .......... 19

*Ziegler v. WellPet LLC*,
526 F. Supp. 3d 652 (N.D. Cal. 2021) .......... 8

**State Cases**

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) .......... 15, 16

*Comm. On Children's Television, Inc. v. Gen. Foods Corp.*,
35 Cal. 3d 197 (1983) .......... 17

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .......... 9

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) .......... 9

*In re Tobacco II Cases*,
46 Cal. 4th 298, 312 (2009) .......... 15, 17

*Intel Corp. v. Hamidi*,
30 Cal. 4th 1342 (2003) .......... 13

*Ladd v. Cnty. of San Mateo*,
12 Cal. 4th 913, 917 (1996) .......... 11

*Morgan v. AT&T Wireless Servs., Inc.*,
177 Cal. App. 4th 1235 (2009) .......... 17

*Quiroz v. Seventh Ave. Ctr.*,
140 Cal. App. 4th 1256 (2006) .......... 12

**Federal Statutes**

18 U.S.C. § 2511(2)(d) .......... 20

**State Statutes**

Cal. Civ. Code § 1714(a) .......... 12

Cal. Evid. Code § 699(a) .......... 13

**Rules**

Fed. R. Civ. P., Rule 8 .......... 1, 4

Fed. R. Civ. P., Rule 9(b) .......... 17

Fed. R. Civ. P., Rule 12(b)(6) .......... 1, 3

**Other Authorities**

Children's Online Privacy Protection Rule,
78 Fed. Reg. 3972 (Jan. 17, 2013) .......... 16

Statement of Joseph J. Simons & Christine S. Wilson, FTC, *Regarding FTC and People of the State of New York v. Google LLC and YouTube, LLC* (Sept. 4, 2019) .......... 15

## I. INTRODUCTION

The motion to dismiss brought by Defendants Google LLC and YouTube LLC (together, "Google") fails because it asks the Court to do what Rule 12(b)(6) does not permit: impose extra-statutory elements, disregard well-pleaded allegations, and resolve factual disputes in its favor. At this stage, the question is only whether Plaintiffs have plausibly alleged claims for relief. They have.

Google's lead argument—that virtually all claims require proof that Google knowingly collected children's data without consent—rests on a misstatement of the law. That requirement does not apply across Plaintiffs' causes of action, and even where knowledge is relevant, Plaintiffs' Consolidated Complaint pleads detailed facts supporting Google's awareness of, and participation in, the alleged conduct.

The Complaint also is not a "shotgun pleading." It spans more than 70 pages, organizes allegations by actor and conduct, and clearly distinguishes between Google's role in designing and operating the YouTube data-collection systems (which Google LLC owns) and Disney's role as a content provider. That is sufficient to provide fair notice under Rule 8.

Nor do Google's standing and equitable-relief arguments warrant dismissal. Its assertion that prior FTC settlements eliminate any risk of ongoing harm is unsupported and contrary to settled authority recognizing that government enforcement does not foreclose private injunctive relief—particularly where, as alleged here, the same underlying conduct has persisted despite prior regulatory action. Courts routinely defer such issues until a factual record has been developed.

Plaintiffs plausibly allege that Google designed and operated systems that collect, analyze, and monetize children's personal information in violation of statutory and common-law duties. Those allegations support claims for invasion of privacy, negligence, trespass to chattels, and violations of consumer protection and wiretap statutes.

Ultimately, many of Google's arguments depend on competing factual narratives—for example, whether its policies were effective, whether it reasonably relied on Disney, and whether it adequately responded to known issues. Those disputes cannot be resolved on a motion to dismiss. Accepting the Complaint's well-pleaded allegations as true and drawing reasonable inferences in Plaintiffs' favor, the claims are more than plausible. Google's motion therefore should be denied.

## II. BACKGROUND

This case arises from Disney's operation and monetization of child-directed Disney video content on YouTube under a COPPA-driven system that requires content creators to designate uploaded videos as "Made for Kids" ("MFK") or "Not Made for Kids" ("NMFK"). ¶¶ 4–5, 102–10.[1] Google adopted the MFK framework on YouTube after a landmark 2019 FTC enforcement action and settlement addressing Google's unlawful collection of children's personal information without parental notice and verifiable parental consent. *Id.*

Under the framework, the MFK designation is intended to restrict the collection of children's personal information for behavioral advertising and to disable features that otherwise increase engagement and data generation. ¶¶ 118–23. By contrast, when a child-directed video is not designated MFK (i.e., is treated as NMFK), targeted advertising can run using persistent identifiers, and adult-oriented functionality such as comments, likes/follows, and autoplay can remain enabled—features that increase engagement and, in turn, the value of the viewer to advertisers. ¶¶ 12, 118–23.

Google was "aware of Disney's noncompliance with the MFK Policy but failed to take adequate measures to correct it," even as Defendants continued to collect and monetize children's data. ¶ 9. YouTube itself identified and corrected some misclassifications, informing Disney in June 2020 that it had changed the designation on

---

[1] Citations to "¶ _" or "¶¶ _" refer to the Consolidated Complaint, ECF No. 55.

more than 300 videos from NMFK to MFK (¶¶ 158–59), but failed to implement sufficient measures to prevent continued misdesignation. ¶¶ 9, 160.

While Google maintained automated and human review processes capable of overriding incorrect labels, it "admits that 'in most cases'" it relies on the creator's designation. ¶ 116. This reliance is particularly significant given that channel-level defaults automatically apply NMFK status to all uploaded videos, unless affirmatively changed. ¶ 117. Google's system thus incentivized mislabeling, with YouTube even telling creators like Disney that designating content as MFK could reduce revenue, while NMFK designation enables more lucrative behavioral advertising. ¶¶ 109, 124. Because Google shares advertising revenue with content creators and pays more for targeted ads than contextual ads, the platform's structure created financial incentives to misclassify child-directed content. ¶ 72.

Google executed the unlawful data collection and monetization once videos were misdesignated. Google collected personal information—including viewing history, identifiers, and location data—and used it to build user profiles and deliver targeted ads. ¶¶ 65–68, 122–23.

## III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, "accepted as true," to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV. ARGUMENT

### A. Google's "Knowledge" Argument Is a Red Herring.

Google's lead argument is that every claim against it should be dismissed because, according to Google, every claim hinges on showing that "Google knowingly collected personal information from children without parental consent." MTD at 5. This is a plainly incorrect statement of the law: such knowledge is not a common element across Plaintiffs' claims, and Google cites no authority suggesting it is. In fact, Google appears to implicitly concede as much when it retreats later to the narrower proposition that

knowing collection without consent is an element of a COPPA violation. *Id.* at 6. This also is legally incorrect, but since a COPPA violation is a predicate for Plaintiffs' UCL claim, Plaintiffs explain the error in Google's argument when discussing the UCL claim. *See infra* § IV.H.

**B. The Complaint Does Not Contain Impermissible "Shotgun Pleading."**

Google's argument that a few shorthand references to "Defendants" in the well-organized, detailed, 70-page, 366-paragraph Complaint renders the entire document impenetrably vague to the point Google is unsure of the allegations against it has no merit. The argument falls apart upon reading the entire Complaint before turning to the stray references highlighted out of context in Google's motion.

Under Rule 8, a complaint may be subject to dismissal "if it does not indicate which individual defendant or defendants are responsible for which alleged wrongful act" because Rule 8 requires that a "pleading give fair notice of the claim being asserted and the grounds upon which it rests." *Parity Networks, LLC v. Moxa Inc.*, No. 20-cv-698, 2020 WL 6064636, at *3 (C.D. Cal. Sept. 11, 2020). Nevertheless, "group pleading may be permissible so long as group pleading is limited to defendants who are similarly situated." *Id.*

Here, the Complaint alleges in detail the different roles that Google and Disney play in the alleged violations. Indeed, the Complaint provides a roadmap for distinguishing Google and Disney's conduct, and carefully describes how each Defendant's separate conduct contributed to the alleged claims. Under "Factual Allegations," there are, for example, separate sections with clear headings describing: (i) "Disney's Business Model," ¶¶ 43–51; (ii) "The YouTube Platform," ¶¶ 52–57; (iii) "The YouTube Platform and Data Collection Ecosystem," ¶¶ 58–72; (iv) "YouTube Disney's YouTube Business and Presence on YouTube," ¶¶ 73–88; (v) "COPPA Enforcement against YouTube and the Resulting 'Made For Kids' Policy," ¶¶ 102–24; (vi) "Disney Content on YouTube Kids," ¶¶ 125–31, (vii) "Disney's Systematic Failure to Appropriately Mark Child-Directed Videos," ¶¶ 132–52; and (viii) "COPPA

Enforcement Against Disney," ¶¶ 153–67. A cursory review of these sections reveals that the component allegations carefully distinguish Google's conduct from Disney's conduct. Accordingly, the notion that the Complaint fails to distinguish between Google and Disney is pure fiction. *See Pena v. Int'l Med. Devices, Inc.*, No. 22-cv-3391, 2023 WL 5667538, at *2 (C.D. Cal. Jan. 10, 2023) (rejecting shotgun pleading dismissal argument where complaint "sufficiently alleges each Defendants' role in the alleged wrongdoing").

Indeed, while couched in terms of a "shotgun pleading" objection, Google's arguments boil down to (i) merits arguments about the law addressed elsewhere in the briefing, and (ii) inappropriate attempts to dispute certain allegations. Google first complains that in its view, based on the alleged facts, "Google was entitled to rely on [Disney's] video designations" for purposes of COPPA compliance. MTD at 9. Putting aside that Google is legally incorrect for the reasons explained below, *see infra* § IV.H.1, Google's argument about its "entitlement to rely" on Disney's actions is simply a legal argument; it does not identify any confusion, ambiguity, or inconsistency in the Complaint about what Disney did versus what Google did.

Google next attempts to quibble with a few well-pleaded allegations, but none of these efforts identify areas where Plaintiffs fail to allege Google's relevant conduct. Google complains that it is unfair to say that "Defendants" both "misclassified" videos because Disney classified the videos in the first instance. MTD at 8. But Plaintiffs allege that Google had the ability to, and actually did, review and alter video classifications as part of its active role in policing classifications for COPPA compliance. ¶¶ 113, 158–59. Thus, Google's specific role in the alleged misclassification is not factually unclear for purposes of a "shotgun pleading" objection. Google's similar quibbling with the allegation that both YouTube and Disney "operate" a YouTube channel, MTD at 9, is, at best, odd: it would be hard for Disney to operate a YouTube channel if YouTube were not in operation. In any event, the Complaint is clear about the respective roles of Disney and YouTube in operating YouTube channels.

The remaining Complaint paragraphs Google references that include allegations against "Defendants" are not problematic because Google and Disney are similarly situated for purposes of those summary allegations, and the details of their respective conduct underlying the allegations are spelled out elsewhere in the complaint as already discussed. ¶¶ 17, 167, 291, 302, 318, 325, 330 ("Defendants'" conduct); ¶¶ 285, 290, 306 ("Defendants'" knowledge). Referring to defendants who are similarly situated as relevant to the allegation as "Defendants" is not improper. *Parity Networks, LLC*, 2020 WL 6064636, at *3. As a result, Google's reliance on *First Call Int'l, Inc. v. S&B Glob., Inc.*, No. 23-cv-10016, 2024 WL 4404429, at *5 (C.D. Cal. July 5, 2024) is misplaced, because in that case the Court reviewed the complaint and concluded that "[a]ny allegations that [the moving defendant] herself did anything at all relevant to this case are entirely conclusory." The Complaint here, by contrast, extensively details Google separate conduct.

**C. Plaintiffs' Request for Injunctive Relief Is Proper.**

**1. The FTC settlement does not deprive Plaintiffs of standing to seek injunctive relief.**

The central fiction underlying Google's standing argument is that the FTC settlement necessarily prevents any future harm to Plaintiffs, and therefore "Plaintiffs do not plausibly face any 'impending injury.'" MTD at 10. This is no different than arguing the posted speed limit is 25 mph, so there is no plausible risk anyone will drive faster around the posted sign. Unsurprisingly, courts confronting similar arguments have recognized—particularly at the motion to dismiss stage—injunctive relief is a fact-dependent remedy inappropriate for dismissal without a developed factual record. *See Astiana v. Ben & Jerry's Homemade, Inc.*, No. 10-cv-4387, 2011 WL 2111796, at *13 (N.D. Cal. May 26, 2011) ("[T]he availability of injunctive relief cannot be determined until the parties have developed the factual record."); *see also Pratt v. Whole Foods Mkt. Cal., Inc.*, No. 12-cv-5652, 2014 WL 1324288, at *9 (N.D. Cal. Mar. 31, 2014).

Many courts have acknowledged in similar circumstances that a government settlement neither guarantees cessation of unlawful conduct nor provides complete relief to private plaintiffs. *See Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 545–46 (E.D.N.Y. 2017) (FTC consent order did not moot injunctive claims); *Dasrath v. Cont'l Airlines, Inc.*, No. 02-cv-2683, 2006 WL 372980, at *7 (D.N.J. Feb. 16, 2006) (same); *Dickerson v. U.S. Steel Corp.*, 64 F.R.D. 351, 360 (E.D. Pa. 1974) (court may issue broader or different injunction than consent decree).

The settlement provisions Google references—internal review programs, training, and content designation protocols—are forward-looking compliance measures, the effectiveness of which depend entirely on Disney's unproven implementation. At most, the settlement may later inform the scope of any injunction, but it does not altogether eliminate Plaintiffs' entitlement to seek one.

Google's reliance on the out-of-circuit case *In re Pre-Filled Propane Tank Antitrust Litig.*, 893 F.3d 1047 (8th Cir. 2018) is unavailing not only because that court's reasoning is not binding and less persuasive than the authority cited above, but, even if the Eighth Circuit's reasoning were applicable here, the injunction sought in that case narrowly specified the conduct it sought to enjoin, which was already covered by an FTC consent decree. *Id.* at 1054. At most, then, this Court could conclude *In re Pre-Filled Propane*'s analysis is relevant later in the litigation when the proper scope of requested injunctive relief is determined.

In addition, the *In re Pre-Filled Propane* court concluded the plaintiff had not plausibly alleged the possibility of future violation of the FTC consent decree, *id.* at 1055, whereas here Google was already subject to an FTC consent decree in 2019, ¶¶ 102–05, yet the harm persists, demonstrating the plausibility of continuing harm in this case. The *Joaquin v. Geico Gen. Ins.,* No. 07-cv-3259, 2008 WL 53150 (N.D. Cal. Jan. 2, 2008) case Google cites is distinguishable on the same grounds, while *Archer v. Carnival Corp. & PLC*, No. 20-cv-4203, 2020 WL 9264981 (C.D. Cal. Sept. 22, 2020) is inapplicable because the future harm there hinged on the plaintiff's vague aspirations

to potentially go on a cruise in the future, whereas here Plaintiffs' data continues to be exploited by third parties. ¶ 271.

### 2. Google's *Sonner* Argument Has No Merit.

Google's argument that Plaintiffs can seek neither equitable nor injunctive relief because they also seek compensatory damages misunderstands the nature of Plaintiffs' claims. MTD at 10. Legal damages are insufficient to fully remedy privacy harms and data misappropriation like Plaintiffs allege here. *See Turner v. Apple, Inc.*, No. 20-cv-7495, 2022 WL 445755, at *4 (N.D. Cal. Feb. 14, 2022) (allowing equitable claims based on "misappropriated data" because "legal damages do not cover the full value of the harm"); *Brooks v. Thomson Reuters Corp.*, No. 21-cv-1418, 2021 WL 3621837, at *11 (N.D. Cal. Aug. 16, 2021) (sustaining unjust enrichment claim where "the injury . . . is an invasion of privacy that can never be fully remedied through damages"). Economic damages are insufficient to remedy ongoing wrongdoing, warranting injunctive relief. *See Ziegler v. WellPet LLC*, 526 F. Supp. 3d 652, 687 (N.D. Cal. 2021).

While Google cites to *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), several courts have found that *Sonner* requires nothing more than alleging that plaintiffs lack an "adequate remedy at law" at the pleading stage. *See In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1023 (N.D. Cal. 2024); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1086 (N.D. Cal. 2023); *Milstead v. Gen. Motors LLC*, No. 21-cv-6338, 2023 WL 4410502, at *7–8 (N.D. Cal. July 6, 2023). Plaintiffs have met this requirement. ¶¶ 271, 319.

## D. Plaintiffs State Privacy Claims.

When, as here, a California constitutional privacy claim and common law intrusion upon seclusion claim "are brought on the same factual basis, it is appropriate to assess the two claims together and examine the largely parallel elements of these two claims which call on the Court to consider (1) the nature of any intrusion upon reasonable expectations of privacy, and (2) the offensiveness or seriousness of the intrusion,

including any justification and other relevant interests."[2] *In re TikTok, Inc. Minor Privacy Litigation*, No. 25-ml-3144, 2025 WL 3628598, *13 (C.D. Cal. Nov. 5, 2025) ("*In re TikTok*").[3]

Whether a particular invasion or intrusion was "highly offensive" presents a mixed question of law and fact, *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 40 (1994), and the analysis focuses on the degree to which the intrusion is unacceptable as a matter of public policy, which in turn requires "a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *In re TikTok*, 2025 WL 3628598, at *16 (quoting *In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020)).

Google suggests that the data collection at issue is "routine commercial behavior," but this Court rejected that notion in *In re TikTok*. As this Court explained, COPPA signifies a legal determination about the particular sensitivity of digital information concerning minors and the significance of parental control over the extent of collection and nature of such data. *In re TikTok*, 2025 WL 3628598, at *14. That legal determination carries significant weight given the "highly 'context-specific nature of the [reasonable expectation of] privacy inquiry.'" *Id.* (quoting *McDonald v. Kiloo ApS*, 385

---

[2] To prevail on a claim for intrusion upon seclusion, a plaintiff must show (1) the defendant "intentionally intrude[d] into a place, conversation, or matter" in which the plaintiff had "a reasonable expectation of privacy," and (2) the intrusion was "in a manner highly offensive to a reasonable person." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009). For a California constitutional privacy claim, the plaintiff must show they had a "legally protected privacy interest," "a reasonable expectation of privacy," and a "sufficiently serious privacy violation." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35–37 (1994).

[3] Tentative ruling adopted in final. *In re TikTok, Inc., Minor Privacy Litig.*, No. 25-ml-3144, 2025 WL 3628448 (C.D. Cal. Nov. 6, 2025). Because the final ruling incorporates the tentative by reference, Plaintiffs cite to the tentative whenever citing to *In re TikTok*.

F. Supp. 3d 1022, 1035 (N.D. Cal. 2019)). Google is therefore also mistaken when suggesting that Plaintiffs' allegations about the growing concern over the collection of data from minors are irrelevant. *See McDonald*, 385 F. Supp. 3d at 1035 (crediting similar allegations and surveys as relevant to the underlying inquiry). "Online platforms directed at children, and the data they collect, are distinguishable from the general principle that 'the internet is not a place where users have a reasonable expectation of privacy.'" *In re TikTok, Inc.*, 2025 WL 3628598, at *14 (quoting *Thomas v. Papa Johns Int'l, Inc.*, No. 22-cv-2012, 2024 WL 2060140, at *1 (S.D. Cal. May 8, 2024)).

Google argues Plaintiffs must identify certain "plus factors" for their claims to survive and suggests that pleading a COPPA violation cannot satisfy the "highly offensive" requirement. MTD at 11–12. This Court decided otherwise last year. *See In re TikTok*, 2025 WL 3628598, at *16 ("'A violation of federal law is generally considered egregious, and because COPPA prohibits . . . data collection from minors to protect their privacy,' courts have found "an egregious intrusion into the minors' expectation of privacy" adequately alleged where "defendants allegedly engaged in the specific conduct proscribed by COPPA.") (quoting *A.B., by and through Turner v. Google LLC*, 737 F. Supp. 3d 869, 884 (N.D. Cal. 2024)).

This Court is not alone in rejecting the notion that these claims require the presence of certain "plus factors." *See McDonald*, 385 F. Supp. 3d at 1036 (acknowledging potential significance of "plus" factor but nevertheless finding privacy claim predicated on Disney's and others' collection and use of minor data for targeted advertising in violation of COPPA was sufficiently stated even without that factor). While Plaintiffs acknowledge that other courts have viewed things differently, *see Hubbard v. Google LLC*, No. 19-cv-7016, 2025 WL 82211 (N.D. Cal. Jan. 13, 2025), Plaintiffs respectfully submit that this Court has adopted the better-reasoned approach.

Google's remaining arguments rely on factual disputes inappropriate for resolution now. For example, Google contends that Plaintiffs have not alleged any conduct by Google that would violate COPPA, but Google's conclusion is premised on

the supposed "fact" that Google responded to Disney's misdesignated videos promptly and appropriately. Plaintiffs allege otherwise, including by alleging that Google was aware of Disney's noncompliance and failed to take adequate measures to timely correct such noncompliance. ¶¶ 9, 158. The resolution of such questions is best left to the finder of fact, after the parties have had the opportunity to obtain discovery.

**E. Plaintiffs State a Claim for Negligence.**

To state a claim for negligence, a plaintiff must show: "(a) a legal duty to use due care; (b) a breach of such legal duty; and (c) the breach as the proximate or legal cause of the resulting injury." *Ladd v. Cnty. of San Mateo*, 12 Cal. 4th 913, 917 (1996) (internal quotation marks and citation omitted).

Google argues that, to the extent that Plaintiffs' negligence claims are premised on anything less than knowledge that Google was collecting personal information, Plaintiffs' claims are preempted by COPPA. Plaintiffs address why Google is mistaken about the requisite scienter below. *See infra* § IV.H. Even if, however, this Court concluded that Google could only be liable if it had actual knowledge that it was collecting personal information, Plaintiffs have adequately alleged such knowledge. Plaintiffs allege that Google has been aware of Disney's noncompliance with the YouTube MFK Policy for at least the last six years, enabling both Defendants to collect Plaintiffs' personal information, and Google has not taken adequate measures to stop Disney's noncompliance, which continues to present. *E.g.*, ¶¶ 9, 12, 157–58. Moreover, nowhere in *Jones v. Google LLC*, 73 F.4th 636 (9th Cir. 2023) did the Ninth Circuit suggest that a law imposing liability for negligent conduct would necessarily be inconsistent with COPPA. Indeed, *Jones* indicated that laws "supplement[ing]" COPPA by imposing liability even where COPPA may not, are not "inconsistent" with COPPA, because they do not contradict or stand as an obstacle to the goals reflected in COPPA. *See id.* at 642–43.

Google next argues that Plaintiffs have failed to allege a duty. This is legally incorrect, because "there is abundant authority that California law recognizes a duty on

companies to take reasonable steps to protect all sensitive information it obtains from individuals." *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 634 (N.D. Cal. 2024) (citations omitted); *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1039 (N.D. Cal. 2019); *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 915 (S.D. Cal. 2020); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019) ("*Facebook Privacy Litigation*").

Regardless, Google's suggestion that a special relationship is required for a duty to exist is wrong. California law presumes a duty to act with reasonable care, and Google has not identified any reasons that duty would not exist here. *See* Cal. Civ. Code § 1714(a) ("Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person [subject to exceptions not applicable here].").

Google's last argument, that Plaintiffs have not alleged any actual, non-speculative damages, presumes a specific type of economic damage must be pleaded, which is wrong. Plaintiffs can support their negligence claim with allegations that they suffered "appreciable, nonspeculative, present injury" in the form of the invasion of their privacy and the attendant collection of their private information. *See In re TikTok*, 2025 WL 3628598, at *24 (denying motion to dismiss negligence claims based on alleged injury to substantive privacy rights).

### F. Plaintiffs State a Claim for Negligence Under a Negligence Per Se Theory.

Negligence per se is an evidentiary presumption that "creates a presumption of negligence" if certain elements are met. *Howse v. Chiquita Canyon, LLC*, 757 F. Supp. 3d 1049, 1076 (C.D. Cal. 2024) (quoting *Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1285 (2006)). Under that doctrine, the standard of care can be established by a statute, the defendant's violation of that statute can "give rise to a presumption that it failed to exercise due care" where that violation "proximately caused an injury," the

injury resulted from something the statute was designed to prevent, and the person who was injured was "one of the class of persons for whose protection the statute, ordinance, or regulation was adopted." Cal. Evid. Code § 699(a).

Google seeks dismissal of Plaintiffs' negligence per se claim on the grounds that negligence per se is not a cause of action under California law, but rather a theory that can be used to establish a claim for negligence. MTD at 25. Google's semantics amount to simply arguing Count V should have been labeled "Negligence: Negligence Per Se" instead of simply "Negligence Per Se." Plaintiffs are not opposed to treating the claim for negligence per se as an alternative negligence theory. Plaintiffs appropriately pleaded the theories separately to put Defendants on notice of the different bases for the claim. Whether characterized as a separate claim, or a theory in support of negligence, Plaintiffs' negligence per se theory should not be dismissed because, contrary to Google's assertion, Plaintiffs have adequately alleged the violation of multiple statutes, *see infra* § IV.H–J, as well as the underlying elements of negligence.

**G. Plaintiffs State a Claim for Trespass to Chattels.**

Plaintiffs adequately allege the elements of intentional interference and cognizable injury, and Google's contrary arguments misread both the Complaint and controlling law. First, Plaintiffs sufficiently allege intent. Under California law, trespass to chattels requires only that a defendant intentionally engage in the conduct that results in interference—not that it intended to cause harm or know the full extent of that interference. *See Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1350–51 (2003). Here, Plaintiffs allege that Google deliberately designed and implemented its MFK policy and related data-collection architecture, knew content providers like Disney were misdesignating MFK videos as NMFK yet failed to adequate police those misdesignations, and knowingly collected, processed, and monetized Plaintiffs' data through those systems. ¶¶ 9–12, 156–58. At the pleading stage, Plaintiffs need not prove that Google knew each specific video was misdesignated—only that Google intentionally operated systems that accessed and extracted user data. *See, e.g.*, *In re*

*Facebook Internet Tracking Litig.*, 956 F.3d at 603–04 (intent satisfied where defendant deliberately deployed tracking mechanisms). Moreover, Google's attempt to recast the conduct as mere "carelessness" ignores the well-pleaded allegations that Google failed to adequately rectify known misdesignations and intentionally operated systems that extracted additional data from minors collected only because of the misdesignations. ¶¶ 9–12, 156–58. Further, Plaintiffs allege Google knowingly incentivized misdesignation. ¶¶ 72, 109, 124.

Ninth Circuit authority confirms that trespass to chattels claims may be premised on interference with a possessory interest in data, including in contexts like data scraping and other automated data collection. In *hiQ Labs, Inc. v. LinkedIn Corp.*, for example, the Ninth Circuit held that scraping public profile data from LinkedIn did not violate the CFAA, but emphasized that victims of data scraping "are not without resort" against scraping and similar conduct, expressly pointing to state torts such as trespass to chattels as the appropriate vehicle when automated access interferes with the condition, quality, or value of servers and data. 31 F.4th 1180, 1201 (9th Cir. 2022).

Google's argument that Plaintiffs fail to allege the required injury even if data could be a chattel is flawed. The Complaint includes extensive factual allegations about the recognized market value of personal data, including academic estimates that user data can be worth hundreds of dollars per year, with children's data commanding a premium. *E.g.*, ¶¶ 168–86. Plaintiffs plausibly allege that their personal information had measurable economic value and that Google's unauthorized collection, retention, and monetization of that data impaired its value to Plaintiffs—either by depriving them of exclusive control or by diminishing the bargaining position they would otherwise have had in the data market.

/ / /

/ / /

/ / /

/ / /

### H. Plaintiffs State a UCL Claim.

#### 1. Plaintiffs sufficiently allege that Google violated the UCL through unlawful, unfair, and fraudulent conduct.

Unlawful: Actions that are unlawful under any other laws are unlawful under the UCL. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Plaintiffs sufficiently allege that Google violated COPPA and therefore sufficiently allege unlawful conduct in violation of the UCL.

"COPPA . . . limits the amount of data Google is legally able to collect from children without parental consent." *Hubbard v. Google LLC*, 508 F. Supp. 3d 623, 626 (N.D. Cal. 2020). Because Google operates a "general audience platform" directed at children, actual knowledge is not required to hold Google liable under COPPA. *Id.*; *see also In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009). Even if actual knowledge were required in this context, the FTC has made it clear that YouTube had actual knowledge that it gathers information on child-directed content on its platform.[4] Previous FTC Commissioners published a statement that "YouTube did possess actual knowledge as evidenced by its own marketing efforts, information received from channels, and its review of channel content to curate for the YouTube Kids App."[5]

The FTC, the authority on which Google relies for its knowledge standard, "believes that the actual knowledge standard it is adopting will likely be met in most cases when: (1) A child-directed content provider (who will be strictly liable for any collection) directly communicates the child-directed nature of its content to the other online service; or (2) a representative of the online service recognizes the child-directed

---

[4] *See Hubbard v. Google LLC*, 508 F. Supp. 3d 623, 626 (N.D. Cal. 2020) (quoting Statement of Joseph J. Simons & Christine S. Wilson, FTC, *Regarding FTC and People of the State of New York v. Google LLC and YouTube, LLC* (Sept. 4, 2019), https://www.ftc.gov/system/files/documents/public_statements/1542922/simons_wilson_google_youtube_statement.pdf.).

[5] *Id.*

nature of the content." MTD at 6 (quoting Children's Online Privacy Protection Rule, 78 Fed. Reg. 3972, 3978 (Jan. 17, 2013)). Google's conduct here satisfies both prongs.

Google acts as a child-directed content provider when it publishes videos on YouTube targeting children, which it purportedly requires designation as MFK to limit the data collected from minors. ¶¶ 102–10. Plaintiffs allege that Google requires parental consent for and restricts NMFK data collection on its YouTube Kids platform, yet through failures to adequately police misdesignation, Google collects that data from minor viewers of those same videos on the regular YouTube platform. ¶¶ 9–12, 125–31, 156–58. Google cannot make a cursory pretense to comply with the 2019 FTC Order (MTD at 7), while continuing to collect additional unauthorized data on children watching child-directed videos, profiting from such data collection, and maintaining that it has fixed the problem.

Further, Plaintiffs have adequately alleged multiple violations of other statutory and constitutional laws, including violations of the California Constitution's privacy protections, the ECPA, and WESCA. ¶¶ 256–71, 334–67. Even if the Court were to find the Complaint lacks sufficient allegations of a COPPA violation, Plaintiffs still have adequately alleged an unlawful UCL claim under those other laws.

<u>Unfair</u>: The UCL "makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law." *Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at 180. Google's conduct is unfair because it violates public policy by collecting data on children and causes children, like Plaintiffs, to suffer a loss of personal information. *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d 849, 901 (N.D. Cal. 2024); *A.B. by & Through Turner*, 737 F. Supp. 3d at 881. Plaintiffs' Complaint alleges that Google tracked and analyzed Plaintiffs' data to benefit Google, causing Plaintiffs to lose their privacy and the value of their personal information. ¶¶ 191–222.

Google has failed to meet its burden for dismissal by not advancing arguments that sufficiently justify its conduct as beneficial—other than for its own profit—against

the harms suffered by Plaintiffs. *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d at 899 (finding that Meta otherwise failed to meet its burden for dismissal because it has not advanced any arguments justifying its conduct against plaintiff's harms).

Fraudulent: Plaintiffs have satisfied the requirements of Rule 9(b). Rule 9(b) "do[es] not require the class representative to plead or prove an unrealistic degree of specificity." *In re Tobacco II Cases*, 46 Cal. 4th at 306. When fraud is based on numerous misrepresentations, plaintiffs can provide "a representative selection" of the misrepresentation "to indicate the language upon which the implied misrepresentations are based." *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1262 (2009). When it comes to misrepresentations, "children in particular are unlikely to recall the specific[s]." *Comm. On Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 218–19 (1983) (superseded on other grounds as stated in *Branick v. Downey Savings & Loan Ass'n*, 39 Cal. 4th 235, 242 (2006)). When numerous misrepresentations to children are concerned, courts can "reasonably require plaintiffs to set out or attach a representative selection of [misrepresentations]." *Id.* at 673.

Google's argument that Plaintiffs have inadequately alleged a fraudulent claim under the UCL fails. MTD at 18. Even though it is unrealistic to ask children to identify the specific videos they watched, Plaintiffs nonetheless alleged specific representative examples of mislabeled videos that target general audiences but should actually be designated MFK. ¶¶ 113–16, 134–46. Plaintiffs' allegations also specify which conduct for each Defendant is fraudulent; Google misrepresents the nature of YouTube videos to collect additional data from children without consent, generate data analyses, and profit. *Id.* ¶¶ 59, 131. Such allegations meet Rule 9(b)'s requirements.

**2. Plaintiffs have UCL standing.**

Plaintiffs have standing to pursue their UCL claim because Plaintiffs adequately allege economic injury from Google's conduct. Plaintiffs must allege economic injury, or loss of money or property, to assert UCL standing. *Brown v. Google LLC*, 685 F.

Supp. 3d 909, 942 (N.D. Cal. 2023). Numerous courts have found that browsing data carries financial value and that the diminution of value in a plaintiff's browsing data constitutes economic loss. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 600–01; *Brown*, 685 F. Supp. 3d at 942; *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021); *A.B. by & Through Turner*, 737 F. Supp. 3d at 881–82 ("Because plaintiffs allege that they can 'no longer realize the full economic value of their Personal Information' due to the data collection by defendants, they adequately plead an economic injury resulting from defendants' purported misconduct.").

In *A.B. by & Through Turner*, for example, the plaintiffs "allege[d] that defendants obtained personal information from children under the age of 13 through Android apps in violation of COPPA." 737 F. Supp. 3d at 875. The court noted that the plaintiffs could decide to sell their data in the future, that there was a market for such data, and that they sufficiently alleged economic injury. *Id*. The *A.B. by & Through Turner* plaintiffs, being minor children, did not need to show that they were planning to actively participate in the data market to allege economic injury. *Id*.

The authority upon which Google relies is unavailing. *McGee v. S-L Snacks National* contemplates representations about cereal safety, not data collection. MTD at 17 (citing 982 F.3d 700, 705 n.3 (9th Cir. 2020)). *McMahon v. Take-Two Interactive Software, Inc*. involves allegedly misleading video game packaging, also inapposite to the instant case. *Id.* (citing 745 F. App'x 786, 787 (9th Cir. 2018)).

Google argues that the Ninth Circuit in the *Facebook Privacy Litigation* did not find UCL standing for the defendant's dissemination of personal information and the plaintiffs' loss of the sale value from such dissemination. *Id.* (citing 572 F. App'x 494 (9th Cir. 2014)). But that ruling predates *Facebook, Inc. Internet Tracking Litigation*, where the Ninth Circuit found economic injury existed for plaintiffs who showed that browsing histories have value and that corporations profited from the value of such histories. 956 F.3d at 600–01. Further, the Ninth Circuit in the *Facebook Privacy Litigation* did not explicitly consider whether the plaintiffs alleged their data's value and

corporate profit from such data. Here, Plaintiffs' Complaint contains detailed allegations regarding Google's profit and Plaintiffs' loss (¶¶ 166, 168–86), akin to the plaintiffs in *Facebook, Inc. Internet Tracking Litigation*.

Here, Plaintiffs allege that Google collects and monetizes user data from children and even de-incentivizes lawful behavior from its content creators to collect more data from children and generate greater profits. ¶¶ 6, 10, 12, 59, 124. This is distinguishable from Google's unpublished authority on this point. In *Roe v. Amgen*, the plaintiffs did not allege that the defendant sold or profited from their data. No. 23-cv-07448, 2024 WL 2873482, at *7 (C.D. Cal. June 5, 2024). And, because Plaintiffs here are minors, this Court should be guided by the *A.B. by & Through Turner* court's finding that data market participation need not be alleged, 737 F. Supp 3d at 875, not Google's attempted comparisons to *Roe v. Amgen*, 2024 WL 2873482, at *1–2, or *Lau v. Gen Digital Inc.*, neither of which involved minors. No. 22-cv-8981, 2023 WL 10553772, at *1 (N.D. Cal. Sept. 13, 2023).

Plaintiffs have sufficiently alleged that they have lost value in their data through Google's conduct. ¶¶ 6, 10, 12, 59, 124, 181, 253, 332.

### I. Plaintiffs State an ECPA Claim.

In arguing that Plaintiffs' ECPA should be dismissed, Google purports to be a mere party to the communications between Plaintiffs and Google (MTD at 19), but it is not. When defendants "exceed the ordinary function of a tape recorder" and "capture, store, and interpret real-time data," defendants intercept the contents of Plaintiffs' communications. *India Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1355 (S.D. Cal. 2024) (internal citations omitted). Courts have found defendants to be interceptors when "in real time, [defendant] directly receives . . . communications" and "creates [records] of those communications." *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 976 (N.D. Cal. 2023).

Here, the intercepted communications at issue are the transmission of Plaintiffs' personal information to Google while watching noncompliant MFK Disney videos—a

communication unknown and unintended by Plaintiffs when they visited YouTube to watch the videos—when that data should not have been communicated to Google had Google ensured MFK designation. ¶¶ 9–12, 156–58. Thus, Google collected more from Plaintiffs than was intended to be communicated from a child watching what should have been a protected MFK video, and then Google analyzed that data to profit, conduct that amounts to more than that of a party communicator. ¶¶ 10, 12, 32, 59, 104, 166, 173. Google concedes that it does so contemporaneously: YouTube's own privacy policy video informs users that it "collect[s]" information "when you use [its] services," including user "activity." *Id.* ¶ 59 n.30. Further, by its own admission in its Privacy Policy, Google "provide[s] personal information to . . . affiliates and other trusted businesses or persons to process it for us." *Id.*

Google is not a mere communicator because it contemporaneously intercepts additional personal information from communications with Plaintiffs than Plaintiffs knew, intended, or consented to transmitting—and shares that information with third parties. Google overlooks the "crime-tort exception," which provides that the party exception to the ECPA does not apply if the interception "was 'for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.'" *Smith v. Rack Room Shoes, Inc.*, No. 24-cv-6709, 2025 WL 2210002, at *4 (N.D. Cal. Aug. 4, 2025) (quoting 18 U.S.C. § 2511(2)(d)). The crime-tort exception applies here: Google's interception was tortious because it had an "independent prohibited purpose" beyond the act of interception itself. Google's interception of Plaintiffs' personal information violates the ECPA.

**J. Plaintiffs State a WESCA Claim.**

WESCA provides the minimum protections that the ECPA does. *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 959 (N.D. Cal. 2023). Google's arguments against contemporaneous third-party interception (MTD at 20) likewise fails. Google's reliance on *Strehl v. Guitar Center, Inc.* is misguided because that court held the plaintiff *did* sufficiently state a WESCA claim, rejecting the defendant's arguments that a "separate

stream of communication" or "rerouting" is required to satisfy the statute's definition of "interception." No. 23-cv-2603, 2024 WL 2790373, at *8 (C.D. Cal. May 29, 2024). Here, Google violated WESCA for the same reasons that it violated the ECPA.

### K. Plaintiffs State an Unjust Enrichment Claim.

Google's arguments for dismissal of Plaintiffs' claim for unjust enrichment are unpersuasive. Under California law, unjust enrichment is a valid quasi-contract claim. *See Astiana v. Hain Celestial Group*, 783 F.3d 753, 762 (9th Cir. 2015) (holding that when a plaintiff alleges unjust enrichment, courts should construe it as a valid quasi-contract claim seeking the remedy of restitution). Google's argument that the claim fails against Google because paragraph 322 of the Complaint references relief only from Disney ignores that Plaintiffs expressly pleaded the unjust enrichment claim against all Defendants in the substantive allegations. ¶¶ 18, 232(j). And finally, Google's argument that the unjust enrichment claim fails with the predicate claims assumes the claim is derivative. MTD at 21 (citing *Hawkins v. Shimano North American Bicycle Inc.*, No. 23-cv-2038, 2024 WL 4405249, at *9 (C.D. Cal. Aug. 1, 2024)). It is not; *Astiana* makes clear that quasi-contract claims seeking restitution based on unjust enrichment are independently viable. 783 F.3d at 762.

## V. CONCLUSION

Google's Motion should be denied in full. If the Court deems any of the claims inadequately pleaded, leave to amend is appropriate because there has been no prior judicial evaluation of the pleadings, and Google cannot demonstrate bad faith, dilatory motive, or prejudice. *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

Dated: May 8, 2026

Respectfully submitted,

*/s/ Tina Wolfson*

Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**

2600 W. Olive Ave. Suite 500
Burbank, CA 91505
Tel: (310) 474-9111
Fax: (310) 474-8585

Jean S. Martin *(admitted pro hac vice)*
jmartin@awkolaw.com
**AYLSTOCK, WITKIN,**
**KREIS & OVERHOLTZ PLC**
17 East Main Street, #200
Pensacola, Florida 32502
Tel: (850) 266-2893
Fax: (850) 916-7449

William J. Edelman (SBN 285177)
wedelman@milberg.com
**MILBERG, PLLC**
280 South Beverly Drive, Penthouse
Beverly Hills, CA 90212
(771) 474-1121

*Plaintiffs' Interim Co-Lead Counsel*

**L.R. 11-6.2 Certificate of Compliance**

The undersigned counsel certifies that this memorandum contains 6,962 words and complies with the word limit of L.R. 11-6.1.

Dated: May 8, 2026 AHDOOT & WOLFSON, PC

By: */s/ Tina Wolfson*
Tina Wolfson