**KELLEY DRYE & WARREN LLP**
Lauri A. Mazzuchetti (*pro hac vice*)
lmazzuchetti@kelleydrye.com
Whitney M. Smith (*pro hac vice*)
wsmith@kelleydrye.com
7 Giralda Farms, Suite 340
Madison, NJ 07940
Telephone: (973) 503-5900
Facsimile: (973) 503-5950

**KELLEY DRYE & WARREN LLP**
Rebecca B. Durrant (State Bar No. 350444)
rdurrant@kelleydrye.com
350 South Grand Ave., Suite 3800
Los Angeles, CA 90071
Telephone: (213) 547-4930

*Attorneys for Defendants The Walt Disney Company, Disney Worldwide Services, Inc. and Disney Entertainment Operations LLC*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re Disney Worldwide Services COPPA Litigation | Case No. 2:25-CV-08410-GW-RAO<br><br>**DEFENDANTS THE WALT DISNEY COMPANY, DISNEY WORLDWIDE SERVICES, INC., AND DISNEY ENTERTAINMENT OPERATIONS LLC'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Assigned to: Judge George H. Wu<br>Hearing Date: June 15, 2026<br>Time: 8:30 a.m.<br>Location: Courtroom 9D |

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................ 1

LEGAL ARGUMENT.................................................................................... 2

I. DISNEY DID NOT VIOLATE COPPA........................................................ 2

A. Plaintiffs Identify No Actionable Conduct Under COPPA .................... 2

B. Disney Is Not an Operator Under COPPA's Framework ....................... 3

C. Any Expansion of COPPA's "Operator" Definition Would Exceed the FTC's Authority ........................................................ 4

II. PLAINTIFFS FAIL TO SATISFY RULE 8 ............................................... 5

A. Plaintiffs' Conclusory Allegations That They Viewed Wrongly Designated Content Are Insufficient ................................................ 5

B. Plaintiffs' Group-Pleading Is Not Permissible ...................................... 7

III. NATIONWIDE CLASS PLAINTIFFS MUST MAKE A CHOICE OF LAW AT THE PLEADING STAGE.......................................................... 7

IV. PLAINTIFFS DO NOT PLEAD ACTIONABLE INTRUSION UPON SECLUSION OR PRIVACY CLAIMS...................................................... 9

V. PLAINTIFFS' TRESPASS TO CHATTELS CLAIM FAILS ........................ 11

VI. PLAINTIFFS CANNOT STATE A NEGLIGENCE CLAIM ....................... 11

A. Disney Owed No Actionable Duty of Care to Plaintiffs .................... 111

B. Plaintiffs Do Not Respond to Disney's Causation and Harm Arguments ........................................................................... 122

C. Negligence Per Se Cannot Salvage the Claim Because Plaintiffs Allege No Predicate Statutory Violation ......................................... 133

VII. PLAINTIFFS' ALLEGED LINK BETWEEN LOSS AND BENEFIT IS TOO ATTENUATED FOR UNJUST ENRICHMENT .......................... 144

VIII. PLAINTIFFS' UCL CLAIM FAILS ON ITS FACE .................................... 16

A. Plaintiffs Cannot Allege a UCL Claim Under the "Unlawful" Prong Without an Underlying Statutory Violation ............................... 16

B. Plaintiffs State No Claim Under the "Fraudulent" Prong Because Disney Made No Representations to Plaintiffs ................................... 166

C. The "Unfair" Prong Is Not a Proper Alternative to the Other Two Prongs, and Plaintiffs Meet None of Its Tests Regardless .................. 177

IX. PLAINTIFFS' ECPA AND WESCA CLAIMS FAIL .................................. 19

A. Plaintiffs Allege No Actionable Interception by Disney ...................... 19

B. Plaintiffs Do Not Allege "Contents" of Communications .................... 20

C. Plaintiffs Do Not Satisfy the "In Transit" Requirement ....................... 21

D. Plaintiffs Fail to Plead the Tort-Crime Exception .............................. 211

X. PLAINTIFFS' REQUESTS FOR INJUNCTIVE RELIEF ARE MOOT ........ 22

CONCLUSION ..................................................................................... 23

# TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*A.B. by and through Turner v. Google LLC*, 737 F. Supp. 3d 869 (N.D. Cal. 2024)....10

*In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d. 623 (N.D. Cal. 2024)....9, 12

*Albert v. Tyler Techs., Inc.*, 2025 WL 2020063 (C.D. Cal. June 23, 2025)....17

*In re BetterHelp, Inc.*, 2024 WL 4504527 (N.D. Cal. Oct. 15, 2024)....22

*In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015)....20

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163 (1999)....17, 18

*City of Oakland v. Oakland Raiders*, 83 Cal. App. 5th 458 (2022)....15

*Committee on Children's Television v. General Foods Corporation*, 35 Cal. 3d 197 (1983)....6, 17

*eDrop-Off Chicago LLC v. Burke*, 2013 WL 12131186 (C.D. Cal. Aug. 9, 2013)....8

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019)....12

*Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074 (N.D. Cal. 2017)....17, 18

*Hahn v. Select Portfolio Serv., Inc.*, 424 F. Supp. 3d 614 (N.D. Cal. 2020)....16

*Hartford Casualty Insurance Company v. J.R. Marketing, LLC*, 61 Cal. 4th 988 (2015)....15

*Herzer v. Redstone*,
2018 WL 5094933 (C.D. Cal. July 10, 2018) .......... 20

*hiQ Labs, Inc. v. LinkedIn Corporation*,
31 F.4th 1180 (9th Cir. 2022) .......... 11

*Hubbard v. Google LLC*,
508 F. Supp. 3d 623 (N.D. Cal. 2020) .......... 3, 4, 10

*India Price v. Carnival Corporation*,
712 F. Supp. 3d 1347 (S.D. Cal. 2024) .......... 19, 21

*Intel Corporation v. Hamidi*,
30 Cal. 4th 1342 (2003) .......... 11

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 13

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) .......... 13

*Kramer v. Fed. Home Loan Mortg. Corp.*,
2012 WL 13015002 (C.D. Cal. Aug. 6, 2012) .......... 16

*McDonald v. Kiloo ApS*,
385 F. Supp. 3d 1022 (N.D. Cal. 2019) .......... 10, 11

*Morgan v. AT&T Wireless Servs., Inc.*,
177 Cal. App. 4th 1235 (2009) .......... 17

*Plotts v. American Honda Motor Co.*,
2023 WL 4843342 (C.D. Cal. June 9, 2023) .......... 8

*In re Pre-Filled Propane Tank Antitrust Litigation*,
893 F.3d 1047 (8th Cir. 2018) .......... 22

*Safe Air for Everyone v. EPA*,
488 F.3d 1088 (9th Cir. 2007) .......... 2

*Santa Clarita Valley Water Agency v. Whittaker Corp.*,
2021 WL 6104175 (C.D. Cal. Dec. 3, 2021) .......... 14

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) .......... 13, 20

*Shah v. MyFitnessPal, Inc.*,
2026 WL 216334 (N.D. Cal. Jan. 27, 2026) ........................................ 20

*In re Social Media Adolescent Addiction*,
753 F. Supp. 3d 849 (N.D. Cal. 2021)........................................ 18, 19

*Sonner v. Premier Nutrition Corporation*,
971 F.3d 834 (9th Cir. 2020) ........................................ 15

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) ........................................ 17

*Valenzuela v. Super Bright LEDs Inc.*,
2023 WL 8424472 (C.D. Cal. Nov. 27, 2023) ........................................ 21

*Wheeler v. City of Santa Clara*,
894 F.3d 1046 (9th Cir. 2018) ........................................ 4

*Wright v. Ocwen Loan Servicing, LLC*,
2011 WL 13223956 (C.D. Cal. July 12, 2011) ........................................ 18

**Statutes**

15 U.S.C. § 6501(2) ........................................ 4, 5

15 U.S.C. § 6502(b) ........................................ 4

**Other Authorities**

16 C.F.R. § 312.2 ........................................ 2

76 Fed. Reg. 59804, 59808 (Sept. 27, 2011) ........................................ 2, 3

Black's Law Dictionary (12th ed. 2024) ........................................ 13

*Regarding FTC and People of the State of New York v. Google LLC and YouTube, LLC* (Sept. 4, 2019),
https://www.ftc.gov/system/files/documents/public_statements/1542
922/simons_wilson_google_youtube_statement.pdf ........................................ 3

Disney[1] submits this reply memorandum of law in support of its motion to dismiss the Complaint and states as follows:

## INTRODUCTION

Plaintiffs' Opposition (D.E. 68 ("Opp.")) underscores the fundamental defects in their claims. Their entire theory hinges on Disney's video-level designations—the labels that determine whether a video is treated as directed to children. Yet Plaintiffs (i) concede that Disney maintained a process to manage those designations, and (ii) fail to identify any specific video that was supposedly misdesignated, let alone one that any Plaintiff (or minor) viewed. Instead, they ask the Court to infer from the sheer size of Disney's YouTube presence that somewhere, at some point, each Plaintiff must have encountered a misdesignated video. That is precisely the kind of speculative, conclusory pleading that *Iqbal* and *Twombly* foreclose.

To salvage their theory, Plaintiffs assume that any alleged misdesignation automatically violates COPPA. It does not. The asserted violation—that Disney "enabled" YouTube's independent collection of personal information—is not a COPPA violation at all. COPPA does not impose liability on a content creator for a platform's separate data collection practices, regardless of how the creator designates its videos. These are distinct issues: a misdesignation is not a statutory violation, and Plaintiffs cannot impose liability on Disney by pointing to data collection that they do not allege Disney engaged in.

Unable to bridge that gap, Plaintiffs resort to impermissible group pleading, blurring the line between Disney and YouTube despite alleging no coordination, no shared data practices, and no facts tying Disney to YouTube's collection of personal information. Their Opposition offers no answer to these defects. Instead, Plaintiffs ask the Court to sidestep Disney's arguments entirely—even where precedent requires dismissal.

---

[1] Terms defined in Disney's opening brief have the same meaning herein.

The Complaint does not state a claim upon which relief can be granted. Because the deficiencies are fundamental to Plaintiffs' theory, no amendment can cure them. The Court should dismiss the claims against Disney with prejudice.

## LEGAL ARGUMENT

### I. DISNEY DID NOT VIOLATE COPPA

A purported violation of COPPA underlies nearly every claim in the Complaint, serving as the predicate for Plaintiffs' UCL theory, their negligence *per se* claim, and the factual basis for their privacy and other negligence claims. Disney therefore begins where Plaintiffs' theory begins: with their failure to plead any COPPA violation by Disney.

#### A. Plaintiffs Identify No Actionable Conduct Under COPPA

Plaintiffs attempt to paper over their imprecise allegations by asserting that, when they say Disney "collected" information, they really mean only that Disney "enabled" YouTube's collection of data from children. Opp. at 7–8 (citing 16 C.F.R. § 312.2). The statute, however, is explicit: liability attaches under COPPA only where the alleged "enabling" causes a child "to make personal information publicly available in identifiable form." 16 C.F.R. § 312.2. Plaintiffs allege nothing of the sort. They identify no child who publicly posted personally identifiable information, and do not allege that Disney's designations caused any such posting.

The plain text of the COPPA Rule forecloses Plaintiffs' theory. "As a general interpretative principle, the plain meaning of a regulation governs." *Safe Air for Everyone v. EPA*, 488 F.3d 1088, 1097 (9th Cir. 2007) (quotation omitted). The FTC itself recognized that the term "collects or collection" only applies to public postings on forums such as social networking sites or blogs. Children's Online Privacy Protection Rule, 76 Fed. Reg. 59804, 59808 (Sept. 27, 2011). The FTC proposed amending the Rule to encourage filtering technologies to screen public posts for personal information because children increasingly use interactive platforms to express themselves. *Id.* Nothing in the Rule suggests that a third-party

content creator "enables" collection merely by uploading videos to a platform that independently collects persistent identifiers.

It is thus unsurprising that Plaintiffs cite no authority—and Disney is aware of none—applying the statute's definition of "collection" to "enabling" the purely private gathering of persistent identifiers at issue here. To the contrary, the only court to consider a similar theory rejected it. In *Hubbard v. Google LLC*, the court dismissed COPPA claims against channel operators precisely because they "did not collect any of Plaintiffs' information," and "[w]ithout such collection, no violation [of COPPA] occurs." 2025 WL 82211, at *16 (N.D. Cal. Jan. 13, 2025). Because Plaintiffs do not allege any public posting of personal information, they cannot rely on the Rule's "enabling" language. And because Plaintiffs concede that Disney did not receive personal information from children, they fail to allege any "collection" sufficient to support a COPPA violation.

**B. Disney Is Not an Operator Under COPPA's Framework**

Plaintiffs are also wrong that Disney, as a YouTube channel owner, is a COPPA "operator." Their reliance on *Hubbard v. Google LLC*, 508 F. Supp. 3d 623, 626 (N.D. Cal. 2020) is misplaced, given that the court ultimately held that channel owners are not subject to COPPA. *Hubbard* did not adopt Plaintiffs' proposed interpretation; it simply noted that the FTC, through a statement by two Commissioners, had expressed its litigation position that channel owners could be treated as "standalone operators." *Id.* at 626. That statement, however, was not a rulemaking, not a Commission vote, and not binding law. It was an argument made by the FTC in its case against YouTube, and the Commissioners stated only that the settlement of the claims "put[] content creators and channel owners on notice that we consider them to be standalone 'operators' under COPPA." Statement of Joseph J. Simons & Christine S. Wilson, Federal Trade Commission, *Regarding FTC and People of the State of New York v. Google LLC and YouTube, LLC* (Sept. 4, 2019), https://www.ftc.gov/system/files/documents/public_statements/1542922/simons_wil

son_google_youtube_statement.pdf.

In the seven years since that statement, no court has held that channel owners are "operators" under COPPA, and the FTC has taken no steps to define when, if ever, third-party content creators qualify as "operators." Plaintiffs cite no persuasive authority for their expansive interpretation, which is inconsistent with COPPA's governing framework. *See* Mot. at 19.

Moreover, *Hubbard* ultimately rejected Plaintiffs' theory here. After multiple amendments, the court dismissed all COPPA claims against channel owners—without leave to amend—because plaintiffs could not allege that channel owners collected personal information. 2025 WL 82211, at *19. The same defect is present here, and the same result should follow.

**C. Any Expansion of COPPA's "Operator" Definition Would Exceed the FTC's Authority**

Even if the FTC had attempted to expand the definition of "operator" to reach channel owners—and it has not—this effort would have no legal force. Congress provided a statutory definition of "operator," 15 U.S.C. § 6501(2), and delegated to the FTC only limited authority to promulgate regulations implementing COPPA's substantive requirements—such as parental-consent obligations and notice provisions. *See id.* § 6502(b). Nothing in that delegation authorizes the FTC to enlarge the statutory definition of an operator. *See id.* Under the *expressio unius* canon, Congress's enumeration of specific regulatory powers creates a presumption that it intentionally withheld any authority to alter the statutory definition. *See Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1054 (9th Cir. 2018).

The statutory definition therefore controls. And that definition imposes two necessary criteria: an operator must (1) operate a website or online service, and (2) "collect[] or maintain[] personal information from or about the users of or visitors to such website or online service," or have that information collected "on [its] behalf." 15 U.S.C. § 6501(2)(A). Plaintiffs allege neither and their claims should be

dismissed.

## II. PLAINTIFFS FAIL TO SATISFY RULE 8

### A. Plaintiffs' Conclusory Allegations That They Viewed Wrongly Designated Content Are Insufficient

Plaintiffs' Opposition highlights the core defect Disney identified from the outset: not a single named Plaintiff identifies even one specific Disney video they watched that was misdesignated as NMFK at the time of viewing. Their allegation that each Plaintiff "viewed Disney's child-directed content that was misdesignated as NMFK on YouTube," ¶¶ 24–27,[2] is not a factual allegation—it is a legal conclusion, and under *Iqbal* is entitled to no presumption of truth.

Plaintiffs attack Disney's argument based on a lack of supporting authority. Opp. at 2. But Rule 8 requires that for inferences to be resolved in Plaintiffs' favor, they must allege sufficient facts to nudge those inferences from merely possible to plausible. Plaintiffs have not done so.

In an attempt to compensate for the absence of any factual allegation, Plaintiffs point to Disney's large YouTube footprint, the existence of allegedly "Improperly Managed Channels," and an alleged financial incentive to designate videos as NMFK. Opp. at 3–4. But volume, motive, and generalized allegations about channel management are not substitutes for well-pleaded facts. Plaintiffs state that designation data is maintained "behind the scenes" and that they lack access to historical records. Opp. at 4. That concession does not excuse their pleading failure; it underscores it. Plaintiffs are asking the Court to allow them to proceed to discovery based on nothing more than speculation that they were harmed.

Plaintiffs' conclusory allegations of a "widespread misdesignation practice" in which Disney "regularly misdesignates" its videos are contradicted by their own factual allegations. Opp. at 3. Plaintiffs acknowledge that, out of tens of thousands

[2] Paragraph references (¶) herein refer to paragraphs of the Complaint (D.E. 55).

of Disney videos on YouTube, approximately 300 may have been misdesignated. Opp. at 4. That tiny fraction cannot plausibly support the inference that any given Plaintiff *must* have encountered a misdesignated video. Rule 8 does not permit Plaintiffs to convert a statistical possibility into a pleaded fact.

Nor is this a case where discovery might reveal the missing facts. Only Plaintiffs know which videos they watched. Disney has no access to that information, and because Plaintiffs argue that they watched those videos without logging into an account, neither does YouTube. Opp. at 5. Accordingly, the cases Plaintiffs cite for the proposition that pleading standards are relaxed when the relevant facts are "known only to the defendant" are inapposite here. Opp. at 5–6. Plaintiffs' reliance on *Committee on Children's Television v. General Foods Corporation*, 35 Cal. 3d 197, 218–19 (1983), is misplaced. That case concerned children's ability to identify, of all the advertisements they saw, "which [ones] led them to desire a product." *Id.* at 219. This case does not endorse a general relaxed pleading standard applicable to minor children and, in any event, is a state law case under a notice pleading regime that predates *Twombly* and *Iqbal* by 25 years.

Finally, Plaintiffs mischaracterize Disney's argument. Disney has never asserted that the 300 videos YouTube redesignated in June 2020 represent the entirety of videos Plaintiffs watched dating back to 2019, nor that Plaintiffs must recall their complete viewing histories. Disney seeks dismissal based upon Plaintiffs' inability to identify even one misdesignated video they allegedly viewed. This failure demonstrates the inference Plaintiffs seek—that watching any Disney content on certain channels necessarily means watching a misdesignated video—is not plausible. These allegations—lifted directly from the DOJ's complaint—could have been made without asking Plaintiffs a single question about what they watched. Such allegations are not plausible and should be rejected.

///

///

### B. Plaintiffs' Group-Pleading Is Not Permissible

The Opposition makes clear that the same misinterpretation of the COPPA Rule's definition of collection led Plaintiffs to impermissibly group plead conduct as to both YouTube and Disney. Although group pleading may be "permissible where limited to defendants who are similarly situated with respect to the allegations," Opp. at 8 (citing *Parity Networks, LLC v. Moxa Inc.*, 2020 WL 6064636, at *3 (C.D. Cal. Sept. 11, 2020)), the principle has no application here. That is because Plaintiffs expressly concede that "they are not alleging that Disney received personal information directly from the children," and instead rely upon such collection by YouTube. *Id.* Thus, Disney and YouTube are not similarly situated in any respect relevant to COPPA: Plaintiffs allege no shared data practices, no coordination, and no facts suggesting Disney ever collected or accessed the personal information at issue.

The paragraphs Plaintiffs cite only underscore the problem. Some are wholly conclusory, *e.g.*, ¶¶ 167, 186 ("Defendants have unlawfully exploited the personal information of Plaintiffs and Class Members…"), and therefore entitled to no weight. Others illustrate the impropriety of group pleading here, such as the allegation that "Defendants share user data with third-party advertisers, brands and platforms." ¶ 84. That allegation cannot plausibly apply to Disney, which Plaintiffs admit had no direct access to any individualized data. Allowing Plaintiffs to proceed on such undifferentiated allegations would erase the distinctions that COPPA's statutory framework requires.

The Court should reject Plaintiffs' reliance upon group-pleading.

## III. NATIONWIDE CLASS PLAINTIFFS MUST MAKE A CHOICE OF LAW AT THE PLEADING STAGE

Plaintiffs do not meaningfully refute the authority cited by Disney that Plaintiffs are required to plead choice of law here and instead argue dismissal on this basis would be "premature, extreme, and [unwarranted]." Opp. at 8. The cases

Plaintiffs cite do not support this premise.

*Plotts v. American Honda Motor Co.*, 2023 WL 4843342 (C.D. Cal. June 9, 2023), did not address whether plaintiffs must identify the governing state law at the pleading stage. Instead, *Plotts* addressed the next question—whether, once the applicable law is identified, the class may include only residents of that state. *Id.* at *13. The fact that the court reached that question presupposes that it had already determined the applicable law at the pleading stage, as required. And Plaintiffs' assertion that there is "no meaningful conflict between California and other state laws" is untenable. Opp. at 8. Disney has already identified material differences between California's and other states' common-law doctrines, including in trespass to chattels and unjust enrichment. *See* Mot. at 10–11.

Plaintiffs' reference to *eDrop-Off Chicago LLC v. Burke*, 2013 WL 12131186 (C.D. Cal. Aug. 9, 2013), fares no better. That case dealt with an anti-SLAPP motion to strike non-class claims. *Id.* at *1. The plaintiff argued affirmatively that Illinois law should apply, but the Court held that it would be "inclined to apply California law" because the plaintiffs, as the party seeking to avoid California's anti-SLAPP statute, had "not satisfied their burden, as the proponent of [Illinois] law," to demonstrate that such law applied. *Id.* at *11. Here, Disney does not seek to substantively avail itself of another state's law as in *eDrop-Off*, and the cases Disney cites make clear that it is Plaintiffs'—not Disney's—burden to select the applicable law in the class context. And even in *eDrop-Off*, the Court engaged in the relevant "'governmental interest' approach to conflicts issues," and did not assume California law applied, where the need arose. *Id.*, at *7–8.

In short, Plaintiffs offer no basis to depart from the consistent rule applied across all districts in California: plaintiffs asserting common law claims on behalf of a nationwide class must identify the specific state law governing those claims. Their failure to do so requires dismissal.

///

## IV. PLAINTIFFS DO NOT PLEAD ACTIONABLE INTRUSION UPON SECLUSION OR PRIVACY CLAIMS

***No Intentional Intrusion.*** Plaintiffs' Opposition confirms the pleading deficiencies raised by Disney's Motion. Plaintiffs do not dispute that they do not allege that Disney engaged in an intentional intrusion. Plaintiffs argue only that *enabling* the collection of a child's personal information constitutes an intrusion. Opp. at 10. But that argument relies on Plaintiffs' misinterpretation of COPPA's implementing regulations, *see supra* Section I, and is precisely the type of secondary liability theory that fails as a matter of law.

Even if Plaintiffs were right about COPPA, the allegations they cite, ¶¶ 132-152, do not allege intentional conduct. The most Plaintiffs allege is that "Disney knowingly made false designations," ¶ 136, which is not enough. A complaint that "only alleges that [the defendant] had 'acted knowingly'" fails "to allege that [the defendant] had acted intentionally." *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d. 623, 646 (N.D. Cal. 2024).

But even if knowing conduct were sufficient, Plaintiffs only allege and argue (in conclusory fashion) that Disney knowingly made the video designations that ultimately resulted in YouTube collecting certain data. Opp. at 11. Designating a video is fundamentally different from a purposeful effort to collect children's data specifically. Plaintiffs allege that Disney only makes MFK and NMFK designations to satisfy YouTube's COPPA obligations, *see, e.g.*, ¶¶102-124, which do not apply to Disney, *see supra* Section I. And MFK designations disable certain functionality for all users, whether child, teen, or adult. ¶ 119. Said differently, designating a video as MFK or NMFK does nothing to encourage children to view such content so it is not a plausible inference that Disney's NMFK markings constitute specific intent to collect and use children's data. Indeed, that inference is at odds with the Complaint, which specifically recognizes that Disney does not directly receive that individualized data, but at most receives aggregated analytics of its videos'

performance. ¶ 81.

The allegations here thus stand in stark contrast to cases like *In re TikTok, Inc., Minor Priv. Litig.*, where the defendants specifically encouraged children to access their full-featured platform so that they could collect children's data and track them. 2025 WL 3628598, at *15 (C.D. Cal. Nov. 5, 2025). Plaintiffs here have not alleged that Disney intentionally intruded upon Plaintiffs' privacy.

***No Reasonable Expectation of Privacy.*** Plaintiffs' reliance upon this Court's decision in *TikTok* is unpersuasive. *TikTok* concerned an entire "online platform[] directed at children," justifying departure from the general rule that "the internet is not a place where users have a reasonable expectation of privacy." Opp. at 12 (quoting *TikTok*, 2025 WL 3628598, at *14). That distinction was meaningful because TikTok allegedly "purposefully induced children under the age of 13 to use the full access platform and collected and used their data despite knowing they were under 13." *TikTok*, 2025 WL 3628598, at *15. Here, in contrast, there is no allegation that Disney operated the platform or purposefully funneled children to its videos on YouTube's third-party platform to collect their data. The only conduct that the Complaint alleges as to Disney is the supposedly incorrect designations of uploaded videos. Thus, the ordinary rule that Plaintiffs had no reasonable expectation of privacy should apply.

***No Highly Offensive Conduct.*** Plaintiffs also rely on *TikTok* to argue that Disney's conduct was highly offensive. But, again, that case is different. There, as well as in the cases on which the Court relied,[3] the defendants collected the plaintiffs' personal information directly, specifically tracked individual users in real time, shared information with other third-party companies, and affirmatively targeted children. *See, e.g.*, *A.B.*, 737 F. Supp. 3d at 885; *Hubbard*, 2025 WL

[3] *See A.B. by and through Turner v. Google LLC*, 737 F. Supp. 3d 869 (N.D. Cal. 2024); *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022 (N.D. Cal. 2019); *Hubbard*, 2025 WL 82211, at *1.

82211, at *4; *McDonald*, 385 F. Supp. 3d at 1035. Plaintiffs make none of those allegations against Disney. Indeed, Plaintiffs do not allege that Disney had access to Plaintiffs' individualized data at all; at most, their allegations address aggregated and de-identified data available as analytics. That is not "highly offensive."

## V. PLAINTIFFS' TRESPASS TO CHATTELS CLAIM FAILS

In response to Disney's three independent arguments for dismissal[4] of the trespass to chattels claim, Plaintiffs rest on a single case, *hiQ Labs, Inc. v. LinkedIn Corporation*, 31 F.4th 1180 (9th Cir. 2022), to argue that such claims may "be available in the data context, including data scraping and other automated uses of data." Opp. at 15. But *hiQ* is specific to data scraping scenarios, which have nothing to do with this case. The Ninth Circuit recognized that automated scraping can meaningfully burden a victim's web servers, and that such interference may support a trespass-to-chattels claim. *hiQ*, 31 F.4th at 1201. Nothing in *hiQ* suggests that the mere fact of data collection—without any impairment to a device or system—is itself a trespass.

*hiQ* is therefore consistent with *Intel Corporation v. Hamidi*, 30 Cal. 4th 1342 (2003), which remains the controlling authority under California law. *Hamidi* holds that a digital trespass requires allegations of actual or threatened interference with the functionality of a computer or device. *Id.* at 1364. Plaintiffs do not—and cannot—allege any such interference here. The trespass-to-chattels claim should therefore be dismissed.

## VI. PLAINTIFFS CANNOT STATE A NEGLIGENCE CLAIM

### A. Disney Owed No Actionable Duty of Care to Plaintiffs

Plaintiffs' negligence claims are based on a duty of care purportedly owed to them under COPPA arising from Disney's "enabling [of] the collection of information from children watching its videos." Opp. at 14. But because Disney is

---

[4] Plaintiffs ignore Disney's arguments under Pennsylvania law, again underscoring the need to plead applicable law for the common-law claims.

not an operator or the collector of data under COPPA, *see supra* Section I, Plaintiffs instead attempt to pivot to suggest that the duty is a more general one "to take reasonable steps to protect all sensitive information it obtains from individuals." *Id.*

No such general duty exists. The duty Plaintiffs invoke arises only in the context of a "special relationship" between entities that actually collect and possess consumers' personal data and the individuals whose data they hold. *See Accellion*, 713 F. Supp. 3d at 634. But Disney never collected or possessed Plaintiffs' individualized data; at most, it received aggregated analytics from YouTube that do not identify any user. ¶ 81.

Moreover, the duty recognized in the data-breach cases is a duty to safeguard data once collected—that is, to prevent unauthorized disclosure or access—not a duty to refrain from collecting data in the first instance.[5] *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019); *see also Accellion*, 713 F. Supp. 3d at 633. Again, *Disney* never controlled Plaintiffs' data, and even if it did, there is no allegation that *Disney* ever disclosed individualized data to any third party.[6]

Because Plaintiffs identify no duty that Disney owed them—under COPPA, common law, or any recognized "special relationship"—their negligence claim fails.

### B. Plaintiffs Do Not Respond to Disney's Causation and Harm Arguments

In response to Disney's arguments that Plaintiffs' allegations of harm are purely forward-looking and overly speculative to support a negligence claim, and

---

[5] To the extent Plaintiffs purport to rely on their conclusory assertion that YouTube and/or Disney released their data to third parties, there is no factual basis alleged, and it did not occur. *See* ¶¶ 17, 84, 185, 187, 232(e), 264-65, 267, 271, 286. The Court should give those allegations no weight.

[6] Again, to the extent Plaintiffs rely on group-pled allegations lumping Disney and YouTube together, the duty analysis here demonstrates why those allegations must be ignored. *See supra* Section II(B).

that Plaintiffs allege no link tying any disclosure of their data to third parties (which they do not plead) to the watching of Disney's videos, *see* Mot. at 17–18, Plaintiffs state only that they suffered "invasion of their privacy and the attendant collection of their private information."[7] Opp. at 14. But that response only begs the question of whether those things are harm—they are not. Harm is a "material or tangible detriment." *Harm*, Black's Law Dictionary (12th ed. 2024). And allegations of breach alone, as here, do not establish harm: "the weight of the authority . . . point[s] in the opposite direction: that 'the mere misappropriation of personal information does not establish compensable damages.'" *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 943 (N.D. Cal. 2023) (collecting cases).

The "personal information" allegedly collected here was Plaintiffs' YouTube browsing history, unique identifiers like IP addresses, and geographic location, if available. ¶ 65. Courts have consistently held that the collection of such data—without more—does not constitute a cognizable injury. *See, e.g.*, *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1180 n. 4 (N.D. Cal. 2025).

Thus, Plaintiffs have not pleaded the injury element necessary to sustain a negligence claim.

### C. Negligence *Per Se* Cannot Salvage the Claim Because Plaintiffs Allege No Predicate Statutory Violation

Finally, Plaintiffs concede that their negligence *per se* claim is not a standalone cause of action,[8] but nevertheless argue that violations of statutes lacking private rights of action may, in some circumstances, support an ordinary negligence

---

[7] Plaintiffs provide a similar, but not identical, explanation of harm in response to Disney's arguments on Plaintiffs' UCL claims. *See* Opp. at 23. Because both arguments appear to reference the same harm, Disney addresses them together as a more complete explanation of the harm they allege they suffered.

[8] The negligence *per se* claim should therefore be dismissed without leave to amend. *See Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1047 (N.D. Cal. 2025).

claim—even while acknowledging that Disney cited authority "going the other way." Opp. at 15; *see also* Mot. at 19. But even assuming Plaintiffs are right, the rule does not help them, for Disney could not have violated COPPA. *See supra* Section I.

Plaintiffs also do not address Disney's separate argument that COPPA preempts their negligence theory because COPPA requires actual knowledge—a heightened scienter standard—and therefore cannot serve as the predicate for a negligence claim. *See* Mot. at 20. Their silence concedes the point.

Plaintiffs next assert that Disney violated "multiple other statutes" Opp. at 15—presumably the UCL, ECPA, and WESCA. But each of those statutes contains its own private right of action. Even under Plaintiffs' own theory, negligence *per se* applies only where the predicate statute lacks a private right of action; these statutes therefore cannot serve as predicates. And if Plaintiffs intend to rely on some other, unidentified statute, that too fails: "courts consistently reject negligence *per se* claims that fail to specify the specific statute, ordinance, or regulation in support of their claim." *Santa Clarita Valley Water Agency v. Whittaker Corp.*, 2021 WL 6104175, at *2 (C.D. Cal. Dec. 3, 2021) (internal quotation marks omitted).

## VII. PLAINTIFFS' ALLEGED LINK BETWEEN LOSS AND BENEFIT IS TOO ATTENUATED FOR UNJUST ENRICHMENT

Plaintiffs' unjust enrichment claim relies on a long chain of events leading to the conferral of a benefit on Disney at their expense:

- Plaintiffs watched videos that they allege Disney misdesignated as NMFK;
- YouTube collected data from Plaintiffs when they watched those videos;
- YouTube included that data in its algorithm that informs targeted advertising;
- Targeted advertisements generate revenue for YouTube;
- Separately, as a YouTube partner, Disney receives payments from YouTube based upon views of videos that Disney uploads to YouTube; and
- Plaintiffs presume that at least some of the aggregate payments Disney

receives are attributable to views of allegedly misdesignated videos by children under 13. Opp. at 16–17.

This is not a cognizable unjust enrichment theory.

Plaintiffs reliance on *Hartford Casualty Insurance Company v. J.R. Marketing, LLC*, 61 Cal. 4th 988 (2015), is misplaced. *Hartford* concerned the recoverability of specific payments made by an insurer to an insured's counsel under a policy. *Id.* at 992. Those payments advanced costs of defense, but were later recoverable under the insured's policy to the extent they were "unreasonable and unnecessary." *Id.* at 998. In other words, *Hartford* addressed recovery of specific funds the plaintiff paid the defendant. Here, Plaintiffs did not pay Disney or YouTube anything. Instead, they allegedly provided data to YouTube; YouTube allegedly used that data in its own advertising transactions; and YouTube allegedly separately paid Disney partner revenue unrelated to any particular user. That is several steps too far removed from any benefit allegedly conveyed to Disney.

Because Plaintiffs cannot "identify a right in the disputed assets that is both recognized, and accorded priority over the interest of the defendant," their claim fails. *City of Oakland v. Oakland Raiders*, 83 Cal. App. 5th 458, 479 (2022) (quoting Restatement (Third) of Restitution and Unjust Enrichment § 48 (Am. L. Inst. 2011)). Where, as here, the plaintiff seeks profits derived from third-party transactions, the unjust-enrichment standard is "highly restrictive" and cannot be satisfied by alleging merely that the defendant received a windfall or behaved unfairly. *Id.* Plaintiffs allege no facts that meet this standard.

Plaintiffs also fail to overcome *Sonner v. Premier Nutrition Corporation*, 971 F.3d 834 (9th Cir. 2020). They cite district-court decisions that sidestep *Sonner*, but *Sonner* is binding. It requires plaintiffs to show they lack an adequate remedy at law—not merely to say so. *Id.* at 844. Plaintiffs seek the same disgorgement of Disney's revenues under their legal claims, *see* ¶¶ 254, 270, 278, 292, 307, 333, as they seek through unjust enrichment. *Sonner* rejected an unjust enrichment claim

under the same circumstances.

Because (i) Plaintiffs' theory is too attenuated to support restitution and (ii) they have an adequate remedy at law, their unjust-enrichment claim must be dismissed.

## VIII. PLAINTIFFS' UCL CLAIM FAILS ON ITS FACE

### A. Plaintiffs Cannot Allege a UCL Claim Under the "Unlawful" Prong Without an Underlying Statutory Violation

Plaintiffs admit that, to state a claim under the unlawful prong of the UCL, they must allege a predicate statutory violation. Opp. at 18-19. The Complaint refers solely to COPPA. ¶ 326. Yet Plaintiffs do not allege any violation of COPPA. *See supra* Section I. Plaintiffs therefore pivot to vague references to unspecified statutory and constitutional violations. But such references are insufficient: a plaintiff proceeding under the unlawful prong "must identify the particular statute that was violated and describe with reasonable particularity the facts supporting that violation." *Kramer v. Fed. Home Loan Mortg. Corp.*, 2012 WL 13015002, at *4 (C.D. Cal. Aug. 6, 2012). Plaintiffs identify no other statute, and thus fail to state a claim.

Even if Plaintiffs' allegations did refer to the other statutory claims they assert, UCL claims "stand or fall depending on the fate of the antecedent substantive causes of action." *Hahn v. Select Portfolio Serv., Inc.*, 424 F. Supp. 3d 614, 634 (N.D. Cal. 2020). Plaintiffs fail to state a claim for violation of any statute, so they cannot assert a UCL claim on the basis of those violations.

### B. Plaintiffs State No Claim Under the "Fraudulent" Prong Because Disney Made No Representations to Plaintiffs

Disney's purported misdesignations alone are not fraud, and so cannot state a claim under the "fraudulent" prong. Plaintiffs show the video designation process in the Complaint, ¶¶ 111-12, which is a purely back-end tag that adjusts settings and features for each uploaded video or each YouTube channel. And, as Plaintiffs

admit, individual videos properly represent to the viewing public whether they are designated MFK or NMFK, because the designation determines which features are enabled. ¶ 119. The cases Plaintiffs cite all involve a defendant's affirmative representations to the public through advertising. *In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009) (advertising regarding dangers of smoking); *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1240 (2009) (marketing of "premium" cell phone capabilities); *Comm. On Child.'s Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 204 (1983) (marketing on the healthfulness of sugared cereal). Those cases are inapposite: Plaintiffs do not allege that Disney affirmatively represented to viewers that it had marked videos as child-appropriate when it, in fact, marked them NMFK. Indeed, Disney made no representation at all about its video designations, and the "failure to disclose a fact one has no affirmative duty to disclose is [not] 'likely to deceive' anyone within the meaning of the UCL." *Albert v. Tyler Techs., Inc.*, 2025 WL 2020063, at *14 (C.D. Cal. June 23, 2025). Accordingly, Disney's video designations cannot support a "fraudulent" prong claim.

### C. The "Unfair" Prong Is Not a Proper Alternative to the Other Two Prongs, and Plaintiffs Meet None of Its Tests Regardless

Plaintiffs do not address Disney's core argument that claims under "the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive." *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1105 (N.D. Cal. 2017). Plaintiffs' statement that the UCL "makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law," Opp. at 20 (citing *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)), misses the point. A UCL plaintiff may theoretically state a claim by reference to acts that are not proscribed by any law (and thus not "unlawful") and make no affirmative misrepresentation (and thus not "fraudulent") but is still so fundamentally unfair that a remedy should be available. *Cel-Tech*, for instance,

considered a "two-tiered advertising rate structure" that "the Unfair Practices Act did not itself prohibit," but that the court found might be so unfair that it should be actionable under the UCL. 20 Cal. 4th at 180. Here, though, Plaintiffs do not refer to conduct that is untethered to any law. They assert a UCL claim based on the exact same conduct that they say was unlawful and fraudulent, which is exactly what the cases Disney cites prohibit. *See, e.g.*, *Hadley*, 243 F. Supp. 3d at 1105.

In any event, Plaintiffs do not satisfy any of the "unfair" prong tests.

***Public Policy Test.*** Plaintiffs refer to a California public policy "of protecting customer data," Opp. at 20, but cite only data breach cases. Plaintiffs' cases do not concern data collection, but the steps taken (or not taken) to safeguard sensitive data *after* it is collected. Here, Plaintiffs fail to allege that Disney disclosed Plaintiffs' data to third parties, but also that Disney ever had Plaintiffs' individualized data in the first place. Without a recognized public policy against Disney's conduct, Plaintiffs cannot satisfy the public policy test.

***Immoral Test.*** Plaintiffs' conclusory argument that misdesignating videos is immoral is insufficient, too. Opp. at 21. Courts reject conclusory pleadings that alleged conduct is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" that plaintiffs do not evaluate against more detailed benchmarks. *See, e.g.*, *Wright v. Ocwen Loan Servicing, LLC*, 2011 WL 13223956, at *17 (C.D. Cal. July 12, 2011). Plaintiffs' conclusory assertion should be dismissed on the same grounds.

***Balancing Test.*** Plaintiffs assert that "Disney must provide, to the extent any exist, arguments regarding the utility of its own conduct balanced against the harm to Plaintiffs." Opp. at 21 (citing *In re Social Media Adolescent Addiction*, 753 F. Supp. 3d 849, 899 (N.D. Cal. 2021)). But nowhere in *Social Media* does the court advance that rule. Rather, the case focused on California's public policy statement that "[b]usinesses that develop and provide online services, products, or features that children are likely to access should consider the best interests of children when

designing, developing, and providing that online service, product, or feature." 753 F. Supp. 3d at 900 (quoting Cal. Civ. Code § 1798.99.29). The complaint at issue there cited internal Meta documents recognizing that Instagram and Facebook had a "negative 'net effect'" on users, 753 F. Supp. 3d at 897–98, and thus held that plaintiffs' claims were "fairly characterized as tethered to legislative policy" even though the attendant statute was struck down as unconstitutional. *Id.* at 901.

Here, though, Plaintiffs allege no harm at all. They allege and argue, repeatedly, that because they did not consent to their data collection, they must have been harmed. This allegation is belied by the fact that their claim is predicated upon Plaintiffs' consumption and enjoyment of Disney's free-to-access content on YouTube, which Plaintiffs allegedly continued to consume. Thus, it is not difficult for this Court to conclude that such content provided greater utility than that harm—which is zero.[9]

## IX. PLAINTIFFS' ECPA AND WESCA[10] CLAIMS FAIL

### A. Plaintiffs Allege No Actionable Interception by Disney

As with COPPA, Plaintiffs impermissibly collapse the "collection" of information between YouTube and Disney under ECPA to avoid prohibitions against aiding and abetting claims. Opp. at 24. Their reliance on *India Price v. Carnival Corporation*, 712 F. Supp. 3d 1347 (S.D. Cal. 2024), is misplaced. *India Price* involved a defendant that orchestrated a "surveillance scheme" by employing third parties to collect detailed user data—including heatmaps, unique identifiers, and cross-site browsing histories—and made "active use" of those capabilities. *Id.* at 1355. That is worlds apart from this case. Plaintiffs allege no facts suggesting that Disney "procure[d] any other person to intercept" communications on its behalf,

---

[9] Disney addressed Plaintiffs' arguments on statutory standing and redressable injury above in the context of Plaintiffs' negligence claims and references that same discussion here. *See supra* Section VI.

[10] Plaintiffs admit that their ECPA and WESCA claims rise and fall together. Opp. at 26.

18 U.S.C. § 2511(1)(a), nor that Disney ever made "active use" of individualized data to track users. Indeed, Plaintiffs do not allege that Disney ever had access to individualized data.

The law is clear that secondary liability is not cognizable under ECPA. *See, e.g.*, *Herzer v. Redstone*, 2018 WL 5094933, at *7 (C.D. Cal. July 10, 2018); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1089 (N.D. Cal. 2015). Plaintiffs' theory—that Disney is liable because it "enabled" YouTube's collection—falls squarely within the category of secondary liability these cases foreclose. Because Plaintiffs allege no direct interception by Disney and no procurement of an interception, they fail to state an ECPA claim.

**B. Plaintiffs Do Not Allege "Contents" of Communications**

Plaintiffs insist that they allege that "Disney collects more than just 'clicks' and browsing information," but never substantiate that assertion. Opp. at 25. They point only to allegations that Disney, at most, can "benefit from and indirectly access . . . viewing history and other behavioral data" through "content management, audience analytics, and monetization tools" on YouTube. Opp. at 24; ¶¶ 81-82. But Plaintiffs never allege that these tools leverage anything more than click and browsing information, ¶¶ 81-84, because they don't. Nor do Plaintiffs allege what communications of *theirs* were allegedly intercepted, as required. *See, e.g.*, *Shah v. MyFitnessPal, Inc.*, 2026 WL 216334, at *7 (N.D. Cal. Jan. 27, 2026).

Courts routinely dismiss wiretapping claims on this basis. In *Shah*, the court dismissed an ECPA claim because "plaintiffs do not specifically allege that *their* communications were intercepted by any third parties." *Id.*, at *7. The same defect is present here. Plaintiffs do not allege that Disney intercepted anything, procured an interception, or had access to individualized communications at all.

More is needed to allege an ECPA violation. Plaintiffs' failure to allege the interception of any specific communication—or even the type of communication allegedly intercepted—requires dismissal.

**C. Plaintiffs Do Not Satisfy the "In Transit" Requirement**

Plaintiffs again rely solely on *India Price* to argue that YouTube collected communications "in transit," but the Opposition identifies no allegation supporting that conclusion. Plaintiffs state only that YouTube collects user information "when you use [its] services." Opp. at 25. But "at the time of use" is not the same as "during transmission," and *India Price* does not hold otherwise. Rather, *India Price* addressed allegations explaining how the defendant "implanted" a tool in Plaintiffs' browsers that "captured [Plaintiffs'] actions at hyper-frequent intervals, often just milliseconds apart," on other websites. *India Price*, 712 F. Supp. 3d at 1359–60. Those allegations plausibly described contemporaneous interception of communications while they were being transmitted.

Nothing comparable is alleged here. Plaintiffs identify no tool, no mechanism, and no conduct that plausibly constitutes interception "during transmission." Courts repeatedly hold that merely labeling collection as "contemporaneous" or "real-time," without factual allegations showing interception while data is in transit, is too conclusory to satisfy the strict contemporaneity requirement. *See, e.g.*, *Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472, at *9–10 (C.D. Cal. Nov. 27, 2023) (collecting cases). Plaintiffs provide no reason to depart from that principle.

**D. Plaintiffs Fail to Plead the Tort-Crime Exception**

Plaintiffs' response to Disney's one-party consent argument adds nothing of substance. They assert that "Disney had an 'independent prohibited purpose' beyond the act of interception itself," Opp. at 26, but never identify what that purpose supposedly was. Disney's moving papers already explained why neither the collection of analytics nor the alleged COPPA violations trigger the exception to the one-party consent rule. Mot. at 28–29. If Plaintiffs believe some other purpose applies, they do not say what it is, leaving Disney no meaningful opportunity to respond. Unsupported assertions cannot defeat a motion to dismiss, and the Court

should give this one no weight.

## X. PLAINTIFFS' REQUESTS FOR INJUNCTIVE RELIEF ARE MOOT

Plaintiffs' request that the Court defer ruling on injunctive relief ignores that mootness is a jurisdictional question, not a discretionary one. Where a government settlement already mandates the very conduct plaintiffs seek to enjoin, courts routinely dismiss duplicative injunctive relief claims at the pleading stage. Mot. at 29. Plaintiffs identify no injunctive relief that the DOJ settlement does not already require, nor do they contend that any provision of that settlement is inadequate.

Plaintiffs attempt to distinguish *In re BetterHelp, Inc.*, 2024 WL 4504527 (N.D. Cal. Oct. 15, 2024), on the ground that the plaintiffs there were "not alleging that they were still using the website." Opp. at 27. But even if that distinction mattered, Plaintiffs here do not allege that they continue to watch videos on Disney's channels either. Plaintiffs also dismiss *In re Pre-Filled Propane Tank Antitrust Litigation*, 893 F.3d 1047 (8th Cir. 2018) as an out-of-circuit case. But its reasoning—that duplicative requests for injunctive relief are moot where a government settlement has secured the same relief—is directly on point: when a government settlement has already secured the relevant conduct changes, private requests for duplicative injunctive relief are moot.

Plaintiffs' reference to YouTube's 2019 consent decree with the FTC is a non-sequitur. The settlement at issue here is the DOJ's settlement directed specifically at Disney's designation practices, and already provides the relief Plaintiffs seek. Plaintiffs are thus left only with speculation that Disney will someday violate a federal consent decree and that the government will fail to enforce it. Such conjecture cannot preserve a claim for injunctive relief.

Because the Court cannot award Plaintiffs anything beyond what the DOJ settlement already mandates, their claims for injunctive relief are moot and should be dismissed.

///

## CONCLUSION

Disney requests that the Court dismiss the Complaint without leave to amend.

DATED: May 29, 2026

KELLEY DRYE & WARREN LLP
Lauri A. Mazzuchetti (*pro hac vice*)
Whitney M. Smith (*pro hac vice*)
Rebecca B. Durrant (State Bar No. 350444)

By: /s/ *Rebecca B. Durrant*
Rebecca B. Durrant

Attorneys for Defendants The Walt Disney Company, Disney Worldwide Services, Inc., and Disney Entertainment Operations LLC

## L.R. 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants The Walt Disney Company, Disney Worldwide Services, Inc., and Disney Entertainment Operations LLC, certifies that this memorandum contains 6989 words and therefore complies with L.R. 11-6.1.

DATED: May 29, 2026

KELLEY DRYE & WARREN LLP
Rebecca B. Durrant (State Bar No. 350444)

By: /s/ *Rebecca B. Durrant*
Rebecca B. Durrant

*Attorneys for Defendants The Walt Disney Company, Disney Worldwide Services, Inc., and Disney Entertainment Operations LLC*

**CERTIFICATE OF SERVICE**

I certify that on May 29, 2026, I electronically filed the foregoing with the Clerk of Court using CM/ECF, which automatically serves all counsel of record for the parties who have appeared.

Dated: May 29, 2026 By: /s/ *Rebecca B. Durrant*
Rebecca B. Durrant