Anthony J Weibell (SBN 238850)
*aweibell@mayerbrown.com*
Nina He (SBN 346294)
*nhe@mayerbrown.com*
**MAYER BROWN LLP**
Two Palo Alto Square, Suite 300
Palo Alto, CA 94306
Telephone: (650) 331-2030

Sophia M. Mancall-Bitel (SBN 337002)
*smancall-bitel@mayerbrown.com*
Sarah A. Hsu (SBN 348402)
*shsu@mayerbrown.com*
**MAYER BROWN LLP**
333 S. Grand Ave., 47th Floor
Los Angeles, CA 90071
Telephone: (213) 229-9500

Edith Ramirez (SBN 165872)
*edith@eramirezlaw.com*
119 E. Union Street, Suite C
Pasadena, CA 91103
Telephone: (202) 322-2255

*Attorneys for Defendants*
*Google LLC and YouTube LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

In re Disney Worldwide Services COPPA Litigation

Case No.: 2:25-cv-08410-GW-RAO

**DEFENDANTS GOOGLE LLC AND YOUTUBE LLC'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT**

Judge: Hon. George H. Wu
Date: June 15, 2026
Time: 8:30 a.m.
Place: Courtroom 9D

Action Filed: October 16, 2025
Trial Date: None

# TABLE OF CONTENTS

**Page**


INTRODUCTION .......... 1
ARGUMENT .......... 1
I. PLAINTIFFS' CLAIMS FAIL BECAUSE THEIR CORE ALLEGATION AGAINST GOOGLE—THAT GOOGLE KNEW CERTAIN DISNEY VIDEOS WERE MIS-DESIGNATED—IS CONCLUSORY AND UNSUPPORTED. .......... 1
A. Google's Alleged Knowledge Is Essential to Plaintiffs' Claims. .......... 1
B. Plaintiffs Fail to Plausibly Plead Google's Actual Knowledge. .......... 4
II. THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS RELY ON IMPROPER "SHOTGUN PLEADINGS." .......... 5
III. PLAINTIFFS' CLAIMS FOR EQUITABLE RELIEF FAIL .......... 6
A. Plaintiffs Lack Article III Standing to Seek Injunctive Relief. .......... 6
B. Plaintiffs' Complaint Demonstrates They Have Adequate Remedies at Law. .......... 8
IV. PLAINTIFFS' INTRUSION UPON SECLUSION AND INVASION OF PRIVACY CLAIMS FAIL. .......... 9
V. PLAINTIFFS' TRESPASS TO CHATTEL CLAIM FAILS. .......... 10
VI. PLAINTIFFS' NEGLIGENCE CLAIMS FAIL. .......... 12
A. Plaintiffs' Negligence Claims Are Preempted by COPPA. .......... 12
B. Plaintiffs Fail to State a Claim for Negligence. .......... 13
C. Plaintiffs Fail to State a Claim for Negligence Per Se. .......... 14
VII. PLAINTIFFS' UCL CLAIM FAILS. .......... 14
A. Plaintiffs Lack UCL Standing. .......... 14
B. Plaintiffs Fail to Allege Any Unlawful, Unfair, or Fraudulent Conduct. .......... 15
VIII. PLAINTIFFS' ECPA CLAIM FAILS. .......... 17
IX. PLAINTIFFS' WESCA CLAIM FAILS. .......... 19
X. PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS. .......... 19
CONCLUSION .......... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.B. v. Google LLC*,
737 F. Supp. 3d 869 (N.D. Cal. 2024) ........ 10, 15

*In re Accellion, Inc. Data Breach Litigation*,
713 F. Supp. 3d 623 (N.D. Cal. 2024) ........ 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 1, 4, 8

*Astiana v. Ben & Jerry's Homemade, Inc.*,
2011 WL 2111796 (N.D. Cal. May 26, 2011) ........ 6

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ........ 19

*Attenello v. Aetna Life Ins. Co.*,
2025 WL 2661772 (C.D. Cal. Sept. 16, 2025) ........ 20

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ........ 17, 18

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) ........ 13

*Best Carpet Values, Inc. v. Google LLC*,
90 F.4th 962 (9th Cir. 2024) ........ 16

*Boyd v. SunButter, LLC*,
762 F. Supp. 3d 931 (C.D. Cal. 2025) ........ 16

*Brooks v. Thomson Reuters Corp.*,
2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) ........ 8

*Carlin v. Bank of Am.*,
2025 WL 1844217 (C.D. Cal. Mar. 27, 2025) ........ 11, 13, 16

*Church of Scientology of Calif. v. U.S.*,
506 U.S. 9 (1992) ........ 9

*Cooney v. Dwyer*,
2025 WL 1823957 (9th Cir. July 2, 2025) .......... 3

*Dandridge v. Select Portfolio Serv., Inc.*,
2023 U.S. Dist. LEXIS 35357 (C.D. Cal. Mar. 1, 2023) .......... 16

*Dasrath v. Cont'l Airlines, Inc.*,
2006 WL 372980 (D.N.J. Feb. 16, 2006) .......... 7

*Dickerson v. U.S. Steel Corp.*,
64 F.R.D. 351 (E.D. Pa. 1974) .......... 7

*Esparza v. Lenox Corp.*,
2023 WL 2541352 (N.D. Cal. Mar. 16, 2023) .......... 17, 18

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .......... 13

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 11, 15

*First Call Int'l, Inc. v. S&B Glob., Inc.*,
2024 WL 4404429 (C.D. Cal. July 5, 2024) .......... 4, 5, 18

*Fitzgerald v. GEM Funding, LLC*,
2022 WL 4537881 (N.D. Cal. Sept. 28, 2022) .......... 3

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 9, 16

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .......... 9

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) .......... 9

*hiQ Labs, Inc. v. LinkedIn Corp.*,
31 F.4th 1180 (9th Cir. 2022) .......... 12

*Holly v. Alta Newport Hosp., Inc.*,
612 F. Supp. 3d 1017 (C.D. Cal. 2020) .......... 14

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024) .......... 10, 15

*Hubbard v. Google LLC*,
2025 WL 82211 (N.D. Cal. Jan. 13, 2025) ..... 9

*Hubbard v. Google LLC*,
508 F. Supp. 3d 623 (N.D. Cal. 2020) ..... 3, 15, 19

*India Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 (S.D. Cal. 2024) ..... 17, 18

*Intel Corp. v. Hamidi*,
30 Cal. 4th 1342 (2003) ..... 11, 12

*Joaquin v. Geico Gen. Ins. Co.*,
2008 WL 53150 (N.D. Cal. Jan. 2, 2008) ..... 7

*Jones v. Google, LLC*,
73 F.4th 636 (9th Cir. 2023) ..... 12, 13

*Klaehn v. Cali Bamboo LLC*,
2022 WL 1830685 (9th Cir. June 3, 2022) ..... 20

*Konop v. Haw. Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ..... 18

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) ..... 20

*Kurtz v. Kimberly-Clark Corp.*,
321 F.R.D. 482 (E.D.N.Y. 2017) ..... 7

*Lair v. Bank of Am., N.A.*,
2024 WL 943945 (C.D. Cal. Jan. 26, 2024) ..... 8

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) ..... 19

*Lau v. Gen Digital Inc.*,
2023 WL 10553772 (N.D. Cal. Sept. 13, 2023) ..... 15

*Marinova v. Mazda Motor of Am., Inc.*,
2023 WL 11950647 (C.D. Cal. Oct. 31, 2023) ..... 8

*Maxcrest Ltd. v. U.S.*,
2016 WL 6599463 (N.D. Cal. Nov. 7, 2016) ..... 8

*McDonald v. Kiloo ApS*,
385 F. Supp. 3d 1022 (N.D. Cal. 2019) ... 10

*McVay v. DXP Enters., Inc.*,
645 F. Supp. 3d 971 (C.D. Cal. 2022) ... 12

*Meyer v. Portfolio Recovery Assocs., LLC*,
707 F.3d 1036 (9th Cir. 2012) ... 8

*Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*,
896 F.2d 1283 (11th Cir. 1990) ... 8

*NetChoice v. Brown*,
2025 WL 3267786 (D. Md. Nov. 24, 2025) ... 12

*Nichols v. Peacehealth Networks On Demand LLC*,
2026 WL 607763 (W.D. Wash. Mar. 4, 2026) ... 19

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016) ... 10

*Norcia v. Samsung Telecomms. Am., LLC*,
845 F.3d 1279 (9th Cir. 2017) ... 12

*Parity Networks, LLC v. Moxa Inc.*,
2020 WL 6064636 (C.D. Cal. Sept. 11, 2020) ... 5

*Pratt v. Whole Foods Mkt. Cal, Inc.*,
2014 WL 1324288 (N.D. Cal. Mar. 31, 2014) ... 7

*In re Pre-Filled Propane Tank Antitrust Litig.*,
893 F.3d 1047 (8th Cir. 2018) ... 7

*Roe v. Amgen Inc.*,
2024 WL 2873482 (C.D. Cal. June 5, 2024) ... 15

*Saavedra v. Everi Payments, Inc.*,
2022 WL 17886025 (C.D. Cal. Apr. 11, 2022) ... 16

*Shulman v. Kaplan*,
58 F.4th 404 (9th Cir. 2023) ... 6

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ... 8

*Stasi v. Inmediata Health Grp. Corp.*,
501 F. Supp. 3d 898 (S.D. Cal. 2020) ... 13

*Strehl v. Guitar Center, Inc.*,
2024 WL 2790373 (C.D. Cal. May 29, 2024) ... 19

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) ... 19

*In re TikTok Inc. Minor Priv. Litig.*,
2025 WL 3628598 (C.D. Cal. Nov. 5, 2025) ... 10, 14

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) ... 3

*Turner v. Apple, Inc.*,
2022 WL 445755 (N.D. Cal. Feb. 14, 2022) ... 8

*Walsh v. Nev. Dep't of Hum. Res.*,
471 F.3d 1033 (9th Cir. 2006) ... 11, 13, 16

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) ... 17, 18

*Zeiger v. WellPet LLC*,
526 F. Supp. 3d 652 (N.D. Cal. 2021) ... 9

**Statutes**

15 U.S.C. § 6502 ... 2, 12, 13

18 U.S.C. § 2511 ... 17, 18

**Other Authorities**

78 Fed. Reg. 3972, 3978 (Jan. 17, 2013) ... 4

Fed. R. Civ. P. 8 ... 5

Fed. R. Civ. P. 9(b) ... 16

Fed. R. Civ. P. 11 ... 20

## INTRODUCTION

Nothing in Plaintiffs' Opposition to the Motion to Dismiss by Defendants Google LLC and YouTube LLC (collectively, "Google") saves Plaintiffs' claims against Google. Plaintiffs have no basis under *Iqbal* and *Twombly* to include Google as a defendant in this lawsuit. Although they argue that Google's lack of knowledge of mis-designated Disney videos is a "red herring," in fact, all claims against Google hang on the unsupported conclusory allegation that "YouTube was aware of Disney's noncompliance with the MFK ["Made for Kids"] Policy but failed to take adequate measures to correct it." Compl. ¶ 9. But this conclusory assertion fails the *Iqbal*/*Twombly* standard because it is contradicted by the actual facts alleged in the Complaint, which show that Google *fixed* the alleged problem of mis-designated Disney videos.

Plaintiffs' Opposition further fails to resolve their improper use of "group pleading" to lump the conduct of Google and Disney together as though these two distinct defendants were a single actor; fails to show they can satisfy the requirements to obtain injunctive relief in light of the federal injunctions already in place; and fails to identify the facts needed to support the missing elements of their claims against Google. Plaintiffs' claims against Google should be dismissed in their entirety with prejudice.

## ARGUMENT

### I. PLAINTIFFS' CLAIMS FAIL BECAUSE THEIR CORE ALLEGATION AGAINST GOOGLE—THAT GOOGLE KNEW CERTAIN DISNEY VIDEOS WERE MIS-DESIGNATED—IS CONCLUSORY AND UNSUPPORTED.

Rather than being "a red herring," the theory that Google *actually knew* that certain Disney videos were mis-designated as "Not Made for Kids" (NMFK) but failed to treat them as such is the *only* viable theory of wrongdoing alleged against Google in the Complaint. Because this theory is wholly unsupported and contradicted by the facts alleged in the Complaint, the claims against Google should be dismissed.

#### A. Google's Alleged Knowledge Is Essential to Plaintiffs' Claims.

Plaintiffs brought Google into this lawsuit solely on the theory that "YouTube *was*

*aware* of Disney's noncompliance with the MFK Policy but failed to take adequate measures to correct it," in violation of the Children's Online Privacy Protection Act ("COPPA"). Compl. ¶ 9 (emphasis added); *see also id.* ¶¶ 130–31 (conclusory allegations of Google's awareness and knowledge). This theory is the predicate for all claims against Google. *See* Compl. ¶¶ 249, 266 (intrusion upon seclusion and privacy: Google "intentionally intruded" upon Plaintiffs' privacy); ¶ 276 (trespass to chattels: Google "specifically intended" to collect information from children); ¶¶ 282, 285, 295 (negligence: Defendants "negligently, recklessly, and/or knowingly fail[ed]" to appropriately mark or correct child-directed videos as MFK); ¶¶ 310, 315 (unjust enrichment: Google "knew" collection of children's information conferred a benefit, "including the ability to deploy targeted advertising to minor children"); ¶ 329 (UCL: Google's violations were "willful" and "deceptive"); ¶¶ 344–45, 348 (ECPA: Google intercepted Plaintiffs' information "for the purpose of" committing a criminal or tortious act in violation of COPPA); ¶¶ 353, 360–63 (WESCA: Google intercepted Plaintiffs' information and "intentional[ly]" disclosed and used it in violation of COPPA).

While Plaintiffs explicitly rely on COPPA, they argue they need not show "actual knowledge" to make their case that Google violated COPPA. They are wrong. Critically, Plaintiffs *correctly acknowledge in their Complaint* that YouTube is a "general-audience platform" and that, consequently, "actual knowledge" is a required element: "COPPA applies not only to websites and apps that are directed at children, but also to general-audience platforms—like YouTube—when they have actual knowledge that child-directed content is being hosted." Compl. ¶ 97.

Plaintiffs' Opposition attempts to escape this admitted truth through confusion, arguing that YouTube is a "'general audience platform' directed at children." Opp. at 15. But that is a contradiction in terms. COPPA explicitly *distinguishes between* general audience sites and sites "directed at children." *See* 15 U.S.C. § 6502(a)(1).

Moreover, Plaintiffs' argument conflates the YouTube *platform* with content *creators* who post child-directed videos to their YouTube channels. The FTC, COPPA's

primary enforcer, has made clear that "YouTube as a general audience platform is not directly liable under COPPA for the content of videos uploaded by others, unless it has *actual knowledge* that the content is child-directed." FTC, *Prepared Remarks of Chairman Joseph Simons, YouTube Settlement Press Conference*, at 1 (Sept. 4, 2019), available at https://www.ftc.gov/system/files/documents/public_statements/1543118/ simons_remarks_youtube_settlement_press_conference.pdf (emphasis in original).[1] The FTC thus required Google to implement a system for content creators to identify their "Made for Kids" content, which Plaintiffs admit Google did. *Id.*; *see* Hsu Ex. A. Any attempt by Plaintiffs to rely on a showing of anything less than "actual knowledge"—whether negligence, recklessness, or another lower standard—is expressly preempted by COPPA, as further discussed in Section VI.A below.

The cases Plaintiffs cite in their Opposition say nothing to the contrary. *Hubbard* confirms that COPPA imposes obligations on Google only if it has "*actual knowledg*e that [it] [is] collecting personal information from users of a child-directed [YouTube channel or video]." *See Hubbard v. Google LLC*, 508 F. Supp. 3d 623, 626 (N.D. Cal. 2020). And *Tobacco II* is a tobacco case that has nothing to do with COPPA or collecting data from children on the Internet. *See generally In re Tobacco II Cases*, 46 Cal. 4th 298, 311–12 (2009) (allegations of fraudulent and deceptive statements by tobacco industry).

In short, Plaintiffs cannot escape the requirement that they must allege facts showing that Google both had actual knowledge that Disney videos were mis-designated and failed to act on that knowledge.

---

[1] As explained in Google's Request for Judicial Notice in Support of the Motion to Dismiss Plaintiffs' Consolidated Complaint, the Court may take judicial notice of publicly available information on a website maintained by a government entity as well as court filings and other matters of public record. *See* Dkt. No. 62 at 3 (citing *Cooney v. Dwyer*, 2025 WL 1823957, at *1 n.1 (9th Cir. July 2, 2025) (judicial notice of "relevant court records and government websites"); *Fitzgerald v. GEM Funding, LLC*, 2022 WL 4537881, at *6 (N.D. Cal. Sept. 28, 2022) (judicial notice of FTC complaint and order)).

**B. Plaintiffs Fail to Plausibly Plead Google's Actual Knowledge.**

Plaintiffs' Opposition fails to identify any alleged facts that show "actual knowledge."

*First*, Plaintiffs incorrectly claim that "the FTC has made it clear that YouTube had actual knowledge that it gathers information on child-directed content on its platform." Opp. at 15. They cite a *2019* FTC statement made *prior* to the implementation of changes required by the 2019 FTC Order and ignore that the FTC alleged no misconduct by Google in connection with its enforcement action against Disney.

*Next*, Plaintiffs argue there is actual knowledge when: "(1) A child-directed content provider (who will be strictly liable for any collection) directly communicates the child-directed nature of its content to the other online service; or (2) a representative of the online service recognizes the child-directed nature of the content." *See* Opp. at 15–16 (quoting Children's Online Privacy Protection Rule, 78 Fed. Reg. 3972, 3978 (Jan. 17, 2013)). But Plaintiffs' own allegations demonstrate that neither scenario applies here. The first scenario does not apply because the Complaint alleges *Disney* mis-designated its videos and failed to "communicate the child-directed nature" of the videos. The second scenario does not apply because the Complaint acknowledges that Google corrected the mis-designation when its system "recognize[d]" the child-directed nature of videos. Compl. ¶ 158 (alleging Google corrected *300* mis-designated videos). Contrary to Plaintiffs' argument, it does not matter if some of the same Disney videos were also posted to the YouTube Kids platform. While videos on the YouTube Kids platform are *appropriate* for children, they are not all "child-directed." *See* Mot. at 7–8; Hsu Decl. ¶ 11 (listing music videos by popular musicians, cooking content, and sports highlights).

*Finally*, Plaintiffs try to cast the issue as one that is "best left to the finder of fact, after the parties have had the opportunity to obtain discovery." Opp. at 11. But "a plaintiff armed with nothing more than conclusions" may "not unlock the doors of discovery." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Because Plaintiffs' claims center on the contention that Google had actual knowledge it was collecting Plaintiffs' data from mis-

designated videos, and because Plaintiffs have pleaded no plausible facts in support thereof, the claims against Google should be dismissed.

## II. THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS RELY ON IMPROPER "SHOTGUN PLEADINGS."

Plaintiffs admit their Complaint uses "shorthand references to 'Defendants,'" even though those Defendants played "different roles." Opp. at 4. These "shorthand references" violate Rule 8 because they "lump[] all defendants together," which "effectively neuter[s] the *Twombly/Iqbal* rule." Mot. at 8–9 (citing *First Call Int'l, Inc. v. S&B Glob., Inc.*, 2024 WL 4404429, at *5 (C.D. Cal. July 5, 2024) (Wu, J.)).

Plaintiffs' assertion that Disney and Google are "similarly situated" is not a proper excuse for improper group pleading, and it is contradicted by Plaintiffs' admission that these two opposing entities have very "different roles."[2] *See* Opp. at 4–6. By Plaintiffs' own admission, content creators like Disney "are required to label their content as MFK or NMFK," while Google is "supposed to rely on the MFK designation . . . in order for YouTube to comply with COPPA." Compl. ¶¶ 115, 110. This is not just a legal argument about whether "Google was entitled to rely" on Disney's designations (Opp. at 5), it is an intentional obfuscation because Plaintiffs know that neither Defendant individually committed every act required to trigger legal liability.

Plaintiffs' arguments only highlight the problem. They argue their Complaint demonstrates that "Defendants both misclassified videos." Opp. at 5 (citation omitted). Yet, Plaintiffs do not identify a single allegation that Google ever mis-designated any at-issue video after having actual knowledge of its content. Instead, they point to allegations that Google *could* review and change designations generally. And they allege that Google *fixed*, rather than mis-designated, videos that Disney allegedly mis-designated in the first instance.

---

[2] Because Plaintiffs have not even attempted to explain how Defendants are "similarly situated," their reliance on *Parity Networks, LLC v. Moxa Inc.*, 2020 WL 6064636 (C.D. Cal. Sept. 11, 2020), is misplaced. *See* Opp. at 6. For the same reason, their attempt to distinguish *First Call Int'l* fails. *See id.*

Similarly, Plaintiffs' argument that both "Defendants" operate Disney's YouTube channels contradicts the Complaint, which alleges that *Disney*, not Google, operates *Disney's* channels. *See* Mot. at 9 (identifying those allegations). Unlike the plaintiff in *Pena v. International Medical Devices, Inc.*, who "detailed each Defendants' role in the alleged joint enterprise," Plaintiffs here admit that Google and Disney played legally-different roles that precludes lumping them into a single joint enterprise. *See* Opp. at 5 (citing 2023 WL 5667538, at *2 (C.D. Cal. Jan. 10, 2023)). By conflating Google and Disney's roles, Plaintiffs improperly conflate the distinct legal requirements required to state their claims against Google and Disney respectively. As a result, Plaintiffs apply the wrong standard to Google. *See* Mot. at 9.

## III. PLAINTIFFS' CLAIMS FOR EQUITABLE RELIEF FAIL.

### A. Plaintiffs Lack Article III Standing to Seek Injunctive Relief.

Plaintiffs mischaracterize Google's standing argument. Google's position is not that there can never be any future alleged violation, but rather that the federal injunctions *already in place* bar the exact conduct Plaintiffs seek to enjoin: the collection of personal information from under-13 users for targeted advertising. *See* Mot. at 9–10. Plaintiffs thus do not have standing to seek injunctive relief because there is no "real and immediate threat of repeated injury." *Id.*

Plaintiffs incorrectly argue that "injunctive relief is a fact-dependent remedy inappropriate for dismissal without a developed factual record." Opp. at 6. Not so. Plaintiffs' argument confuses the scope of an injunction with *their standing to seek one*. Article III standing is a threshold constitutional requirement that is properly decided at the motion to dismiss stage. *See Shulman v. Kaplan*, 58 F.4th 404, 407 (9th Cir. 2023) ("The question of whether a party has standing to sue under Article III is a threshold issue that must be addressed before turning to the merits of a case.").

Most cases cited by Plaintiffs are inapposite because they did not involve pre-existing federal injunctions that covered the exact harm alleged by the plaintiffs. *See Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796, at *12–13 (N.D. Cal. May

26, 2011) (no order); *Pratt v. Whole Foods Mkt. Cal, Inc.*, 2014 WL 1324288, at *9 (N.D. Cal. Mar. 31, 2014) (same); *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 494 (E.D.N.Y. 2017) (consent order applied to non-party and did not bind defendants). They also cite an out-of-district case decided more than 50 years ago where the defendant made a different argument: that a class action was mooted by a consent decree. *See Dickerson v. U.S. Steel Corp.*, 64 F.R.D. 351, 360 (E.D. Pa. 1974). Plaintiffs' final authority fails them because it held that the plaintiffs did *not* have standing to pursue injunctive relief, noting that "the consent order makes it less likely" that the defendant would cause the same harm in the future. *Dasrath v. Cont'l Airlines, Inc.*, 2006 WL 372980, at *7 (D.N.J. Feb. 16, 2006).

By contrast, the cases cited in Google's Motion show that Plaintiffs lack standing to pursue equitable relief where a consent decree prohibits the defendant from engaging in the complained-of conduct—the precise situation here. *See In re Pre-Filled Propane Tank Antitrust Litig.*, 893 F.3d 1047, 1054 (8th Cir. 2018); *Joaquin v. Geico Gen. Ins. Co.*, 2008 WL 53150, at *4–5 (N.D. Cal. Jan. 2, 2008). Plaintiffs try to distinguish these cases on the basis that the plaintiffs there failed to plausibly allege the possibility of future violations, whereas Plaintiffs here allege that "Google was already subject to an FTC consent decree . . . yet the harm persists[.]" *See* Opp. at 7. But as demonstrated in the Motion, the Complaint fails to plausibly allege any misconduct by Google. To the contrary, if anything, it shows that Google *complied* with the 2019 FTC Order. *See* Mot. at 7. And Plaintiffs do not allege that any videos were mis-designated after the Disney Order. Plaintiffs also read *Archer v. Carnival Corporation & PLC* too narrowly by confining it to its specific facts about cruise passengers. 2020 WL 9264981, at *7 (C.D. Cal. Sept. 22, 2020). *Archer*'s dismissal of the plaintiffs' request for injunctive relief rests on the foundational principle that a plaintiff must demonstrate a real and immediate threat of injury, not merely past exposure to allegedly unlawful conduct. *Id.*

As in *Archer*, *In re Pre-Filled Propane*, and *Joaquin*, Plaintiffs have thus failed to plausibly allege any "real and immediate threat of repeated injury" and lack standing to pursue injunctive relief.

### B. Plaintiffs' Complaint Demonstrates They Have Adequate Remedies at Law.

Under *Sonner*, a plaintiff seeking equitable relief must plausibly allege that legal remedies are inadequate to redress their harms. Mot. at 10 (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020)). Plaintiffs do not identify any factual allegations supporting a plausible inference that legal damages are insufficient here. Instead, they ask the Court to ignore *Iqbal* and *Twombly* and accept their boilerplate conclusion that they lack an "adequate remedy at law." *See* Opp. at 8.

Though Plaintiffs cite a handful of cases from another District permitting such barebones allegations, courts in this District correctly interpret *Sonner* as requiring more. *See, e.g.*, *Marinova v. Mazda Motor of Am., Inc.*, 2023 WL 11950647, at *3 (C.D. Cal. Oct. 31, 2023) ("At the pleading stage, several courts, including this one, generally require plaintiffs seeking equitable relief to allege some facts suggesting that damages are insufficient to make them whole") (internal quotation marks omitted) (collecting cases); *see also, e.g.*, *Lair v. Bank of Am., N.A.*, 2024 WL 943945, at *6 (C.D. Cal. Jan. 26, 2024) (similar).

Nor do Plaintiffs' other authorities help them. In *Turner*, and unlike here, the plaintiffs made specific factual allegations demonstrating the inadequacy of legal relief. *See Turner v. Apple, Inc.*, 2022 WL 445755, at *3–4 (N.D. Cal. Feb. 14, 2022) (plaintiffs in device draining case alleged phones retained capacity to drain data despite software update). *Brooks*, cited by Plaintiffs for the proposition that legal damages can never remedy privacy harms or data misappropriation (Opp. at 8), itself relies only on cases where plaintiffs offered factual evidence demonstrating damages were insufficient to prevent risk of future harm. *See Brooks v. Thomson Reuters Corp.*, 2021 WL 3621837, at *11 (N.D. Cal. Aug. 16, 2021) (citing *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1044–45 (9th Cir. 2012) (fact evidence offered in support of preliminary injunction); *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1284 (11th Cir. 1990) (same); *Maxcrest Ltd. v. U.S.*, 2016 WL 6599463, at *3–4

(N.D. Cal. Nov. 7, 2016) (stay motion where plaintiff showed possibility of IRS obtaining its user account information); *Church of Scientology of Calif. v. U.S.*, 506 U.S. 9, 13 (1992) (similar)). Finally, *Zeiger* does not help Plaintiffs because they have not plausibly alleged any ongoing wrongdoing. *See* Opp. at 8 (citing *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 687 (N.D. Cal. 2021)); *see supra* Section III.A.

## IV. PLAINTIFFS' INTRUSION UPON SECLUSION AND INVASION OF PRIVACY CLAIMS FAIL.

Plaintiffs fail to show, as they must to state their privacy claims, that Google engaged in a "highly offensive" intrusion into their privacy. *See Hammerling v. Google LLC,* 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022); *Hernandez v. Hillsides, Inc*., 47 Cal. 4th 272, 285 (2009). Plaintiffs take issue with what some courts call required "plus factors" to establish offensiveness in digital privacy cases, but there is no dispute that Plaintiffs must plausibly plead facts showing that Google engaged in "an egregious breach of the social norms underlying the privacy right." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 37 (1994). They have not.

In trying to show offensiveness, Plaintiffs confirm that their privacy claims rest entirely on a predicate COPPA violation by arguing only that a COPPA violation represents a "highly offensive" intrusion sufficient to state a privacy claim. *See* Opp. at 9–10. But Plaintiffs cannot plead a COPPA violation by Google because they admit that Google corrected mis-designated videos when it became aware of them. Compl. ¶ 158 (alleging Google corrected *300* mis-designated videos). As discussed above, the FTC has made clear that Google is not "liable under COPPA for the content of videos uploaded by others, unless it has *actual knowledge* that the content is child-directed."[3] *See also Hubbard v. Google LLC*, 2025 WL 82211, at *5 (N.D. Cal. Jan. 13, 2025) (denying motion to dismiss amended privacy claim because "Plaintiffs' new allegations reach a step further to allow

---

[3] FTC, *Prepared Remarks of Chairman Joseph Simons, YouTube Settlement Press Conference*, at 1 (Sept. 4, 2019), available at https://www.ftc.gov/system/files/documents/public_statements/1543118/simons_remarks_youtube_settlement_press_conference.pdf (emphasis in original).

the Court to reasonably infer a knowing violation of law.") (emphasis in original); *supra* Section I.B; Mot. Section I.

Plaintiffs incorrectly rely on *In re TikTok Inc. Minor Priv. Litig.* to support their COPPA argument, failing to recognize that the FTC treated the TikTok platform very differently from YouTube. In *TikTok*, the FTC classified the entire TikTok platform as directed to kids. 2025 WL 3628598, at *2, 16 (C.D. Cal. Nov. 5, 2025). Plaintiffs offer no comparable allegations.

Plaintiffs' reliance on *A.B. v. Google* is also misplaced because there, the court found that the plaintiffs had made sufficient factual allegations showing the defendants had the "actual knowledge" required by COPPA. Those plaintiffs alleged that security researchers identified specific child-directed apps to Google and that Google's policy required it to review each of the child-directed apps at issue before they were published on the Google Play platform. *A.B. v. Google LLC*, 737 F. Supp. 3d 869, 875, 879–880 (N.D. Cal. 2024). Plaintiffs here can make no such allegations.

Plaintiffs' only other authority, *McDonald*, only hurts their case, as it holds that "the status of [] users as minors is not a main driver of the privacy analysis[.]" *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1036 (N.D. Cal. 2019) (citing *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 294–95 (3d Cir. 2016)). Even under their own authority, Plaintiffs' allegation that they are minors, without more, cannot transform routine commercial behavior into something highly offensive. *See id.*; Mot. at 11–12; *Hubbard v. Google LLC*, 2024 WL 3302066, at *8 (N.D. Cal. July 1, 2024).

## V. PLAINTIFFS' TRESPASS TO CHATTEL CLAIM FAILS.

Plaintiffs cannot save their trespass to chattel claim because they do not allege the requisite intent or any actionable injury. The Opposition misunderstands the intent requirement for a trespass to chattel claim and fails to identify injury to their computer systems or servers as required by controlling California law.

***No Intent.*** Plaintiffs concede that California law requires them to allege that Google "intentionally engage[d] in the conduct that results in interference" with their property. Opp. at 13 (citing *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1350–51 (2003)). But they do not identify a single factual allegation demonstrating that Google intended to interfere with their personal property rights. Instead, they argue generally (*see* Opp. at 13) that Google:

1. "[D]eliberately designed and implemented its MFK policy" (which demonstrates Google's intent not to collect Plaintiffs' data);
2. Intentionally designed its "data-collection architecture" (which demonstrates, at most, Google's general ability to collect data);
3. "[K]new content providers like Disney were misdesignating" videos, "yet failed to adequate [sic] police" them (which they fail to support with any facts, *see supra* Section I.B, and a failure to act is not "intent"); and thus
4. "[K]nowingly collected, processed, and monetized Plaintiffs' data" (which is a conclusion they cannot support based on the facts they allege).

Other than *Hamidi*, the only case Plaintiffs cite in support of their argument is *Facebook Tracking*. That case does not even discuss any element of a trespass to chattel claim. *See* Opp. at 14; *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 603–04 (9th Cir. 2020).

***No Actionable Injury.*** The California Supreme Court has held that trespass to chattel "does not encompass, and should not be extended to encompass, an electronic communication that neither damages the recipient computer system nor impairs its functioning." Mot. at 13 (citing *Hamidi*, 30 Cal. 4th at 1347). Plaintiffs do not make any attempt to identify any damage to their computer systems, and thus concede there is none. *See Walsh v. Nev. Dep't of Hum. Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (plaintiff who fails to address motion to dismiss argument "effectively abandon[s]" the claim); *Carlin v. Bank of Am.*, 2025 WL 1844217, at *5 (C.D. Cal. Mar. 27, 2025) (failure to respond waives arguments in response). Nor could they credibly allege such damage. Instead, they rely on a case about a law under which they do not sue (the Computer Fraud and Abuse Act) that

arises in a different context (business data scraping) where the Ninth Circuit sided with the defendant. *See* Opp. at 14 (citing *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1201 (9th Cir. 2022)). *HiQ* does not provide the Court a basis to contradict controlling California Supreme Court authority on a matter of California law. *See McVay v. DXP Enters., Inc.*, 645 F. Supp. 3d 971, 975 (C.D. Cal. 2022) ("'In discerning California law,' a federal court is 'bound by the decisions of the California Supreme Court'") (quoting *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1284 (9th Cir. 2017)).

Plaintiffs' failure to plead two elements of their trespass to chattel claim mandates dismissal. *See Hamidi*, 30 Cal. 4th at 1350–51.

## VI. PLAINTIFFS' NEGLIGENCE CLAIMS FAIL.

### A. Plaintiffs' Negligence Claims Are Preempted by COPPA.

Plaintiffs' negligence claims are "inconsistent with" COPPA because they would impose liability even without the "actual knowledge" required by COPPA. *See* Mot. at 14–15. COPPA expressly preempts such "inconsistent" claims. *See id.* (citing 15 U.S.C. § 6502(d)).

Plaintiffs' first two arguments against preemption are just arguments about the merits of their putative COPPA claim, which fail for the reasons explained above. *See supra* Section I.

Plaintiffs' only other response is a misreading of *Jones v. Google, LLC*, 73 F.4th 636, 642–43 (9th Cir. 2023). Opp. at 11. The parties agree that, under *Jones*, laws supplementing COPPA are not preempted as inconsistent. *See* Mot. at 14. But *Jones* also explains that "contradictory state law requirements" *are* preempted. *Jones*, 73 F.4th at 642. Any state-law claim (like negligence) that would replace COPPA's actual knowledge standard with a lesser standard of culpability imposes a "contradictory" requirement and is therefore preempted. Plaintiffs ignore this argument in Google's Motion. *Compare* Mot. at 14–15 *with* Opp. at 11. Relatedly, they have no response to *NetChoice v. Brown*, 2025 WL 3267786, at *21 (D. Md. Nov. 24, 2025), which held that COPPA preempted a state statute imposing liability based on a constructive knowledge standard—the same standard

Plaintiffs attempt to impose on Google. *See* Mot. at 14–15; Opp. at 11. Having failed to respond, Plaintiffs waive any argument in response. *Walsh*, 471 F.3d at 1037; *Carlin*, 2025 WL 1844217, at *5.

Because Plaintiffs' negligence claims contradict COPPA by imposing liability under a lesser standard, those claims are preempted and must be dismissed. *See* 15 U.S.C. § 6502(d); *Jones*, 73 F.4th at 641–43.

**B. Plaintiffs Fail to State a Claim for Negligence.**

Google's Motion explained that, even putting aside preemption, Plaintiffs fail to allege two necessary elements of their negligence claim: breach of an established duty and actual damages. Mot. at 15. Plaintiffs' Opposition misunderstands both arguments.

***No Breach.*** As Google explained, Plaintiffs fail to allege facts showing the breach of any duty of care and instead plead facts showing that Google *complied* with the law. *See* Mot. at 15. Plaintiffs respond only with arguments about legal duties they claim Google owes them. *See* Opp. at 11–12. They do not point to a single fact showing the breach of *any* such duty. *See id.* Notably, the first duty on which they rely ("duty on companies to take reasonable steps to protect all sensitive information it obtains from individuals") is irrelevant. *Id.* As all of Plaintiffs' cited cases demonstrate, that duty pertains to companies' protection of data they collect—not a duty to refrain from collecting data. *See In re Accellion, Inc. Data Breach Litigation*, 713 F. Supp. 3d 623, 629–30, 632–35 (N.D. Cal. 2024) (data breach); *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1029–1031, 1039 (N.D. Cal. 2019) (same); *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 905–06, 914–915 (S.D. Cal. 2020) (same); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 777, 799 (N.D. Cal. 2019).

***No Actual Damages.*** While Google's Motion addressed four putative damages theories from Plaintiffs, they respond as to only the "invasion of their privacy and the attendant collection of their private information." *Compare* Mot. at 16 *with* Opp. at 12. They thus waive any argument that any of the other theories sufficiently pleads actual damages. *Walsh*, 471 F.3d at 1037; *Carlin*, 2025 WL 1844217, at *5.

Plaintiffs claim that they need not plead "a specific type of economic damage." Opp. at 12. That is correct, but they do have to plead "actual damages" resulting from an "appreciable, nonspeculative, present injury." *See* Mot. at 15–16. The only injury they identify—the alleged invasion of their privacy—does not suffice. *See Holly v. Alta Newport Hosp., Inc.*, 612 F. Supp. 3d 1017, 1026 (C.D. Cal. 2020) ("improper disclosure of personal information," without more, is not actual damages). Plaintiffs again hang their hats on *In re TikTok*, but it does not help them. The Court's ruling there was based on its finding that those plaintiffs stated a COPPA violation based on specific factual allegations that are far from anything Plaintiffs here allege. *In re TikTok*, 2025 WL 3628598, at *11 ("adequately pleading an underlying COPPA violation" establishes injury to "substantive privacy rights"), *24 (based on COPPA finding, Plaintiffs adequately alleged injury for negligence claim); *supra* Section I; Mot. Section I.

### C. Plaintiffs Fail to State a Claim for Negligence Per Se.

Plaintiffs concede that negligence per se is not an independent cause of action but instead "an alternative negligence theory." *See* Opp. at 13. For this reason alone, the claim should be dismissed. *See* Mot. at 16. In any event, for the reasons explained above and in the Motion, Plaintiffs adequately plead neither any statutory violation nor the underlying elements of their putative negligence claim. *See supra* Section I, Mot. Section I, Mot. at 16 (no viable COPPA claim); *supra* Sections VII–IX, Mot. at 17–20 (no viable UCL, ECPA, WESCA claims); *supra* Sections VI.B, Mot. at 16 (failure to allege breach and damages).

## VII. PLAINTIFFS' UCL CLAIM FAILS.

### A. Plaintiffs Lack UCL Standing.

Plaintiffs concede that they must allege "economic injury, or loss of money or property, to assert UCL standing." Opp. at 17. The Motion identified two key flaws in Plaintiffs' theory of economic injury: their failure to allege (1) a market for their data, and (2) any attempt or intent to participate in that market.

Plaintiffs incorrectly argue that they need only allege the collection of their personal data to sufficiently allege economic loss under the UCL. *See* Opp. at 17–19. Their own

cited authority fails to support that argument. *A.B.* did not hold, as Plaintiffs argue, that minor plaintiffs are exempt from the requirement to plead an attempt to participate in a market for their data. *See* Opp. at 18. Without any mention of plaintiffs' minor status, the court simply chose not to impose that pleading requirement while acknowledging decisions "holding otherwise." *See A.B.*, 737 F. Supp. 3d at 881. And *Facebook Tracking* addresses only Article III standing, which is "substantially" broader than UCL standing. *See Facebook Tracking*, 956 F.3d at 600–01; Mot. at 17.

The proposition that minors need not allege market participation is also clearly contrary to *Hubbard*, 2024 WL 3302066, which postdated *A.B.* by approximately two weeks and similarly involved the alleged collection of data from minors via the YouTube platform. *Hubbard* is the better-reasoned and more on-point case, and the Court should follow it here. As *Hubbard* explains, "Plaintiffs must allege that they actually intended to sell the misappropriated information or must describe facts from which the Court can reasonably infer such intention[.]" *Id.* at *11. And while the court found *Hubbard* plaintiffs did allege a market existed for their information, it still rejected UCL standing absent "facts explaining how Defendants' collection and use of their information reduces the value of that information" or "prevents Plaintiffs from using the information themselves." *Id.* at *9, 11.

The remainder of Plaintiffs' cited authority (like *A.B.*) simply represents the minority position in the Ninth Circuit. *See Roe v. Amgen Inc.*, 2024 WL 2873482, at *8 (C.D. Cal. June 5, 2024) ("[N]umerous courts in this circuit have held that the disclosure of a plaintiff's personal information, absent allegations that the plaintiff intended to participate in the market to sell such information, does not constitute a monetary or property loss for purposes of UCL standing."); *Lau v. Gen Digital Inc.*, 2023 WL 10553772, at *7 (N.D. Cal. Sept. 13, 2023) (collecting cases).

**B. Plaintiffs Fail to Allege Any Unlawful, Unfair, or Fraudulent Conduct.**

Plaintiffs fail to salvage their UCL claim under any of its three prongs.

***Unlawful Prong***. For the reasons explained in the Motion and herein, Plaintiffs do

not plausibly allege Google violated COPPA, California's constitutional privacy protections, ECPA, or WESCA. Because these predicate claims fail, the Court must dismiss Plaintiffs' unlawful prong claim. *See, e.g.*, *Best Carpet Values, Inc. v. Google LLC*, 90 F.4th 962, 974 (9th Cir. 2024) (plaintiffs cannot proceed on unlawful prong claim where no predicate violation survives).

***Fraudulent Prong***. As explained in the Motion, Plaintiffs' Complaint ostensibly alleges two fraudulent acts in support of their UCL fraudulent prong claim: "Defendants'" failure to (1) accurately designate content as MFK, and (2) adequately protect Plaintiffs' information, despite assurances they would do so. Mot. at 18 (citing Compl. ¶ 327). In opposition, Plaintiffs do not address those allegations at all, and thus waive any argument that they satisfy Rule 9(b). *See Walsh*, 471 F.3d at 1037; *Carlin*, 2025 WL 1844217, at *5.

Instead, they make a new argument: that Google "misrepresent[s]" the nature of videos as NMFK. Opp. at 17. This argument finds no basis in the Complaint and should be ignored for this reason alone. *See Dandridge v. Select Portfolio Serv., Inc.*, 2023 U.S. Dist. LEXIS 35357, at *22 (C.D. Cal. Mar. 1, 2023). Nor does it make sense. Google does not make representations about whether specific videos are MFK or NMFK. If they did, Plaintiffs would have known that they were watching allegedly NMFK videos. Thus, no Plaintiff alleges that they saw any representation from Google that any video they watched was designated NMFK, let alone that they relied on any such representation. "To plausibly allege" a UCL claim, "a plaintiff must allege that they relied on a misrepresentation." *Hammerling*, 615 F. Supp. 3d at 1083 (dismissing claim). Plaintiffs' failure to identify any such reliance mandates dismissal. *See Boyd v. SunButter, LLC*, 762 F. Supp. 3d 931, 943 (C.D. Cal. 2025) (Wu, J.) (dismissing fraudulent prong claim where plaintiffs failed to plead reliance on alleged misrepresentations).

***Unfair Prong***. Plaintiffs do not dispute that their UCL claim under the unfair prong is premised on the same alleged conduct as their claims under the fraudulent and unlawful prongs and thus fails with those prongs. Because Plaintiffs' fraudulent and unlawful prong claims fail, their unfair prong claim must be dismissed as well. *See, e.g.*, *Saavedra v. Everi*

*Payments, Inc.*, 2022 WL 17886025, at *5 (C.D. Cal. Apr. 11, 2022) (where the claims are based on conduct that "overlap[s] entirely, [] the unfair prong of the UCL cannot survive if the claims under the other two prongs do not survive'").

## VIII. PLAINTIFFS' ECPA CLAIM FAILS.

Google's Motion explained that Plaintiffs' ECPA claim fails because the facts Plaintiffs plead do not involve the alleged contemporaneous collection of Plaintiffs' communications ***by an unknown third-party interceptor***. Mot. at 19–20. Plaintiffs fail to identify any such collection, so the claim must be dismissed.

**Google cannot be liable as an interceptor.** "[B]y definition, parties to a conversation cannot eavesdrop on their own conversation." *Esparza v. Lenox Corp.*, 2023 WL 2541352, at *3 (N.D. Cal. Mar. 16, 2023) (dismissing wiretapping claims). ECPA thus exempts from liability any "party to the communication," 18 U.S.C. § 2511(2)(c), *i.e.*, the intended recipient of the communication. *See, e.g.*, *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024).

In their Opposition, Plaintiffs admit that Google was the intended recipient of their communications. *See* Opp. at 19–20 ("[T]he intercepted communications at issue are the transmission of Plaintiffs' personal information ***to Google***[.]") (emphasis added).[4] Instead of arguing that they did not intend to communicate with YouTube, Plaintiffs argue that they did not intend for Google to collect the data they allege it collected. *See* Opp. at 19–20. That does not matter for purposes of Plaintiffs' claim. ECPA's party exemption applies regardless of whether the party stored some or all of those communications on the back end without the other's knowledge. *See* 18 U.S.C. § 2511(2)(c).

Because Plaintiffs admit that they intentionally communicated with Google by knowingly using YouTube, the party exemption applies, and Google cannot be liable as an

[4] For this reason, Plaintiffs' authority does not apply. Both cases involved a hidden, third-party software provider that tracked users' website activity. *India Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1354–55 (S.D. Cal. 2024); *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 968–69 (N.D. Cal. 2023). In neither case was the website operator—here, Google—alleged to have been a third-party interceptor.

interceptor under ECPA. *See* 18 U.S.C. § 2511(2)(c); *B.K.*, 721 F. Supp. 3d at 1065; *Esparza*, 2023 WL 2541352, at *3.

**Plaintiffs identify no contemporaneous interception by an unknown third party.** Because Plaintiffs cannot state a claim based on Google's alleged collection of information, the only possible basis for holding Google liable under ECPA would be a claim for secondary liability on the theory that Google "procure[d]" another "person to intercept" Plaintiffs' communications. *See* 18 U.S.C. § 2511(1)(a).

Plaintiffs do not dispute that any such third-party interception must occur contemporaneously with transmission. *See Konop v. Haw. Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (a communication "must be acquired during transmission, not while it is in electronic storage"). But they do not even try to identify an allegation in their pleading that any third party contemporaneously collected their communications. Instead, they point to language in YouTube's Privacy Policy disclosing that Google "provide[s] personal information to . . . affiliates and other trusted businesses or persons to process it[.]" Opp. at 20.[5] This, of course, says nothing about the timing of when any party receives any data and certainly does not suggest any contemporaneous interception.

Plaintiffs' own cases illustrate the insufficiency of their allegations. In both cases, the plaintiffs specifically pleaded that unknown third parties collected their communications with the website "immediately and instantaneously" or "in real time." *India Price*, 712 F. Supp. 3d at 1359–60; *Yockey*, 688 F. Supp. 3d at 976.

**The crime-tort exception does not save the claim.** Plaintiffs try to escape the problems with their claim by invoking the crime-tort exception to ECPA's party exemption on the sole basis that "the FTC has already found that Disney's interception of Plaintiffs' communications violated COPPA." Compl. ¶ 348. This contention fails for two reasons.

*First*, the FTC's allegations that *Disney* violated COPPA has no bearing on whether

[5] In any event, the provision to which Plaintiffs point is about the sharing of certain data with Google's own affiliates for processing purposes—not the alleged data sharing with third-party advertisers for targeted advertising that is the focus of Plaintiffs' Complaint.

*Google* allegedly acted with any criminal or tortious purpose in this case. And Plaintiffs fail to otherwise plead that Google violated COPPA. *See supra* Section I; Mot. Section I.

*Second*, Plaintiffs fail to allege facts demonstrating Google's criminal or tortious intent. The crime-tort exception requires "that either the primary motivation or a determining factor in the interceptor's actions has been to injure plaintiffs tortiously." *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057 (N.D. Cal. 2025) (internal quotation marks omitted). "Where the purpose [of the interception] is not illegal or tortious, but the means are, the victims must seek redress elsewhere." *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202–03 (9th Cir. 1999) (emphasis added). Far from alleging that Google had a criminal or tortious purpose, Plaintiffs assert that Defendants' motivation was commercial: "Defendants' unauthorized collection of Plaintiffs' and Class Members' Personal Information has been a key revenue driver." Compl. ¶ 85. Plaintiffs have thus pleaded themselves out of court. *See Nichols v. Peacehealth Networks On Demand LLC*, 2026 WL 607763, at *4 (W.D. Wash. Mar. 4, 2026) (no exception where plaintiff alleged interception for "targeted advertising purposes" and never alleged "an unlawful purpose").

## IX. PLAINTIFFS' WESCA CLAIM FAILS.

Plaintiffs' Opposition offers no support for the notion that their WESCA claim can survive even if their ill-pleaded ECPA claim is dismissed. *Compare* Mot. at 20 *with* Opp. at 20–21. The only argument they do offer is a straw man. Plaintiffs critique Google's reliance on *Strehl v. Guitar Center, Inc.*, 2024 WL 2790373 (C.D. Cal. May 29, 2024), because the court rejected the defendant's "separate stream of communication" and "rerouting" arguments. Opp. at 20. Google made no such argument but relied on *Strehl* only for the undisputed proposition that WESCA, like its federal counterpart, requires that interception occur contemporaneously with transmission. Mot. at 20.

## X. PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS.

Plaintiffs' argument that "unjust enrichment is a valid quasi-contract claim" is based on outdated law. *See* Opp. at 21 (citing *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015)). In 2022, the Ninth Circuit explained unjust enrichment is only a

"remedy for some other valid cause of action," not a freestanding claim. *Klaehn v. Cali Bamboo LLC*, 2022 WL 1830685, at *2 n.2 (9th Cir. June 3, 2022); *see also*, *e.g.*, *Attenello v. Aetna Life Ins. Co.*, 2025 WL 2661772, at *8 (C.D. Cal. Sept. 16, 2025). In any event, Plaintiffs do not plead a valid quasi-contract theory. They seek only disgorgement of profits, without regard to their alleged harm (diminution in value of their data). *See* Compl. ¶¶ 308–22. But disgorgement of profits that is not tied to the restoration of lost money or property is non-restitutionary. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148–49 (2003).

Plaintiffs admit that they only seek relief from Disney with respect to their claim, pointing only to a paragraph that mentions neither Defendant and one about an alleged common question about whether both "Defendants unjustly profited." *See* Opp. at 21 (citing Compl. ¶¶ 18, 232(j)).

Plaintiffs' last argument, about their ill-pleaded predicate claims, is just their "quasi-contract" argument again. *See id.*

## CONCLUSION

For the foregoing reasons, and for the reasons explained in Google's Motion, the Complaint must be dismissed. Because no amendment permissible under Rule 11 could cure the fatal flaws in Plaintiffs' case, any dismissal should be with prejudice.

Dated: May 29, 2026

Respectfully submitted,

MAYER BROWN LLP

By: */s/ Anthony J Weibell*
Anthony J Weibell

Attorney for Defendants
GOOGLE LLC AND YOUTUBE LLC

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants Google LLC and YouTube LLC, certifies that this brief contains 6,911 words, which complies with the word limit of L.R. 11-6.1.

Dated: May 29, 2026

Respectfully submitted,

MAYER BROWN LLP

By: */s/ Anthony J Weibell*
Anthony J Weibell

Attorney for Defendants
GOOGLE LLC AND YOUTUBE LLC