UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 25-8410-GW-RAOx | Date | June 12, 2026 |
|---|---|---|---|
| Title | *S.K., et al. v. Disney Worldwide Services, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |
|---|---|

| Javier Gonzalez | None Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:**     **IN CHAMBERS - TENTATIVE RULINGS ON DEFENDANTS THE WALT DISNEY COMPANY, DISNEY WORLDWIDE SERVICES, INC., AND DISNEY ENTERTAINMENT OPERATIONS LLC'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) [60]; and DEFENDANTS GOOGLE LLC AND YOUTUBE LLC'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT [61]**

Attached is the Court's Tentative Rulings on the Defendants' Motions [60, 61],  set for hearing on June 15, 2026 at 8:30 a.m.

|  | : |
|---|---|
| Initials of Preparer | JG |

***In re Disney Worldwide Services COPPA Litigation***, Case No. 2:25-cv-08410-GW-(RAOx)
Tentative Rulings on: (1) Motion to Dismiss Plaintiffs' Consolidated Complaint and (2)
Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

## I.  Procedural Background

A Consolidated Complaint ("CC") was filed in this action on behalf of plaintiffs
E.A., S.A., S.K., E.K., A.F., C.R. and C.R. (collectively, "Plaintiffs") on February 17,
2026.[1]  *See* Docket No. 55.  The CC contains nine claims for relief:  1) "Intrusion Upon
Seclusion (Common Law)"; 2) "Invasion of Privacy (California Constitution)"; 3)
"Trespass to Chattels"; 4) "Negligence"; 5) "Negligence Per Se"; 6) "Unjust
Enrichment"; 7) "Unfair Competition Law (UCL) Cal. Bus. & Prof. Code § 17200 et
seq."; 8) "Violations of the Federal Wiretap Act (ECPA) 18 U.S.C. §§ 2510-2522"; and
9) "Violations of the Pennsylvania Wiretap Act 18 Pa. Cons. Stat. § 5701 et seq."  In
general, the case concerns allegations that the defendants in the case have been violating
the Children's Online Privacy Protection Act ("COPPA") and/or the process that certain
of the defendants in this action have established in order to ensure compliance with that
law.

Defendants The Walt Disney Company, Disney Worldwide Services, Inc., and
Disney Entertainment Operations LLC (collectively, "Disney") have filed a motion to
dismiss the CC, as have defendants Google LLC and YouTube LLC (collectively,
"YouTube").  Because all nine claims in the CC have been pled against all Defendants,
and because many of the arguments raised in the two motions are the same or similar, the
Court will address both motions together.  However, as will be seen below, one particular
argument dominates the Court's attention at this point in time, and calls for a dismissal
with leave to amend, such that the Court will not reach all of the arguments (or all of the
individual claims) at this point in time.  Before getting to that stage, however, the Court

---

[1] This class action lawsuit was initially brought by Plaintiffs S.K. and E.K. – two minors through their
guardian Richard Kester against Defendants The Walt Disney Company, Disney Worldwide Services, Inc.,
and Disney Entertainment Operations LLC – claiming a failure by Defendants to properly designate their
content on YouTube (a video sharing platform), which resulted in the unlawful collection of personal
information from the children viewers.  *See generally* Complaint, Docket No. 1.  Thereafter, a number of
other class action lawsuits raising the same or similar allegations were filed and subsequently consolidated
with this matter.  *See* Docket Nos. 28, 42-43.  In the Consolidated Complaint, *inter alia*, YouTube LLC and
its owner (Google LLC) were added as Defendants.  *See* Docket No. 55.

must address the governing pleading standards.

## II.  Procedural Standards

Both motions have been brought – primarily[2] – pursuant to Federal Rule of Civil Procedure 12(b)(6).  Under Rule 12(b)(6), a court must: (1) construe the complaint in the light most favorable to plaintiffs, and (2) accept all well-pleaded factual allegations as true, as well as all reasonable inferences to be drawn from them.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).  The court need not accept as true "legal conclusions merely because they are cast in the form of factual allegations."  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-63 (2007) (dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief).  However, a plaintiff must nevertheless "plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Johnson*, 534 F.3d at 1122 (quoting *Twombly*, 550 U.S. at 570); *see also William O. Gilley Enters., Inc. v. Atlantic Richfield Co.*, 588 F.3d 659, 667 (9th Cir. 2009) (confirming that *Twombly* pleading requirements "apply in all civil cases").  A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In its consideration of the motion, the court is generally limited to the allegations

---

[2] YouTube has also moved pursuant to Federal Rule of Civil Procedure 12(b)(1) with respect to Plaintiffs' Article III standing to pursue injunctive relief.  As the Court has handled that topic, *see infra*, there is no need to go into detail regarding the standards applicable to such motions at this point.

on the face of the complaint (including documents attached thereto), matters which are properly judicially noticeable[3] and "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading."  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruling on other grounds recognized in Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).  "A court may [also] consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion."  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  Assertions offered by a movant that contradict or add to a plaintiff's allegations – except under one of the exceptions just-noted – are not to be considered.

### III.  Factual Background

As a preliminary note, the Court focuses here on allegations relevant to the question of whether Plaintiffs have sufficiently pled that they, specifically, were subject to the practices that are at the heart of this litigation.  It is that issue which, as explained below, presents an initial roadblock to a full assessment of this action proceeding in-general, and to the Court's full consideration of all of the many arguments raised in the two motions to dismiss.

Defendant Google, LLC owns a video-sharing platform called "YouTube."  *See* CC ¶¶ 3, 33-34.  Disney produces content using globally-recognized characters, franchises, and branded content – including, *inter alia*, Disney Princesses, Pixar, Marvel, and Star Wars.  *See id.* ¶ 2.  One way Disney distributes this content is through YouTube.  *See id.* ¶ 3.

---

[3] YouTube has requested that the Court take judicial notice of a number of items, with Plaintiffs objecting to the request as to certain of them, while not opposing others (at least as to their existence and what they reflect on their face).  *See* Docket Nos. 62, 70, 73.  Given the nature of the Court's analysis herein, for the time being the Court only sees reason to consider materials relating to relevant Federal Trade Commission proceedings, as to which Plaintiffs have raised no objection (at least to the extent the Court considers them herein).  *See* Docket No. 70, at 1:16-20; Docket No. 73, at 2:2-5.  The Court therefore grants YouTube's request for judicial notice – though, in truth, *judicial notice* is not necessary for the Court to properly consider those materials in connection with *both* of the pending motions – as to Exhibits A-C submitted with YouTube's request.  *See* Docket Nos. 62-2, 62-3, 62-4.  The Court does not presently rule upon YouTube's request for judicial notice apart from those materials.

YouTube requires that videos intended to be available to the public on its platform be uploaded through a "channel."[4]  *See id.* ¶ 54.  Disney operates many official YouTube channels.  *See id.* ¶ 73.  During the class period that Plaintiffs have proposed in this action, Disney uploaded *tens of thousands* of videos to *more than 1,250* YouTube channels.  *See id.* ¶ 74.

Content creators like Disney have full control over the videos uploaded to their channels, including the ability to set age designations.  *See id.* ¶ 56.  Since November 2019, as a result of a settlement with the Federal Trade Commission ("FTC"), YouTube has required content creators, such as Disney, to indicate whether videos they upload to its platform are "Made for Kids" ("MFK") or "Not Made for Kids" ("NMFK"), in order to comply with COPPA.  *See id.* ¶¶ 4, 105, 108, 114.  Content creators are able to make an MFK/NMFK designation at the video-level or at the channel-level.  *See id.* ¶¶ 108, 134-135.  If content creators set the designation at the channel-level, *all* videos loaded to that channel, by default, inherit the channel's designation (marked, for example, as NMFK if the channel itself is designated as NMFK).  *See id.* ¶ 117.  However, after a video has been uploaded, a content creator can change the audience-designation for an individual video.  *See id.* ¶ 117.  Thus, content creators can mark a channel as MFK or as NMFK, while also having the flexibility to review the setting for every video uploaded to a channel.  *See id.* ¶ 111.

One of the provisions of the 2019 FTC settlement with YouTube was the latter's agreement that it would limit and/or cease any data collection on MFK-designated channels or videos which would include "targeted or personalized advertising and the collection of viewing history and personal information that facilitates targeted and personalized advertising."[5]  *Id*. ¶ 118.  Plaintiffs claim that "[t]he features disabled when

---

[4] As delineated in the CC, each channel set up by a content creator "has a unique account and serves as a personalized space where a particular content creator's videos, playlists, branding, and audience engagement tools are hosted" and where the content creator "ha[s] full control over the videos uploaded to its channels, including the ability to set titles, thumbnails, descriptions, age designations, and monetization preferences."  CC at ¶¶ 55-56.

[5] As related to the allegations in this lawsuit, advertising on YouTube can be targeted in two ways: behavioral or contextual.  *See* CC ¶ 62.  Behavioral targeting involves showing ads to users based on their personal data.  *Id.* ¶ 64.  Advertisers pay YouTube more to run behavioral advertising, and YouTube in turn pays content creators, including Disney, more for running behavioral advertising.  *Id.* ¶¶ 72, 112.  To

4

a content creator designates a video or channel as 'MFK' are disabled, in part, to prevent the collection of personal information from children that would require operators to provide notice and obtain verifiable parental consent under COPPA and the COPPA Rule." *Id.* ⁋ 120.

When videos are labeled NMFK – properly/appropriately or not – certain functionality is enabled when viewing that video. *See id.* ¶¶ 12, 122, 151 & n.48. This includes an ability to interact with, make, and read public user comments, to "follow" and "like" channels, and to have successive content "autoplay" when a video finishes. *See id.* ¶ 12 & n.48. In contrast, when a video or entire channel is set as MFK, those functionalities are disabled. *See id.* ¶¶ 118-121, 151 & n.48. Thus, as may be inferred from the CC, whether a video or channel is MFK or NMFK can be determined by the presence or absence of attendant functionality (assuming the system is operating as-designed).

Plaintiffs' theory as to the COPPA violation (and/or a violation of YouTube's MFK/NMFK policy) here is that Disney mis-designated as "NMFK" content materials/videos which were directed at children,[6] which therefore should have been designated as "MFK." *See id.* ¶¶ 6, 246-47. This theory is supported by another FTC enforcement action – this time brought against Disney – on September 2, 2025, for exactly this practice.[7] *See id.* ¶¶ 153, 156. As a result of this conduct, Plaintiffs claim

---

facilitate behavioral targeting, YouTube collects personal information, including YouTube viewing history, user activity (searches run, views and interactions with content and ads, etc.), location information (GPS, internet protocol address, device sensor data, and data from devices located near a user), and unique identifiers (cookie IDs, advertising IDs, device IDs, and others). *See id*. ¶ 65. MFK content receives non-personalized ads due to restrictions on collecting personal data from children under 13. *Id*. ¶ 109.

[6] COPPA provides that "[i]t is unlawful for an operator of a website or online service directed to children, or any operator that has actual knowledge that it is collecting personal information from a child, to collect personal information from a child in a manner that violates" prescribed regulations. 15 U.S.C. § 6502(a)(1); *see also Jones v. Google LLC*, 73 F.4th 636, 641 (9th Cir. 2023); *In re Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, 753 F.Supp.3d 849, 875 (N.D. Cal. 2024). Regulations require operators to provide parents with "direct notice of the operator's practices with regard to the collection, use, or disclosure of personal information from children," and "to provide notice and obtain verifiable parental consent prior to collecting, using, or disclosing personal information from children." 16 C.F.R. § 312.4(a)-(b). The parties appear to agree that COPPA itself does not provide for a private-right-of-action. *See Jones*, 73 F.4th at 641.

[7] As alleged in paragraph 2 of the Complaint in *United States v. Disney Worldwide Services, Inc. et al.*, No. 2:25-cv-08223 (C.D. Cal.) ("*FTC v. Disney*"): "Disney makes very popular child-directed videos available

that Disney enabled the collection of (and YouTube in fact collected) personal information of children watching the mis-designated NMFK videos without notification to parents of that collection and without obtaining parental consent, violating COPPA (at a minimum). *See id.* ¶¶ 7-8, 10, 80-82, 101, 195, 198, 203, 206, 211, 214, 219, 222. Plaintiffs assert that the FTC's positions and findings in its enforcement action against Disney "came as no surprise to YouTube" because YouTube knew about Disney's noncompliance with the MFK/NMFK policy "since at least June 2020, when YouTube informed Disney that YouTube had changed designations on more than 300 Disney videos from NMFK to MFK." *Id.* ¶ 158; *see also id.* ¶ 159. The CC also provides ten "[e]xamples of channels that Disney marked NMFK then failed to designate child-directed videos as MFK," which the CC, for shorthand purposes, then labels "Improperly Managed Channels." *Id.* ¶ 139.

YouTube has a separate website platform called YouTube Kids that is aimed at children and – according to the allegations of the CC – *only* contains videos that target children. *See id.* ¶ 125. This platform affirmatively requires that parents/guardians consent to collection of data before their children use it. *See id.* Some videos available on YouTube Kids are also available on YouTube, but are *not* designated MFK. *See id.* ¶ 127. The CC provides, as an example, a Disney "teaser trailer" for a *Moana* film. *See id.* ¶¶ 128-29. The CC provides this as evidence that YouTube has not labeled all videos on YouTube Kids as MFK on YouTube even though YouTube is aware that those videos target children.[8] *See id.* ¶ 130; *see also id.* ¶ 137 ("Disney's failure to designate videos as MFK is also demonstrated by inconsistent designations for very similar videos that

through YouTube and fails to properly mark videos as child-directed in some cases, allowing targeted advertising through collection of personal information from children without parental notice or consent, in violation of the COPPA Rule." Docket No. 60-3.

The filing of the Complaint in the *FTC v. Disney* on September 2, 2025, was accompanied on the same day by the filing of a Stipulation by the parties for the entry of an order for a permanent injunction and well as a ten million dollar civil penalty. *See FTC v. Disney,* Docket Nos. 1, 4. In the Stipulation, it was noted that the concomitant Order "requires Disney to implement an audience designation program to ensure its videos are properly directed as 'made for kids' where appropriate." *Id.*, Docket No. 4 at 3. The Order at paragraph 3 stated that "Defendants neither admit nor deny any of the allegations in the Complaint . . . ." *Id.*, Docket No. 4-1.

[8] The CC does not seem to make clear whether there is (or what exactly is the) precise criteria for determining whether a video should be designated as MFK rather than NMFK. For example, should the film *Babe* be MFK or NMFK, and why?

happen to appear on different channels but that have common child-directed subject matter.").

Each of the plaintiffs allege that they "viewed Disney's child-directed content that was misclassified as NMFK on YouTube." *Id.* ¶¶ 24-27.[9]  They also each allege that they "watched videos on the YouTube platform, including videos on Improperly Managed Channels" operated by Disney.  *Id.* ¶¶ 193, 201, 209, 217.  The CC also makes further general allegations amounting to an assertion that the defendants violated COPPA *as to them* by asserting, for example, that "Plaintiffs' and Class Members' Personal Information was unlawfully collected and monetized without parental consent."  *Id.* ¶ 165; *see also, e.g., id.* ¶¶ 167, 185.

The various proposed classes identified in the CC each tie class-membership to having "watched child-directed content uploaded by Defendants on YouTube that was not properly designated as 'made for kids.'"  *Id.* ¶¶ 227-228.  As part of their "typicality" allegation – for purposes of Federal Rule of Civil Procedure 23(a)(3) – Plaintiffs allege that they each, along with every class member, "viewed child-directed content that Defendants failed to properly designate."  *Id.* ¶ 233.

## IV.  Analysis

### A. Have Plaintiffs Sufficiently Alleged That *They* Were Victims of the Alleged Practices?

Part of both motions presently before the Court – most-forcefully in Disney's motion – is the argument that Plaintiffs have not alleged the identity of any videos that they themselves watched that are covered by the problematic activities Plaintiffs have alleged.  *See* Docket No. 60-1, at 1:20-24, 1:26-2:6, 5:11-12, 6:14-15, 6:19-7:26; Docket No. 61, at 1:20-22, 4:27-5:2, 6:19-7:2; Docket No. 71, at 1:5-13.  Without alleging such information, Disney asserts that "[a]t most, Plaintiffs' allegations suggest the possibility that the Minors viewed a mis-designated video.  But *Twombly* and *Iqbal* foreclose claims built on mere possibilities . . . ."  Docket No. 60-1, at 7:21-23.  Disney further argued that "[t]he[] facts about Minors' viewing histories in a non-logged-in status are uniquely within Plaintiffs' possession (not Defendants').  If they cannot allege these facts now,

---

[9] YouTube does not require individuals to register for an account or to sign into an account to watch videos on its platform.  *See id.* ¶ 53.

they will never be able to state a viable claim." *Id.* at 2:6-8; *see also* Footnote 9, *supra*.

For numerous/various reasons (even beyond those Disney most-directly addressed), the specific videos, the date those videos were watched, and the channels on which they were watched, may make a significant difference to this litigation, considering that Plaintiffs admit that YouTube changed the designations – on or before June 2020 – on only 300-or-so videos and that Plaintiffs have identified only 10 "Improperly Managed Channels," while they also admit that Disney uploaded tens of thousands of videos to more than 1,250 YouTube channels. *See, e.g.*, Docket No. 60-1, at 18:3-5, 18:16-19; Docket No. 61, at 6:1-4, 6:6-8, 6:16-7:2, 7:17-20, 8:7-10, 12:6-22, 13:14-16, 15:12-17, 16:23-25; Docket No. 68, at 11:11-13, 16:15-17, 19:6-7, 21:5-10, 22:24-25; Docket No. 69, at 2:24-3:1, 3:3-4, 11:14-20, 13:21-26, 14:2-5, 16:7-8, 19:27-28; Docket No. 72, at 1:9-11, 1:27-2:2, 5:19-24, 7:18-20, 9:18-21, 13:11-12. Even more-fundamentally than that, without further factual allegations in this regard, the Court has a real concern whether any/all of the plaintiffs even have Article III standing – an issue a federal court must always examine, *sua sponte* if necessary, *see D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1035 (9th Cir. 2008) – in this action. And beyond even those points, how do the plaintiffs propose demonstrating that they are "typical" for purposes of suitability as class representatives if they are unable to demonstrate that they, *in fact*, watched videos that were then-designated as NMFK when they should have been designated MFK? While that last point may be more of a Rule 23 issue than a Rule 12(b)(6) issue, Plaintiffs' apparent concession – discussed next – about their inabilities to provide more information at this stage gives the Court significant concern.

Plaintiffs' response on this topic (at least with respect to YouTube's motion) is fairly-limited. Their clearest attempt to respond to the issue as it is raised in YouTube's motion comes in the context of their response to the argument that they have not complied with the requirements of Federal Rule of Civil Procedure 9(b) with respect to their "fraudulent"-prong claim under California's Unfair Competition Law. There, they make the assertion that "it is unrealistic to ask children to identify the specific videos they watched," and can get away – for Rule 9(b) purposes – with just alleging "specific representative examples of mislabeled videos that target general audiences but should actually be designated MFK." Docket No. 69, at 17:18-21; *see also id.* at 17:11-14

(asserting that "[w]hen it comes to misrepresentations, 'children in particular are unlikely to recall the specific[s]'") (quoting *Comm. on Children's Tele., Inc. v. Gen. Foods Corp.*, 35 Cal.3d 197, 218-19 (1983)).

With respect to Disney's motion, Plaintiffs have a more-detailed response. First, they argue that the CC, on its face, "expressly alleges that each Plaintiff 'viewed Disney's child-directed content that was misclassified as NMFK on YouTube," citing paragraphs 24-27 of the CC. Docket No. 68, at 2:20-22; *see id.* at 3:27-28 (identifying paragraphs 24-27 of the CC as "an unequivocal allegation that each Plaintiff watched misdesignated child-oriented videos"). They then note that "Disney's widespread misdesignation practice . . . led to an FTC enforcement action against Disney for violating COPPA, which resulted in Disney agreeing to pay $10 million to the FTC in 2025."[10] Docket No. 68, at 3:22-25. Plaintiffs also assert that "Many Disney videos watched by each Plaintiff were misdesignated as NMFK, resulting in the unconsented-to collection of the child-Plaintiffs' personal information," citing paragraphs 195-198, 203-206, 211-214, and 219-222 of the CC. *Id.* at 4:9-11. But those paragraphs do not say anything about any "videos watched" by any plaintiff (let alone "each Plaintiff"). The same is true with respect to the assertion in Plaintiffs' Opposition brief that they alleged "watching misdesignated videos on Improperly Managed Channels 'throughout the class period,'" citing paragraphs 192, 201, 209, and 217 of the CC. *Id.* at 4:23-25.

Plaintiffs next assert that MFK/NMFK designations on YouTube are "done behind the scenes by Disney," meaning that it is "data uniquely in Defendants' possession." *Id.* at 4:26-28. Assuming that is true, however, how could YouTube and/or Disney look for that "data" without knowing the videos Plaintiffs assert they watched, and when, and on what channel? In any event, Plaintiffs overstate the roadblock they imagine. They themselves have alleged that NMFK-status can be determined by a user in light of the functionality that either is, or is not, present at the time the video is watched. *See* CC ¶¶ 12, 118-122, 151 & n.48.

Finally, Plaintiffs explain that "Plaintiffs are children with necessarily limited and imperfect memories, and because watching YouTube videos does not require logging in,

---

[10] However, as observed in footnote 7, *supra*, Disney did not admit any of the allegations in the *FTC v. Disney* lawsuit.

Plaintiffs may not necessarily have access to detailed historical viewing data." Docket No. 68, at 5:4-6; *see also* Footnote 9, *supra*. They bolster this with the reasoning they presented in response to YouTube's – and Disney's – Rule 9(b) argument: that children are unlikely to recall the specifics of fraud, and they need only allege a representative selection of alleged misrepresentations. *See* Docket No. 68, at 5:7-13; *see also id.* at 22:4-8. In the end, they note that Disney "cites no case law to support its argument that *Iqbal* and . . . *Twombly* . . . require pleading such extensive details, even under Rule 9(b)." *Id.* at 5:18-20. Instead, they point to *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011), and that decision's comment that where there "are two alternative explanations, . . . both of which are plausible, plaintiff's complaint survives . . . ." Docket No. 68, at 5:21-27.

Disney responds that Plaintiffs' allegations in paragraphs 24-27 of the CC are not factual allegations, but legal conclusions entitled to no presumption of truth under *Iqbal*. Disney takes the approach that Plaintiffs "must allege sufficient facts to nudge [their desired] inferences from merely possible to plausible," but have not done so. Docket No. 71, at 5:13-14. Disney also argues that "volume, motive, and generalized allegations about channel management are not substitutes for well-pleaded facts," that Plaintiffs assertion about necessary data being maintained only by the defendants "does not excuse their pleading failure; it underscores it," and that "Rule 8 does not permit Plaintiffs to convert a statistical possibility into a pleaded fact." *Id.* at 5:18-22, 6:3-4.

Disney also asserts that Plaintiffs' allegations about Disney's "widespread misdesignation practice" is contrary to the facts actually pled in the CC. But even assuming that the characterization was an accurate one, that Disney's "widespread misdesignation practice" led to an FTC enforcement action and to Disney paying $10 million in settlement of that action does not mean that any one of the seven plaintiffs bringing this action were on the receiving-end of that "misdesignation practice."

Finally, with respect to who has the information the defendants believe is required for Plaintiffs to be able to successfully assert that they were parties to COPPA violations, Disney argues that "[o]nly Plaintiffs know which videos they watched. Disney has no access to that information, and because Plaintiffs argue that they watched those videos without logging into an account, neither does YouTube." *Id.* at 6:5-8; *see also* Footnote

9, *supra*. In Disney's view, therefore, there is no basis to "relax" the pleading standards here, and certainly not under *Committee on Children's Television*, which it contends – consistent with the Court's thinking[11] – is inapposite for a number of different reasons.

Consider, on this topic, recent litigation between an individual named Fiyyaz Pirani and Slack Technologies, Inc. In 2023, the Supreme Court issued a decision in that litigation (that had originated in this Circuit). *See Slack Techs., LLC v. Pirani*, 598 U.S. 759 (2023). While that case involved certain particularities of federal securities law that have no connection to the type of dispute presently before the Court, an analogous uncertainty permeated the pleadings in it. The defendant argued for dismissal because, under the type of claim the plaintiff had brought, the plaintiff had to be able to allege that his shares were issued pursuant to a registration statement. Ruling in the case unanimously, the Supreme Court observed that "[f]or all anyone could tell, he may have purchased unregistered shares unconnected to the registration statement and its representations about the firm's business." *Id.* at 765. The Supreme Court remanded the case to the Ninth Circuit.

Back at the intermediate appellate level, the Ninth Circuit noted that Pirani had previously conceded that he could not make the necessary traceability showing – *i.e.*, that the securities he purchased were registered under the registration statement in question. *See Pirani v. Slack Techs., Inc.*, 127 F.4th 1183, 1186, 1188 (9th Cir. 2025). The Ninth Circuit acknowledged that Pirani had "alleged that he 'and the other members of the Class acquired Slack common stock pursuant and/or traceable to the Offering Materials.'" *Id.* at 1188. Had that been all Pirani said, the Ninth Circuit indicated that it would have had to determine whether or not that was sufficient "to make the conclusion of traceability a plausible one" under *Iqbal* and *Twombly*. *Id.*

However, the Ninth Circuit also noted that, in his opposition to Slack's motion to dismiss, Pirani asserted that the concept of "tracing" a share of stock was no longer possible in today's market. *See id.* Pirani repeated this concession on appeal, both the

---

[11] *Committee on Children's Television* was a state-court decision from 1983 – not a federal court decision subject to the Federal Rules of Civil Procedure, let alone in a post-*Twombly/Iqbal* world. Beyond that, the passage from the decision that Plaintiffs emphasize, regarding children's inability to recall specific advertisements, dealt with a question of whether more specificity was required in the way of alleging *reliance*. *See* 35 Cal.3d at 218-19. That is not the issue here.

first time he appeared before the Ninth Circuit and then again in front of the Supreme Court. *See id.* at 1189. As a result, on remand from the Supreme Court, the Ninth Circuit ultimately concluded that Pirani had waived any argument that he could trace his shares (in the process rejecting one argument that Pirani could successfully allege traceability via a showing of statistical probability). *See id.* at 1189-91.

The Court views the allegations at paragraphs 24-27 – along with, for example, paragraphs 165, 167, 185, 193, 201, 209, and 217 – of the CC as equivalent to Pirani's allegation that he and the other members of the Class acquired Slack common stock pursuant and/or traceable to the Offering Materials. As noted, the Ninth Circuit did not decide whether or not that allegation was sufficient under *Twombly/Iqbal*, whereas the Supreme Court had previously noted that "[f]or all anyone could tell, he may have purchased unregistered shares unconnected to the registration statement and its representations about the firm's business." *Slack Techs.*, 598 U.S. at 765.

Where the dividing line lies between factual and conclusory under *Twombly/Iqbal* is not always an easy determination. It is certainly true that Plaintiffs' allegations at paragraphs 24-27 of the CC are not specific or supported by citations to evidence. But those are not generally – with exceptions for Rule 9(b) in certain types of cases – requirements in pleading.

The allegations in paragraphs 24-27 of the CC would almost certainly be considered sufficiently factual, and Plaintiffs' claims sufficiently plausible, were they directed at a practice that allegedly uniformly violated a relevant law. However, this is not a case where Plaintiffs have alleged that Disney and/or YouTube were uniformly violating the law (or the terms of the FTC-YouTube settlement) in every situation involving a Disney upload. Instead, Plaintiffs have alleged that YouTube corrected 300 or so designations by Disney in 2020, and have cited to a handful of channels that they allege constitute Improperly Managed Channels. Thus, it is *possible* that – as they have alleged generally – Plaintiffs viewed videos that were encompassed by the unlawful practices. But that was equally *possible* (in a very different context) in the *Pirani* litigation. Had the *possibility* been sufficient in *Pirani*, the case would have advanced beyond the pleadings.

This Court takes its lead from *Pirani* in this situation. Plaintiffs have provided

12

general allegations consistent with a *possibility*. But they have not provided facts that take their allegations from a *possibility* to *plausibility*. *See also Eclectic Props. E. v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) ("[P]laintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.' . . . 'Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'") (quoting *Twombly*, 550 U.S. at 557 and *Iqbal*, 556 U.S. at 678). Indeed, from what they have alleged, the Court cannot even conclude that it is *equally* possible that *they were* subject to the alleged practices and that *they were not*. The Court therefore agrees with the Defendants that, in this particular context, it will be necessary for Plaintiffs to each allege at least one particular video that they watched, the date they watched it, and the channel on which they watched it. *Cf. Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 644-46 (9th Cir. 2014) (requiring a plaintiff asserting FLSA overtime claims to make certain relevant allegations about a "given workweek" – "Although plaintiffs in these types of cases cannot be expected to allege 'with mathematical precision,' the amount of overtime compensation owed by the employer, they should be able to allege facts demonstrating there was at least one workweek in which they worked in excess of forty hours and were not paid overtime wages"). To this point they have not done so.[12] For each of the reasons identified earlier – *Twombly*/*Iqbal*-compliance, Article III standing concerns, and looking ahead to difficulties in demonstrating typicality – the Court will dismiss the CC as a whole[13] on this basis at a minimum.

---

[12] Given what Plaintiffs have already said about their professed present inability to know what videos they watched, when they watched them, etc., it is at least possible that their situation is analogous to Pirani's concessions about his inability to allege tracing. However, the Court will give Plaintiffs one opportunity to see if they can come up with more than they have to this point.

[13] It is relatively unclear to the Court whether Plaintiffs believe they have *any* claims without an ability to allege that *they* have demonstrated a COPPA violation (and/or an MFK/NMFK violation) *as to them*. *See, e.g.*, CC ¶¶ 246-249, 259, 275-276, 282, 285, 313, 326-327, 345-347, 361-363. The Court is plainly not on its own in this regard – Disney's own Reply brief asserts that "[a] purported violation of COPPA underlies *nearly* every claim in the [CC]," though Disney does not identify which claim it believes does not require a COPPA violation for success. Docket No. 71, at 2:6-7 (emphasis added). The only suggestion on this topic that the Court perceives in Plaintiffs' Opposition briefs concerns what appears to be an assertion that they could make out a UCL "unlawful"- or "unfair"-prong claim without having to rely on COPPA. *See* Docket No. 68, 20:2-5, 20:25-21:7. In Reply, however, Disney asserts that "[t]he [CC] refers solely to COPPA," and that in their Opposition Plaintiffs are attempting to "pivot to vague references to unspecified statutory and constitutional violations." Docket No. 71, at 16:9-12. If Plaintiffs believe they *do* have

B.  Additional "Trimming"

Given the foregoing, there is effectively no need to address the sufficiency of Plaintiffs' allegations with respect to any of their particular claims, nor to consider or resolve any of the many arguments raised (other than the one just resolved). Nevertheless, in order to effect some "trimming of the hedges" where it can be done with ease, and can serve, going-forward, to either rule out particular causes of action or particular arguments, or to indicate other topics Plaintiffs must consider, the Court elects to provide the following limited additional analysis.

### 1.  Choice of Law

Plaintiffs are residents of three different states – Colorado, Pennsylvania and California.  *See* CC ¶¶ 24-27.  Two of the causes of action – the second and seventh – are plainly brought under California law (the California Constitution and a California statute).  One – the ninth – is a cause of action under a Pennsylvania statute.  Another – the eighth – is based upon a federal statute.  The remaining five claims do not appear to rely upon a particular State's law.  *See id.* ¶¶ 240-255, 272-322,

Disney asserts that Plaintiffs must identify which particular State's law provides the basis for the claim.  Plaintiffs appear to believe that this question cannot, or should not, be addressed until later in the action.  But the Court is asked here to assess Rule 12(b)(6) motions.  Obviously, it must know which law governs the claims in order to undertake such an analysis; the implication from Plaintiffs' position – that claims that might be brought under multiple States' laws should be effectively immunized from Rule 12(b)(6) challenges – is of course unacceptable.  *See, e.g., Cimoli v. Alacer Corp.*, 587 F.Supp.3d 978, 985-87 (N.D. Cal. 2022); *Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1209 (11th Cir. 2018).

Plaintiffs have offered no reason why this determination in this case must await development of the facts after the pleadings have been closed.  Thus, considering that Plaintiffs have given the Court no reason to conclude otherwise, and no party has argued

---

claims independent of an alleged COPPA or MFK/NMFK violation, that will have to be more clearly-stated – except as to their independent cause of action for Negligence *Per Se*, which will be dismissed in any event (as a cause of action) without leave to amend, as explained further herein – in a future amendment.

that some other State's laws should apply, at this point in time the Court would assess those five claims under California law. *See, e.g.*, *Cty. of San Bernardino v. Ins. Co. of the State of Pa.*, 174 F.4th 597, 604 (9th Cir. 2026) ("Because we are sitting in diversity, we begin with the presumption that we will apply the law of California, including its choice of law principles."); *Chen v. L.A. Truck Ctrs., LLC*, 7 Cal.5th 862, 867 (2019) ("As the forum state, California will apply its own law 'unless a party litigant timely invokes the law of a foreign state.'") (quoting *Hurtado v. Superior Court*, 11 Cal.3d 574, 581 (1974)). They will either survive or not in comparison with that State's law.

### 2. *Negligence Per Se – Not a Cause of Action*

The CC's fifth cause of action is for "Negligence *Per Se*." As explained above, the Court proceeds as if this claim is brought only pursuant to California law. Negligence *per se* is not a separate cause of action under California law. *See Dent v. Nat'l Football League*, 968 F.3d 1126, 1130 (9th Cir. 2020); *Bakos v. Roach*, 108 Cal.App.5th 390, 397 (2025). Plaintiffs effectively concede the point in their two Opposition briefs. See Docket No. 68, at 15 n.4; Docket No. 69, at 13:8-10. As such, the Court will dismiss the negligence *per se cause of action* without leave to amend. That does not mean, however, that Plaintiffs cannot proceed in this case under a properly-pled negligence *per se*-based *theory* in support of their separate "Negligence" cause of action.

### 3. *Unjust Enrichment – Cause of Action*

Though there is no doubt some confusion in the case law on this point, unjust enrichment does appear to be a recognized cause of action under California law. *See, e.g.*, *Prof'l Tax Appeal v. Kennedy-Wilson Holdings, Inc.*, 29 Cal.App.5th 230, 238 (2018) ("The elements of a cause of action for unjust enrichment are simply stated as 'receipt of a benefit and unjust retention of the benefit at the expense of another.'") (quoting *Lectrodryer v. Seoulbank*, 77 Cal.App.4th 723, 726 (2000)); *Peterson v. Cellco P'ship*, 164 Cal.App.4th 1583, 1593 (2008); *Travelers Cas. Ins. Co. of Am. v. Hirsh*, 831 F.3d 1179, 1181-82 (9th Cir. 2016); *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038-39 (9th Cir. 2016) (noting the dispute amongst California courts as to the existence of the cause of action, while also commenting that "this Circuit has construed the common law to allow an unjust enrichment cause of action through quasi-contract," and allowing the claim to proceed, "as we believe it states a claim for relief as an independent

cause of action or as a quasi-contract claim for restitution"); *see also W. Pac. R. Corp. v. W. Pac. R. Co.*, 345 U.S. 247, 276 (1953) (Jackson, J., dissenting) ("California certainly recognizes a cause of action based on unjust enrichment, whether it be treated as a common count, or as a waiver of a tort and suit in assumpsit.") (omitting internal citations).  The Ninth Circuit continues to recognize the existence of such a claim even *after* what YouTube asserts is that court's "most recent decision addressing unjust enrichment," Docket No. 61, at 20:24-28 – *Klaehn v. Cali Bamboo LLC*, No. 21-55738, 2022 WL 1830685 (9th Cir. June 3, 2022).  *See Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962, 973 (9th Cir. 2024).  In any event, *Klaehn*, of course, is an unpublished memorandum disposition, not a published opinion, and is therefore not precedential.  *See* Ninth Cir. R. 36-3(a).  Given the existence of authority recognizing such a claim, this Court will not foreclose the presentation of Plaintiff's sixth claim for relief based on the argument that such a claim does not exist.  It does not presently reach the other arguments advanced for why an unjust enrichment claim has not been sufficiently pled here.

### 4.  *Trespass to Chattels*

Among other things, as to Plaintiffs' third cause of action Disney has argued that Plaintiffs have not alleged the type or level of harm required for a trespass to chattels claim to lie in connection with what is, in essence, improper accessing/collection of information via a computer system.  They cite to the California Supreme Court's decision in *Intel Corp. v. Hamidi*, 30 Cal.4th 1342 (2003).  The Court has reviewed the relevant portion of that decision, *see id.* at 1350-60, and agrees that it presents a roadblock to Plaintiffs' claim, at least as it is presently-constituted.

Although Plaintiffs direct the Court to the Ninth Circuit's decision in *hiQ Labs, Inc. v. LinkedIn Corporation*, 31 F.4th 1180 (9th Cir. 2022), and that opinion's indication, in *dicta*, that "[e]ntities that view themselves as victims of data scraping are not without resort" because "state law trespass to chattels claims *may* still be available," *id.* at 1201 (emphasis added), there is no indication that *hiQ Labs* had California law specifically in mind when it offered that qualified/uncertain comment in *dicta*.  The Ninth Circuit, of course, cannot contradict the California Supreme Court's view on the scope of California law.  In any event, in a footnote accompanying the passage in question, the

16

*hiQ Labs* decision stated further that "it *may be* that web scraping exceeding the scope of the website owner's consent gives rise to a common law tort claim for trespass to chattels, *at least when it causes demonstrable harm*," citing – among other cases, California and beyond – two decisions from California state and federal courts (including *Hamidi*) that indicated that *more* is required than just improperly gathering information from a computer or website. *See id.* at 1201 n.21 (emphases added).

If all Plaintiffs can do in response to *Hamidi* – and they did not even *mention Hamidi* in their response to Disney's motion – is point to *hiQ Labs*, they effectively have no response. If they do not give the Court some reason to believe that they can amend so as to fit within what *Hamidi* indicates is required in this type of case, the claim would be dismissed without leave to amend.

### 5. Injunctive Relief

The Court will not preclude Plaintiffs from attempting to obtain appropriate and necessary injunctive relief in this case, if it proceeds. But at this point in time, the CC only defines what Plaintiffs want enjoined as the defendants' "wrongful conduct," "unlawful practices," and the "future interceptions of [Plaintiffs' and Class Members'] communications. *See* CC ¶¶ 239, 255, 271, 350, 367; Prayer, ¶¶ E, H. Whether or not there is a standing or mootness problem with the pursuit of injunctive relief on these present allegations – allegations Plaintiffs would be allowed to amend in their next iteration of their CC, in any event – the Court would not issue injunctive relief that is already covered by the terms of the negotiated-resolutions in the FTC actions already brought – and concluded – against YouTube and Disney. *See* CC ¶ 105; *see also United States v. Disney Worldwide Services, Inc.*, Docket No. 2:25-cv-08223-GW (RAOx), Docket No. 25 (Order for Permanent Injunction, Civil Penalty Judgment, and Other Relief) (C.D. Cal. Dec. 23, 2025); Docket Nos. 62-2, 62-3, 62-4. If Plaintiffs have a basis for injunctive relief that *does not* fall within the already-existing terms of the resolutions of those FTC actions, or have some reason to believe that the FTC will *not* enforce the terms of those resolutions, they should make that assertion/request clearer in any future amendment.

### 6. Group Pleading

In any future amendment, Plaintiffs would be well-advised to avoid use of the

17

undifferentiated term "Defendants" in making their allegations, lest they want to invite another challenge from Disney and/or YouTube that such practices cloud the tenor of Plaintiffs' allegations against them. If Plaintiffs believe that the various defendants took distinct actions, or distinct types of actions (for instance, collection of information versus enablement of such), giving rise to the asserted liability – and Plaintiffs' Opposition briefing appears to indicate that they do, *see, e.g.*, Docket No. 68, at 7:24-26, 8:1-4, 11:23-24 – there is no point to hiding that approach in the pleadings by virtue of a collective reference to "Defendants." It will only cause delay.

### 7. Remaining Arguments/Causes of Action

The Court elects to decline to consider the parties' remaining arguments unless and until Plaintiffs file an amended complaint in which they are able to successfully overcome the *Twombly*/*Iqbal* problem discussed under Section IV.A, *supra*.

## V. Conclusion

The CC is dismissed. That dismissal is with leave to amend except as to the cause of action for Negligence *Per Se* and – unless Plaintiffs give the Court some reason to believe they can comply with the limitations under *Hamidi* – the cause of action for Trespass to Chattels. As to those claims, the dismissal would be (pending the *Hamidi* issue as to the latter) without leave to amend.

18